1  SANG (JAMES) PARK, SBN 232956
   *sang@park-lawyers.com*
2  PARK APC
   8383 Wilshire Boulevard, Suite 800
3  Beverly Hills, California 90211
   Telephone:  (310) 627-2964
4  Fax:        (310) 362-8279

5  Attorneys for Plaintiff

6

7                  UNITED STATES DISTRICT COURT

8                  CENTRAL DISTRICT OF CALIFORNIA

9

10                                          Case No: 2:24-cv-00257-MRA-JPR

11 JOSE VALENZUELA, individually            Hon. Mónica Ramírez Almadani
   and on behalf of all others similarly
12 situated,                                CLASS ACTION

13              Plaintiff,                   **PLAINTIFF'S OPPOSITION TO**
                                             **DEFENDANT EVERI GAMES INC.'S**
14         vs.                               **MOTION TO DISMISS AND/OR**
                                             **STRIKE PLAINTIFF'S SECOND**
15 EVERI GAMES INC.; and DOES 1 to 10,      **AMENDED COMPLAINT**

16              Defendants.

17                                          Date:  May 30, 2024
                                            Time:  1:30 pm
18                                          Place: Courtroom 10B

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION……………………………………………………    1

II.   FACTS AND PROCEDURE………………..………….…….……..    2

III.  ARGUMENT…………………………….…………….……...……    5

    A.    The Court should summarily deny the Motion because Everi
        Games failed to meet and confer in good faith in violation of
        Court's Civil Trial Order and Local Rule 7-3………………………    5

    B.    Standard of review for motion under Rule 12(b)(6)……...………    7

        1.    Rule 12 Motions are disfavored………………………………    7

        2.    The Court must accept all well-pleaded allegations of
            the Complaint as true……………………………………...…    8

    C.    Plaintiff's claims are adequately plead………………………………    8

        1.    Plaintiff's overtime and minimum wage claims meet the
            Rule 8 pleading requirements…………………………………..    8

        2.    Plaintiff's meal period and rest break claims meet the Rule
            8 pleading requirements……………………………………    12

        3.    Plaintiff's claim for wage statements is well-plead………..    14

        4.    Plaintiff's claim for waiting time penalties (derivative
            claim) is well-plead………….…….……….……………….    16

        5.    Plaintiff's claim for violation of California Business &
            Professions Code §§ 17200, et seq. ("UCL") is well-plead..    17

            a.    Meal and rest break premiums, like overtime pay,
                are a "wage" and Plaintiff is owed restitution under
                the UCL because unpaid wages become property to
                which he is entitled…………………………………    17

6.      Plaintiff's PAGA claim is well-plead………….....……… 19

7.      Plaintiff's FLSA claim is well-plead……………………… 20

D.    Motion to Dismiss or Strike Class allegations should be denied….. 20

1.    Challenges to Class allegations should be made at the class
certification stage………………………………..…………… 20

2.    *Iqbal* does not apply to Rule 23 allegations…………………… 21

a.    The Class allegations are sufficient………………..…… 22

3.    Plaintiff's injunctive relief claim is adequately alleged……..... 23

E.    If the Motion is granted in any respect, Plaintiff should be given
leave to amend…………………………..…………..……..……… 24

IV.    CONCLUSION……………………………………….………… 24

1

# TABLE OF AUTHORITIES

2

### FEDERAL CASES

3

4  *Ashcroft v. Iqbal*
5      129 S. Ct. 1937 (2009)……………………………………………   8

6  *Bell Atlantic Corp. v. Twombly*
7      127 S.Ct. 1955 (2007)……………………………………………   8

8  *Bennett v. Schmidt*
9      153 F.3d 516 (7th Cir. 1988)……………………………………   7

10  *Boon v. Canon Bus. Sols., Inc.*
11      592 F. App'x 63 (9th Cir. 2015)………………………………   11

12  *Cahill v. Liberty Mut. Ins. Co.*
13      80 F.3d 336 (9th Cir. 1996)……………………………………….   8

14  *Carlson v. CSX Transp., Inc.*
15      758 F3d 819 (7th Cir. 2014)……………………………………   8, 9

16  *Chang v. Chen*
17      80 F.3d 1293 (9th Cir. 1996)……………………………………   24

18  *Eminence Capital LLC v. Aspeon, Inc.*
19      316 F.3d 1048 (9th Cir. 2003)…………………………………..   24

20  *Foman v. Davis*
21      371 U.S. 178 (1962)……………………………………………..   24

22  *Gillibeau v. City of Richmond*
23      417 F.2d 426 (9th Cir.1969)……………………………………   20

24  *Gilligan v. Jamco Dev. Corp.*
25      108 F.3d 246 (9th Cir. 1997)……………………………………   7

26  *Haralson v. United Airlines, Inc.*
27      224 F. Supp. 3d 928 (N.D. Cal. 2016)…………………………..   20

28

*In re NVIDIA GPU Litig.*
    2009 WL 4020104 (N.D. Cal. Nov.19, 2009)……………..……… 21

*In re Wal-Mart Stores, Inc. Wage and Hour Litigation*
    505 F. Supp. 2d 609 (N.D. Cal. 2007)…………………………….. 21

*Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.*
    80 F.3d 348 (9th Cir. 1996)………………………………………….. 20

*Kazemi v. Payless Shoesource, Inc.*
    2010 U.S. Dist. LEXIS 27666 (N.D. Cal. Mar. 12, 2010)……….... 20

*Kisliuk v. ADT Sec. Servs.*
    263 F.R.D. 544 (C.D. Cal. 2008)…………………………………….. 15

*Kwikset Corp. v. Super. Ct.*
    51 Cal. 4th 310 (2011)………………………………………………….. 16

*Landers v. Quality Commc'ns, Inc.*
    771 F.3d 638 (9th Cir. 2014)……………………………………….. 10

*Meyer v. National Tenant Network, Inc.*
    10 F.Supp.3d 1096 (N.D. Cal. 2014)……………………………….. 21

*Morongo Band of Mission Indians v. Rose*
    893 F.2d 1074 (9th Cir. 1990)……………………………………….. 24

*Ortega v. J.B. Hunt Transp., Inc.*
    258 F.R.D. 361 (C.D. Cal. 2009)…………………………………….. 15, 16

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*
    130 S. Ct. 1431 (2010)……………………………………………….. 21, 22

*Slack v. Int'l Union of Operating Engineers*
    83 F. Supp. 3d 890 (N.D. Cal. 2015)……………………………….. 11

*Tan v. GrubHub, Inc.*
    171 F. Supp. 3d 998 (N.D. Cal. 2016)……………………………… 11

*Thorpe v. Abbott Labs., Inc.*
   534 F. Supp. 2d 1120 (N.D. Cal. 2008)……………………………… 20

*Varsam v. Lab. Corp. of Am.*
   120 F. Supp. 3d 1173 (S.D. Cal. 2015)…………………………… 11


**FEDERAL STATUES**

Fed. R. Civ P. 8………………………………………………….. 8

Fed. R. Civ. P. 15…………………………………………………. 24

**STATE CASES**

*Brinker Restaurant Corp. v. Sup. Ct.*
   53 Cal. 4th 1004 (2012)…………………………………………….. 17

*Cortez v. Purolator Air Filtration Products Co.*
   23 Cal. 4th 163 (2000)……………………………………………….. 18

*Hudgins v. Neiman Marcus, Inc.*
   34 Cal.App.4th 1109 (1995)………………………………………… 18

*Lazarin v. Superior Court*
   188 Cal.App.4th 1560 (2010)………………………………………. 17

*Murphy v. Kenneth Cole*
   40 Cal. 4th 1094 (2007)……………………………………………… 17

*Naranjo v. Spectrum Security Services, Inc.*
   13 Cal.5th 93 (2022)…………………………………………………. 17

*People v. Los Angeles Palm, Inc.*
   121 Cal. App. 3d 25 (1981)…………………………………………. 18

*People v. McKale*
   25 Cal. 3d 626 (1979)……………………………………………….. 23

*Pineda v. Bank of America*
   50 Cal.4th 1389 (2010)……………………………………………… 18

# I.     INTRODUCTION

Defendant Everi Games Inc's (Everi Games) Motion should be denied because it fails to show that Plaintiff's well-plead Second Amended Complaint (SAC) is not plausible.  At best, Everi Games Motion is a self-serving criticism of the SAC.  At worst, Motion is intended to harass and cause delay because Everi Games brazenly admitted their intent to file it even *before* seeing Plaintiff's SAC.

It is well-settled that, in reviewing a 12(b)(6) motion, the Court must construe the complaint in light most favorable to plaintiff.  As one appellate court said, the proper question is *could* the allegations have happened, not *did* they.

As detailed below, Plaintiff's SAC pleads "short and plain statement of the claims" that *could* have happened.  For example, SAC alleges that California law requires overtime pay for all hours worked over 8-hours per day and/or 40-hours per week.  SAC also alleges that Plaintiff worked 11-hour shifts, five days a week, and was not paid all overtime.  So the proper question is *could* Everi Games have failed to pay Plaintiff all overtime worked.  Answer is yes because, among others, Plaintiff worked over 8 hours a shift.  The question is not *did* Everi Games fail to pay Plaintiff all overtime hours worked.  The question of "did they" is reserved for the trier of fact with proper evidence established through discovery.

Same for meal periods and rest breaks.  The proper question is *could* Everi Games have failed to provide lawful breaks.  Answer again is yes because Service Letter Agreement made it difficult for Plaintiff to timely take his breaks, and his supervisor explicitly told him to "clock out" for his meal periods and continue working.  Again, the question of "did they" is reserved for the trier of fact.

Court should also summarily deny the Motion because Everi Games failed to meet and confer in good faith.  Last there is almost no published authority for dismissing, much less striking, class allegations at the pleading stage.  And the *Iqbal* standard for pleading does not apply to class allegations under Rule 23 because a class action is a procedural device, and not a "claim for relief."

## II.    FACTS AND PROCEDURE

1.      Everi Games provides financial equipment and services to casinos. Specifically Everi Games leases slot machines to various casinos in California. And, as part of the lease, Everi Games provides 24-7 servicing and maintenance of the slot machines through a Service Letter Agreement (SLA) with the casinos. *See* Second Amended Complaint [SAC] ¶ 10 (Document 24)

2.      The SLA guarantees the casinos that Everi Games' technicians will respond to a service call within 2 hours of the call and complete the job within 4 hours of their arrival.  In other words, Defendants guaranteed the casinos that a job would be completed within 6 hours of the call. SAC ¶ 11

3.      The SLA directly conflicts with California meal period and rest break laws because it makes it virtually impossible for Defendants' technicians—who work alone—to take a rest break and meal period within the first two hours and five hours of their shift, respectively. SAC ¶ 12

4.      Everi Games circumvented California laws by instructing their technicians to "clock-out" for their meal periods on their "UKG App" before the fifth hour and continue working to meet the demands of the SLA.

        a.      Everi Games utilized the UKG App as their electronic timecard and had full access to every employee's time.

        b.      Everi Games required their technicians to download the UKG App on their phones and "clock in" and "clock out" through it.

        c.      Whenever a technician failed to clock out for their meal periods before the fifth hour, Everi Games would auto-deduct 30 minutes to reflect a meal period whether provided or not. SAC ¶ 13

5.      Everi Games employed Plaintiff as a Field Technician II—a non-exempt employee—from August 2021 to September 16, 2022. SAC ¶ 14

6.      Plaintiff last earned $29 an hour. SAC ¶ 15

7.      As Field Technician II, Plaintiff maintained and replaced casino

games owned by Everi Games, e.g., slot machines, at the casinos.  And, as a Field Technician, Everi Games required Plaintiff to strictly abide by the SLA. SAC ¶ 16

8.  Everi Games required Plaintiff to, on average, work two to three work orders or tickets at different casinos *every shift*. SAC ¶ 17

9.  Plaintiff typically worked a 6 am to 5 pm *shift* and travelled alone to casinos in San Diego, Riverside and Arizona—all in one shift. SAC ¶ 18

10.  Then Everi Games required Plaintiff to be "on-call" from the end of his shift to the start of his next shift.  Everi Games only provided an additional one hour of pay at $7.50 for Plaintiff's "on-call" time—well below the California minimum wage. SAC ¶ 19

11.  Plaintiff worked approximately five shifts in one workweek during his employment with Everi Games, not including any "on-call" time. SAC ¶ 20

12.  Everi Games required Plaintiff to drive one to two hours to each casino location and back home. SAC ¶ 21

13.  So, on a given shift, Plaintiff would "clock in" on his UKG App at 6 am and travel one to two hours to his first casino work order.  On average, Plaintiff would service, repair or maintain two to three slot machines at each casino—spending about an hour on each machine. SAC ¶ 22

14.  Then, per company policy, Plaintiff had to wait for the casino commissioner to come and inspect every component of the machines before he could leave the casino floor. SAC ¶ 23

15.  Plaintiff's managers, including Augustine Martinez, would instruct Plaintiff to "clock-out" for his meal periods before the fifth hour and continue working to service the machines or wait on the casino commissioner. SAC ¶ 24

16.  Once Plaintiff received the clearance from the casino commissioner, Plaintiff had to then quickly move onto his next work order at the next casino to meet the demands of the SLA.

a.  For example, on February 14, 2022, Plaintiff travelled to

Harrah's Casino in Funner, CA, San Diego County for a work order.  Plaintiff did not receive his rest breaks or meal periods that day due to the demands of the SLA.  And, as instructed, Plaintiff clocked-out before the fifth hour and continued working to meet the demands of the SLA.  Plaintiff was not paid for the off-the-clock work at the appropriate overtime pay rate. SAC ¶ 25

17.    Plaintiff travelled and worked alone at the casinos so—given the demands of the SLA—there was nobody to relieve him for his meal and rest breaks.  Instead Everi Games required Plaintiff to practice "eat while you go"— that is, Plaintiff's "breaks" coincided with Plaintiff's stopping to fuel up his company van between casino visits. SAC ¶ 26

18.    At the start of his employment, Plaintiff received a list with all of Everi Games technicians' names and contact information.  Everi Games provided the list to Plaintiff and other technicians so—despite working alone—they could all communicate and share information as a team. SAC ¶ 27

19.    Plaintiff frequently communicated via text with two other technicians—Ubi Hernandez and Mario.  And, in addition to sharing information about the technical aspects of their jobs, they confirmed to Plaintiff that they too did not receive their Labor-code compliant meal periods or rest breaks and were required to "clock-out" for their meal periods before the fifth hour and continue working to meet the demands of the SLA. SAC ¶ 28

20.    During the course of Plaintiff's employment, Everi Games failed to compensate Plaintiff for all overtime hours worked in excess of eight hours per day and/or 40 hours per week as required by California Labor Code and FLSA. Plaintiff averaged 11-hour shifts, five days a week, from August 2021 to September 16, 2022, and Everi Games failed to pay him all overtime hours worked over 8+ hours a shift.

    a.    Everi Games required Plaintiff and Class members to "clock-out" before the fifth hour and continue working to meet the demands of the SLA.

Everi Games failed to compensate Plaintiff and Class members for the off-the-clock work at the appropriate overtime pay rate. SAC ¶ 29

21.   Plaintiff was not authorized or permitted lawful meal periods and were not provided with one hour's wages in lieu thereof in violation of, among others, Labor Code §§ 226.7, 512, and applicable IWC Wage Orders. SAC ¶ 30

22.   Further Defendants failed to provide Plaintiff and Class members their second meal periods for shifts longer than ten hours. SAC ¶ 32

23.   Plaintiff was not authorized or permitted lawful rest breaks and were not provided with one hour's wages in lieu thereof in violation of, among others, Labor Code § 226.7 and applicable IWC Wage Orders. SAC ¶ 33

24.   Plaintiff filed the SAC on behalf of each and all other persons similarly situated in a concerted effort to improve wages and working conditions for other non-exempt employees.  Plaintiff seeks class certification of the following Class:

> All current and/or former non-exempt employees that worked for
> Defendants in California within four years prior to the filing of this
> Complaint

SAC ¶¶ 37-39

25.   On September 13, 2023 Plaintiff timely filed his PAGA Notice with the Labor and Workforce Development Agency (LWDA).  And Plaintiff served the PAGA Notice on Everi Games via certified mail eight months ago. SAC ¶ 36

## III.   ARGUMENT

### A.   The Court should summarily deny the Motion because Everi Games failed to meet and confer in good faith in violation of Court's Civil Trial Order and Local Rule 7-3

On February 15, 2024 the Court granted Defendant's Motion to Dismiss Plaintiff's First Amended Complaint pursuant to FRCP 12(b)(6).  The Court required that Plaintiff allege more facts to support his claims.  The Court ordered

1    Plaintiff to file his SAC by March 4, 2024.

2           Four days later, on February 19, 2024, the Parties submitted their Joint

3    Scheduling Report (Document 20).  In the Report, Everi Games represented to the

4    Court that they will blindly challenge any further amended pleading—even *before*

5    seeing Plaintiff's SAC—because they did not violate any laws.

6           Plaintiff has already amended his complaint once and any additional
      amendments would be futile as Plaintiff cannot cure the fundamental
7      shortcomings of his complaint. Everi did not violate any wage and hour
      laws, Plaintiff was paid appropriately for the time that he worked, and he
8      was issued all of his pay statements in a timely and appropriate manner.
      This is not a class action; if anything, it is an individual action only.
9      Plaintiff is not an adequate class representative, his claims are not typical of
      an entire class, and there are no common questions of law or fact to any
10     class. *Everi will challenge any further amended pleading*.

11   (Emphasis added) [*See* Document 20, Section 4(b)]

12          On March 4, 2024 Plaintiff served SAC on Everi Games for the first time.

13          Given Everi Games' representations above, it's clear that the instant Motion

14   is not made in good faith and only intended to harass and cause delay.[1]  It's now

15   also obvious that Everi Games failed to meet and confer in good faith because

16   they represented to the Court that they will blindly challenge Plaintiff's SAC even

17   *before* seeing Plaintiff's SAC.

18          Further, on March 11, 2024, the Parties spoke via videoconference

19   regarding the Court-ordered Joint Case Management Statement.  On the call, Everi

20   Games' counsel quickly referenced that Everi Games will be filing another

21   12(b)(6) motion.  He stated that, this time, the motion will argue that California's

---

[1]      Everi Games also repeatedly disparages Plaintiff's counsel and his
firm's work by requesting the Court to take judicial notice of a completely
unrelated wage and hour class action complaint in the Eastern District in a
misguided effort to shame Plaintiff's counsel.

        But it's noteworthy that the unrelated wage and hour class action complaint
referenced by Everi Games was found to be well-plead because it did not undergo
a 12(b)(6) challenge.

labor code is preempted and not applicable here.

When Plaintiff's counsel asked for case law and evidence in support of their position, Everi Games' counsel flippantly said, "I'm not going to draft the complaint for you." Needless to say, Everi Games never provided Plaintiff with any relevant legal authority or evidence.

Worse Everi Games misrepresented their position because the instant Motion does not raise any issues of preemption. Instead the Motion is a cut-and-paste of Everi Games' prior 12(b)(6) motion.

The Court's Civil Trial Order and procedures web page states—

Prior to filing any motion, Counsel shall comply in good faith with Local Rule 7-3 or the Court may strike or summarily deny the motion. The parties must discuss in real-time all issues to be raised in the motion, as well as the law and evidence relevant to those issues, so that the parties' briefing accurately reflects an understanding of the other side's position(s).

Here Everi Games clearly failed to meet and confer in good faith because 1) they brazenly admitted their intent to file their Motion even *before* seeing Plaintiff's SAC, and 2) they misrepresented to Plaintiff the basis for the Motion.

So the Court should summarily deny the Motion because Everi Games failed to meet and confer in good faith in violation of Court's Civil Trial Order and Local Rule 7-3.

**B.    Standard of review for motion under Rule 12(b)(6)**

**1.    Rule 12 Motions are disfavored**

A motion to dismiss for failure to state a claim "is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Dev. Corp.* (9th Cir. 1997) 108 F.3d 246, 294; *Bennett v. Schmidt* (7th Cir. 1988) 153 F.3d 516, 518 ("Instead of lavishing attention on the complaint until plaintiff gets it right, a district court should keep the case moving—if the claim is unclear, by requiring a more definite statement under Rule 12(e), and if the claim is clear but implausible, by inviting a motion for summary judgment.") Motions to dismiss are discouraged.

2.      **The Court must accept all well-pleaded allegations of the Complaint as true**

In reviewing a motion to dismiss, the Court must: (1) construe the complaint in the light most favorable to the plaintiff; and (2) accept all well-pleaded allegations of the complaint as true. *Cahill v. Liberty Mut. Ins. Co.* (9th Cir. 1996) 80 F.3d 336, 337

This principle has not changed under *Ashcroft v. Iqbal*. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal* (2009) 129 S. Ct. 1937, 1950

"A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly* (2007) 127 S.Ct. 1955, 1965; see *Carlson v. CSX Transp., Inc.* (7th Cir. 2014) 758 F3d 819, 827—proper question is "could these things have happened, not did they."

C.      **Plaintiff's claims are adequately plead**

1.      **Plaintiff's overtime and minimum wage claims meet the Rule 8 pleading requirements**

Fed. R. Civ P. 8(2) requires that "A pleading that states a claim for relief must contain...a short and plain statement of the claim showing that the pleader is entitled to relief...."

Here Plaintiff's SAC more than adequately states a claim for overtime pay.

- Plaintiff typically worked a 6 am to 5 pm *shift* and travelled alone to casinos in San Diego, Riverside and Arizona—all in one shift. SAC ¶ 18
- During the course of Plaintiff's employment, Everi Games failed to compensate Plaintiff for all overtime hours worked in excess of eight hours per day and/or 40 hours per week as required by California Labor Code and FLSA.  Plaintiff averaged 11-hour shifts, five days a week, from August

2021 to September 16, 2022, and Everi Games failed to pay him all overtime hours worked over 8+ hours a shift.

- Everi Games required Plaintiff and Class members to "clock-out" before the fifth hour and continue working to meet the demands of the SLA.  Everi Games failed to compensate Plaintiff and Class members for the off-the-clock work at the appropriate overtime pay rate. SAC ¶ 29

SAC alleges that California Labor Code and FLSA requires overtime pay for all hours worked in excess of 8-hours per day and/or 40-hours per week.  SAC also alleges that Plaintiff averaged 11-hour shifts, five days a week, from August 2021 to September 16, 2022 and was not paid all earned overtime.

So the proper question for a 12(b)(6) motion is: *could* Everi Games have failed to pay Plaintiff all overtime hours worked over 8+ hours a shift?  In its simplest terms, the answer is yes because, among others, Plaintiff worked over 8 hours a shift (see, e.g., *Carlson v. CSX Transp., Inc.* (7th Cir. 2014) 758 F3d 819, 827—proper question is "could these things have happened, not did they.")

The question is not *did* Everi Games fail to pay Plaintiff all overtime hours worked over 8+ hours a shift?  The question of "did they" is reserved for the trier of fact with proper evidence established through discovery.

Plaintiff's SAC also adequately states a claim for minimum wage violation.  First Everi Games failure to compensate Plaintiff for off-the-clock work is a failure to pay wages that trigger minimum wage violation. (*see*, e.g., SAC ¶ 29)  And second, Everi Games paying Plaintiff $7.50 an hour for the "on-call" time is clearly below California's 2022 minimum wage of $15.

- Then Everi Games required Plaintiff to be "on-call" from the end of his shift to the start of his next shift.  Everi Games only provided an additional one hour of pay at $7.50 for Plaintiff's "on-call" time—well below the California minimum wage. SAC ¶ 19

1    Despite pleading "a short and plain statement of the claim" showing that

2   Plaintiff is entitled to his overtime pay, Everi Games argues that the claim must be

3   dismissed because it is not "plausible."

4    Everi Games again relies heavily on *Landers v. Quality Commc'ns, Inc.*

5   (9th Cir. 2014) 771 F.3d 638 to argue that Plaintiff failed to allege "at least one

6   workweek when [the plaintiff] worked in excess of forty hours and was not paid

7   for the excess hours in that workweek, or was not paid minimum wages." *See*,

8   e.g., Everi Games' Motion, p. 6

9    But Plaintiff does allege a specific workweek where the violations occurred

10   to satisfy *Landers v. Quality Commc'ns, Inc.*

11   • For example, on February 14, 2022, Plaintiff travelled to Harrah's Casino in

12    Funner, CA, San Diego County for a work order.  Plaintiff did not receive

13    his rest breaks or meal periods that day due to the demands of the SLA.

14    And, as instructed, Plaintiff clocked-out before the fifth hour and continued

15    working to meet the demands of the SLA.  Plaintiff was not paid for the off-

16    the-clock work at the appropriate overtime pay rate. SAC ¶ 25

17    Notwithstanding above, there are two problems with Everi Games'

18   misguided reliance on *Landers v. Quality Commc'ns, Inc.*

19    One, *Landers*—a non-California case—deals with claims for overtime and

20   minimum wage under FLSA only.  In other words, *Landers* applies the 40-hour

21   weekly overtime standard as opposed to the 8-hour daily overtime standard under

22   the California Labor Code.

23    Here Plaintiff clearly alleges overtime pay under both the California and

24   FLSA standards by stating that Plaintiff worked 11-hour shifts, five days a week,

25   from August 2021 to September 16, 2022, and Everi Games failed to pay him all

26   overtime hours worked over 8+ hours a shift.  Consequently, during the course of

27   Plaintiff's employment, Everi Games failed to compensate Plaintiff for all

28   overtime hours worked in excess of eight hours per day and/or 40 hours per week

as required by California Labor Code and FLSA. SAC ¶ 29

And two, Plaintiff's overtime and minimum wage allegations are more precise than that's required by *Landers*: Plaintiff alleges that he was not paid overtime for every *shift* that he worked, and not just on a workweek.

- Plaintiff worked 11-hour *shifts*, five days a week, from August 2021 to September 16, 2022, and Everi Games failed to pay him all overtime hours worked over 8+ hours a shift. SAC ¶ 29  And Plaintiff is now entitled to his overtime pay earned and owing from Everi Games

Regardless the Ninth Circuit and other district courts have held that a plaintiff need not plead facts showing a specific, particular workweek where he worked more than forty hours and did not receive overtime pay. See *Boon v. Canon Bus. Sols., Inc.* (9th Cir. 2015) 592 F. App'x 63; *Varsam v. Lab. Corp. of Am.* (S.D. Cal. 2015) 120 F. Supp. 3d 1173, 1178; *Tan v. GrubHub, Inc.* (N.D. Cal. 2016) 171 F. Supp. 3d 998, 1008; *Slack v. Int'l Union of Operating Engineers* (N.D. Cal. 2015) 83 F. Supp. 3d 890, 900

In *Boon v. Canon Bus. Sols., Inc.* (9th Cir. 2015) 592 F. App'x 63, the court reversed a district court's ruling "that [a plaintiff's] complaint must contain an estimate of how much uncompensated time was worked, how often, and at what rate to survive a motion to dismiss." *Id*. at 632  *Boon* interpreted *Landers* to mean the opposite—that "detailed factual allegations regarding the number of overtime hours worked are not required to state a plausible claim." *Id*.

And Boon explained that, because the plaintiff "identified tasks for which he was not paid and alleged that he regularly worked more than eight hours in a day and forty hours in a week," his allegations "satisfied the pleading requirements ... at this stage of the litigation." *Id*.

Hence Plaintiff undoubtedly stated a plausible claim for relief for overtime pay and minimum wages.

1

2

2.  **Plaintiff's meal period and rest break claims meet the Rule**

**8 pleading requirements**

3

4

The same is true for Plaintiff's meal period and rest break claims.  The SAC more than adequately states a claim for meal periods and rest breaks.

5

For example, Plaintiff alleged in specificity that:

6

7

8

9

- The SLA guarantees the casinos that Everi Games' technicians will respond to a service call within 2 hours of the call and complete the job within 4 hours of their arrival.  In other words, Defendants guaranteed the casinos that a job would be completed within 6 hours of the call. SAC ¶ 11

10

11

12

13

- The SLA directly conflicts with California meal period and rest break laws because it makes it virtually impossible for Defendants' technicians—who work alone—to take a rest break and meal period within the first two hours and five hours of their shift, respectively. SAC ¶ 12

14

15

16

- Everi Games circumvented California laws by instructing their technicians to "clock-out" for their meal periods on their "UKG App" before the fifth hour and continue working to meet the demands of the SLA.

17

18

- Everi Games utilized the UKG App as their electronic timecard and had full access to every employee's time.

19

20

- Everi Games required their technicians to download the UKG App on their phones and "clock in" and "clock out" through it.

21

22

23

- Whenever a technician failed to clock out for their meal periods before the fifth hour, Everi Games would auto-deduct 30 minutes to reflect a meal period whether provided or not. SAC ¶ 13

24

25

26

27

- So, on a given shift, Plaintiff would "clock in" on his UKG App at 6 am and travel one to two hours to his first casino work order.  On average, Plaintiff would service, repair or maintain two to three slot machines at each casino—spending about an hour on each machine. SAC ¶ 22

28

- Then, per company policy, Plaintiff had to wait for the casino commissioner to come and inspect every component of the machines before he could leave the casino floor. SAC ¶ 23

- Plaintiff's managers, including Augustine Martinez, would instruct Plaintiff to "clock-out" for his meal periods before the fifth hour and continue working to service the machines or wait on the casino commissioner. SAC ¶ 24

- Plaintiff travelled and worked alone at the casinos so—given the demands of the SLA—there was nobody to relieve him for his meal and rest breaks. Instead Everi Games required Plaintiff to practice "eat while you go"—that is, Plaintiff's "breaks" coincided with Plaintiff's stopping to fuel up his company van between casino visits. SAC ¶ 26

SAC alleges that California Labor Code requires that an employer provide an uninterrupted meal period of not less than 30 minutes before the fifth hour of work, and a 10-minute rest break for every four hours (or major fraction) worked. Anything over two hours is a "major fraction" of a four-hour period.

SAC also alleges that Everi Games' SLA directly conflicts with California meal period and rest break laws because it makes it virtually impossible for Defendants' technicians—who work alone—to take a rest break and meal period within the first two hours and five hours of their shift, respectively. SAC ¶ 12 And that, Everi Games circumvented California laws by instructing their technicians, including Plaintiff, to "clock-out" for their meal periods on their "UKG App" before the fifth hour and continue working to meet the demands of the SLA. SAC ¶ 13

So the proper question for a 12(b)(6) motion is: *could* Everi Games have failed to provide Plaintiff lawful meal periods and rest breaks?  The answer is yes because, among others, SLA makes it difficult for Plaintiff to timely take his breaks, and Plaintiff's supervisor explicitly told him to "clock out" for his meal periods and continue working.

The question is not *did* Everi Games fail to provide Plaintiff lawful meal periods and rest breaks?  Again, the question of "did they" is reserved for the trier of fact with proper evidence established through discovery.

Plaintiff again pleads "a short and plain statement of the claim" showing that Plaintiff is entitled to meal period and rest break premium pay.

But Everi Games again argues that the claims must be dismissed because they are not "plausible."  And they again rely on *Landers*.

Everi Games' reliance on *Landers* again is problematic for two reasons.  One *Landers* does not state that "a plausible meal or rest break claim Plaintiff must plead at least one concrete instance of a meal or rest break violation." *See* Motion, p. 10.  *Landers* deals with overtime and minimum wage claims under FLSA only.  It does not address meal periods or rest breaks under California Labor Code at all.

And two Plaintiff has plead instances of meal and rest break violations—
- For example, on February 14, 2022, Plaintiff travelled to Harrah's Casino in Funner, CA, San Diego County for a work order.  Plaintiff did not receive his rest breaks or meal periods that day due to the demands of the SLA.  And, as instructed, Plaintiff clocked-out before the fifth hour and continued working to meet the demands of the SLA.  Plaintiff was not paid for the off-the-clock work at the appropriate overtime pay rate. SAC ¶ 25

Regardless, as detailed above, *Boon* indicates that *Landers* does not require the type of specificity that Everi Games demand.  Like in *Boon*, Plaintiff has described "tasks for which he was not paid" and has alleged that Everi Games "regularly" violated the provisions giving rise to his claims.

Hence Plaintiff undoubtedly stated a plausible claim for relief for meal period and rest break premium pay.

### 3.    Plaintiff's claim for wage statements is well-plead

Plaintiff's SAC more than adequately states a claim for wage statements:

- Defendants have intentionally and willfully failed to provide employees with complete and accurate wage statements.  The deficiencies include, among other things, the failure to correctly identify the total hours worked and the gross wages earned by Plaintiff and Class members; the overtime hours worked by Plaintiff and Class members; and the meal period and rest break premiums owing to Plaintiff and Class members (SAC  ¶¶ 78-79)

Section 226 of the Labor Code requires that employers provide each employee with accurate, itemized wage statements.  The failure to provide overtime pay and meal and rest break premiums makes the wage statements *ipso facto* inaccurate.  When knowing and intentional, as the violations are here alleged to be (SAC ¶¶ 78-79), these failures thus also constitute a separate, independent violation of section 226.  For this reason, the claim under section 226(a) also functions as a "derivative" claim.  Thus Everi Games attack on this claim for relief fails here because the underlying claims for lost overtime and unpaid meal and rest break premiums are adequately plead. See *Ortega v. J.B. Hunt Transp., Inc.* (C.D. Cal. 2009) 258 F.R.D. 361, 374 (if main claims are upheld in class certification, so are "wholly derivative" claims).

However Everi Games also seeks to slip in a false standing requirement for section 226(e) not present in the text.  Everi Games posits that the requirement that an employee must plead that he or she "suffered injury" as a result of their failure to provide a wage statement means that he or she must show (and plead) "actual harm" (presumably some sort of financial injury) beyond the receipt of an inaccurate wage statement.

Showing "injury" for standing purposes is distinct from "actual damages."  This very District has held that 226(e) does not require showing of "injury" beyond the failure to receive the required wage statement.  "Injury" under section 226(e) means the invasion of a legal right, such as "the right to receive an itemized pay statement." *Kisliuk v. ADT Sec. Servs.* (C.D. Cal. 2008) 263 F.R.D. 544, 548

More importantly, the California Supreme Court in *Kwikset Corp. v. Super. Ct.* (2011) 51 Cal. 4th 310 held that "injury" means only the invasion of a legal right. *Kwikset* expressly holds that the term "injury" is a different, lower threshold than "actual damages," requiring only "the invasion of a legal right."

Accordingly Plaintiff has adequately plead a wage statement violation under Section 226(a).

### 4.    Plaintiff's claim for waiting time penalties (derivative claim) is well-plead

Plaintiff's claim for relief derives respectively from the failure to pay all wages due upon termination (Labor Code §§ 201 and 202).  When an employee is discharged, any wages owed, including meal period premiums or rest break premiums ripen into an independent claim for failure to pay all wages due upon termination under Section 202.

Everi Games argues that these derivative claims must fail if the underlying claims are not adequately plead.  The corollary, however, is also true:  the attack on the derivative claims fails because the underlying claims for lost overtime and unpaid meal and rest break premiums, as detailed above, are adequately plead. See *Ortega v. J.B. Hunt Transp., Inc.* (C.D. Cal. 2009) 258 F.R.D. 361, 374 (if main claims are upheld in class certification, so are "wholly derivative" claims).

Here Plaintiff alleges that final paychecks issued by Everi Games did not include all wages owed to Plaintiff and Class members, including all overtime pay and meal period and rest break premium pay that are set forth elsewhere in the complaint. (*See*, e.g., SAC ¶¶ 86-87).  Everi Games does not propose what other allegations Plaintiff should plead to make out a violation of Sections 201 and 202 of the Labor Code.  No more is required at this stage.

Further Everi Games does not provide any binding legal authority in support of their position that Plaintiff has to *prove* "willfulness" in his SAC.  It is sufficient that Plaintiff had adequately plead the underlying claims for the

1    derivative claims to attach.

2           **5.      Plaintiff's claim for violation of California Business &**

3                    **Professions Code §§ 17200, et seq. ("UCL") is well-plead**

4           **a.      Meal and rest break premiums, like overtime pay,**

5                    **are a "wage" and Plaintiff is owed restitution under**

6                    **the UCL because unpaid wages become property to**

7                    **which he is entitled**

8           In 2007 the California Supreme Court in *Murphy v. Kenneth Cole* (2007) 40

9    Cal. 4th 1094 settled a much-litigated question under the California Labor Code

10   by ruling that payments mandated by Labor Code section 226.7 for meal and rest

11   period violations are "wages." *Murphy v. Kenneth Cole* (2007) 40 Cal. 4th 1094,

12   1099-1100; 1103-1105[2]  California's Supreme Court has settled the issue.  Unless

13   or until the legislature changes the law, it is undisputed that section 226.7

14   violation payments are "wages."

15          Just last year, the California Supreme Court clarified in *Naranjo v Spectrum*

16   *Security Services, Inc.* (2022) 13 Cal.5th 93, 101 that meal period and rest break

17   premium pay are "wages."

18          Next, and following on section 226.7 violation payments as wages, Plaintiff

19   is entitled to restitution under California Business & Professions Code §§ 17200,

20   et seq. because unpaid wages become property to which he is entitled.

21          Wages unlawfully withheld from a worker are recoverable under the UCL:

22

23          [2]      See also *Brinker Restaurant Corp. v. Sup. Ct.* (2012) 53 Cal. 4th 1004, 1018
     ["Employers who violate these requirements must pay premium wages."]; *Lazarin v. Superior*

24   *Court* (2010) 188 Cal.App.4th 1560, 1582 ["In *Kenneth Cole Productions*, supra, 40 Cal.4th
     1094, the Supreme Court considered whether the section 226.7, subdivision (b), remedy of one

25   additional hour of pay constitutes a wage or premium payment subject to a three-year statute of
     limitations (Code Civ. Proc., § 338) or a penalty subject to a one-year statute of limitations

26   (Code Civ. Proc., § 340).  After reviewing the plain language of the statute itself and the
     legislative and administrative history of the provision, the court concluded it is a premium wage

27   intended to compensate employees...."]

28

> We conclude that orders for payment of wages unlawfully withheld from an employee are also a restitutionary remedy authorized by section 17203. The employer has acquired the money to be paid by means of an unlawful practice that constitutes unfair competition as defined by section 17200. The employee is, quite obviously, a "person in interest" (§ 17203) to whom that money may be restored. The concept of restoration or restitution, as used in the UCL, is not limited only to the return of money or property that was once in the possession of that person. . . . [E]arned wages that are due and payable [ ] are as much the property of the employee who has given his or her labor to the employer in exchange for that property as is property a person surrenders through an unfair business practice. An order that earned wages be paid is therefore a restitutionary remedy authorized by the UCL.

*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal. 4th 163, 178; see also *Pineda v. Bank of America* (2010) 50 Cal.4th 1389, 1402 ("...earned wages that are due and payable pursuant to section 200 et seq. of the Labor Code are as much the property of the employee who has given his or her labor to the employer in exchange for that property as is property a person surrenders through an unfair business practice....An order that earned wages be paid is therefore a restitutionary remedy authorized by the UCL"); *Hudgins v. Neiman Marcus, Inc.* (1995) 34 Cal.App.4th 1109, 1126 ("...business practices that violate the California Labor Code have also been held to violate Business and Professions Code section 17200"); *People v. Los Angeles Palm, Inc.* (1981) 121 Cal. App. 3d 25, 33 (crediting tips of restaurant employees against their minimum wage, violates both § 351 and Bus. & Prof. Code, § 17200)

Here the SAC adequately alleges that Plaintiff and Class members were not paid overtime, authorized or permitted lawful meal periods and rest breaks, and were not provided with one hour's wages in lieu thereof in violation of, among

others, Labor Code §§ 226.7, 510, 512, 1197, 1198 and applicable IWC Wage Orders.  Hence Plaintiff is entitled to restitution to overtime compensation and 226.7 payments under the UCL.

### 6.      Plaintiff's PAGA claim is well-plead

Pursuant to California Labor Code §§ 2699.3 and 2699.5, an aggrieved employee, including Plaintiff, may pursue a civil action arising under PAGA after the following requirements have been met:

(a)      The aggrieved employee shall give written notice ("Employee's Notice") to the LWDA and the employer of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations.

(b)      The LWDA shall provide notice ("LWDA Notice") to the employer and the aggrieved employee by certified mail that it does not intend to investigate the alleged violation within sixty (60) calendar days of the postmark date of the Employee's Notice.  Upon receipt of the LWDA Notice, or if the LWDA Notice is not provided within sixty-five (65) calendar days of the postmark date of the Employee's Notice, the aggrieved employee may commence a civil action pursuant to California Labor Code § 2699 to recover civil penalties in addition to any other penalties to which the employee may be entitled.

On September 13, 2023 Plaintiff provided written notice online to the LWDA of the specific provisions of the California Labor Code alleged to have been violated, including the facts and theories to support the alleged violations. SAC ¶¶ 36, 115

Plaintiff has satisfied the administrative prerequisites under California Labor Code § 2699.3(a) to recover civil penalties against Defendants, in addition to other remedies, for violations of California Labor Code §§ 200, 201, 202, 203, 204, 221, 224, 226(a), 226.7, 226.8, 510, 512(a), 1102.5, 1174, 1194, 1197, and 1198. SAC ¶ 116

And Plaintiff served the PAGA Notice on Everi Games via certified mail eight months ago. SAC ¶ 36.  So it is disingenuous for Everi Games to state that they have not seen the PAGA Notice.

### 7.     Plaintiff's FLSA claim is well-plead

FLSA claims are subject to the same pleading standards as California Labor Code claims.  Thus Plaintiff's FLSA claim is well-plead for the same reasons set forth above regarding Plaintiff's Labor Code claims.

### D.     Motion to Dismiss or Strike Class allegations should be denied

### 1.     Challenges to Class allegations should be made at the class certification stage

Everi Games cites no published case law and no California or Ninth Circuit authority for dismissing or striking class action allegations at the pleading stage. Almost every court that reviews motions such as this concludes that attacks on class certification allegations should be handled at the class certification stage.

- "[C]ompliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim." *Gillibeau v. City of Richmond* (9th Cir.1969) 417 F.2d 426, 432; see also *Inter-Modal Rail Employees Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.* (9th Cir. 1996) 80 F.3d 348, 353

- "[I]t is premature to assess compliance with Rule 23 at this early stage where the defendant has yet to file an answer and discovery has not yet begun." *Haralson v. United Airlines, Inc.*, (N.D. Cal. 2016) 224 F. Supp. 3d 928, 942

- "[M]otions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle for the arguments." *Thorpe v. Abbott Labs., Inc.* (N.D. Cal. 2008) 534 F. Supp. 2d 1120, 1125

- *See*, *e.g.*, *Kazemi v. Payless Shoesource, Inc.*, 2010 U.S. Dist. LEXIS 27666 at *11 (N.D. Cal. Mar. 12, 2010) (holding that motion to strike class allegations is only appropriate in the "rare case where the pleadings indicate

that the class requirements cannot possibly be met."); *In re NVIDIA GPU Litig.*, No. C 08-04312 JW, 2009 WL 4020104, *13 (N.D. Cal. Nov.19, 2009) ("A determination of the ascertainability and manageability of the putative class in light of the class allegations is best addressed at the class certification stage of the litigation."); *In re Wal-Mart Stores, Inc. Wage and Hour Litigation* (N.D. Cal. 2007) 505 F. Supp. 2d 609, 615 ("Indeed, while there is little authority on this issue within the Ninth Circuit, decisions from courts in other jurisdictions have made clear that dismissal of class allegations at the pleading stage should be done rarely and that the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery.")

- A Rule 12(b)(6) motion cannot be used to dismiss class action claims because a "class action is a procedural device, not a claim for relief." *Meyer v. National Tenant Network, Inc.* (N.D. Cal. 2014) 10 F.Supp.3d 1096, 1104

Waiting until class certification to evaluate the suitability of class allegations is almost certainly the right procedural answer.  It allows for proper factual development and prevents Rule 12 motions from becoming another place for mini-trials on class certification issues.

## 2.     *Iqbal* does not apply to Rule 23 allegations

Everi Games presumes that the analysis of Rule 8 in *Iqbal* and *Twombly* applies to every statement in a complaint, including averments related to class treatment under Rule 23.  No court, however, has held that *Iqbal* changes the pleading requirements under Rule 23.  In fact, the Supreme Court held that a class action is a *procedure*, not a claim for relief.  The Supreme Court analyzed the role of class actions under the familiar *Erie* test (*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)) and held that the class action device is not a claim for relief. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.* (2010) 130 S. Ct. 1431

In *Shady Grove*, the Supreme Court held that a New York statute forbidding

a plaintiff from bringing an action for civil penalties under the insurance code as a class action is merely a procedural rule inapplicable to federal courts sitting in diversity, and such an action can be brought as a class action in federal court. *Shady Grove*, *supra*, 130 S.Ct. at 1443.

### a. The Class allegations are sufficient

At any rate, and in contrast to Everi Games' meritless arguments, Plaintiff alleges sufficient facts to show commonality.  For example, the SAC alleges there are common questions of law and fact as to the Class (and each subclass, if any) that predominate over questions affecting only individual members, including but not limited to:

- Whether the SLA directly conflicts with California meal period and rest break laws because it makes it virtually impossible for Defendants' technicians—who work alone—to take a rest break and meal period within the first two hours and five hours of their shift, respectively
- Whether Everi Games engaged in a pattern or practice of failing to pay Plaintiff and the Class members for the total hours worked during the Class period
- Whether Everi Games failure to pay wages, without abatement or reduction, in accordance with the California Labor Code, was willful
- Whether Everi Games timekeeping system and policies failed to record all hours worked by Plaintiff and Class members
- Whether Everi Games owe Plaintiffs and Class members overtime pay for work over eight hours per day, over 12 hours per day, and/or over forty 40 hours per week
- Whether Everi Games failed to record Plaintiff and Class members' meal periods
- Whether Everi Games deprived Plaintiff and Class members of meal periods or required Plaintiff and Class members to work during meal periods without compensation

- Whether Everi Games deprived Plaintiff and Class members of rest periods or required Plaintiff and Class members to work during rest periods without compensation
- Whether Everi Games' conduct was willful or reckless
- Whether Everi Games violated Labor Code § 226 by failing to timely furnish Plaintiff and Class members with accurate wage statements
- Whether Everi Games violated Labor Code §§ 218.5, 204, 1197, and 1198 by failing to compensate Plaintiff and Class members for those acts Everi Games required Plaintiff and Class members to perform for the benefit of Defendants
- Whether Everi Games engaged in unfair business practices in violation of California Business & Professions Code § 17200, et seq.
- The appropriate amount of damages, restitution, or monetary penalties resulting from Everi Games' violations of California law

SAC ¶¶ 12, 44

Accordingly Plaintiff has adequately plead his class allegations.

### 3.    Plaintiff's injunctive relief claim is adequately alleged

Everi Games argues that only a current employee may request injunctive relief, and Plaintiff is not a current employee.  But the only injunction a former employee may not pursue on a UCL claim is an injunction relating to ongoing working conditions because such an injunction can no longer benefit him or her. See, e.g., *People v. McKale* (1979) 25 Cal. 3d 626, 632.

Here, however, the prayer for relief seeks no such injunction.  Rather Plaintiff seeks injunctive relief only as is necessary to enforce the restitution, including, if necessary, the appointment of a receiver. (SAC Prayer, ¶¶ 32-35).

So the argument fails because Plaintiff is not seeking the sort of injunction restricted only to current employees.

**E.     If the Motion is granted in any respect, Plaintiff should be given leave to amend**

If this Court is inclined to grant any portion of Everi Games' motion to dismiss, Plaintiff respectfully requests leave to amend.

The Federal Rules provide that leave to amend should be "freely granted when justice so requires." Fed. R. Civ. Pro. 15(a).  This policy is to be applied with "extreme liberality." *Eminence Capital LLC v. Aspeon, Inc.* (9th Cir. 2003) 316 F.3d 1048, 1051; *Morongo Band of Mission Indians v. Rose* (9th Cir. 1990) 893 F.2d 1074, 1079; *Chang v. Chen* (9th Cir. 1996) 80 F.3d 1293, 1296 (where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment)

Federal policy strongly favors determination of cases on their merits, so leave to amend is freely granted. *Foman v. Davis* (1962) 371 U.S. 178, 182.

## IV.   CONCLUSION

For all the foregoing reasons, Everi Games Motion should be denied in all respects.  If granted in any respect, Plaintiff should be given leave to amend.

Respectfully Submitted,

Dated: May 9, 2024                          PARK APC

*/s/ Sang (James) Park*

By:_____
              Sang (James) Park

         Attorneys for Plaintiff

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND/OR STRIKE SECOND AMENDED COMPLAINT