1 | SANG (JAMES) PARK, SBN 232956
*sang@park-lawyers.com*
2 | PARK APC
8383 Wilshire Boulevard, Suite 800
3 | Beverly Hills, California 90211
Telephone:   (310) 627-2964
4 | Fax:         (310) 362-8279

5 | Attorneys for Plaintiff

6

7 | UNITED STATES DISTRICT COURT

8 | CENTRAL DISTRICT OF CALIFORNIA

9

10 | JOSE VALENZUELA, individually
and on behalf of all others similarly
11 | situated,

Case No: 2:24-cv-00257-MRA-JPRx

Hon. Mónica Ramírez Almadani

12 |        Plaintiff,

13 |        vs.

14 | EVERI GAMES INC.; and DOES 1 to 10,

15 |        Defendants.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

16

17

18

19

20

21

22

23

24

25

26

27

28

---

# TABLE OF CONTENTS

I.    INTRODUCTION…………………………………...……………..…  1

II.   FACTS AND PROCEDURE……………………………………...……  2

      A.   Overview of Case…………………………………………….…  2

      B.   Plaintiff's Counsel thoroughly investigated the factual and legal
           issues and objectively assessed the Settlement's reasonableness…  2

      C.   Parties settled after mediation.......................................................  4

      D.   Proposed settlement fully resolves Plaintiff's claims....................  4

           1.   Composition of the Settlement Class.....................................  4

           2.   Settlement consideration........................................................  4

           3.   Release by the Settlement Class............................................  5

III.  ARGUMENT……………………………………....................……..  6

      A.   Court should preliminarily approve the Class Action Settlement…  5

      B.   Settlement is the product of arms-length negotiations and is
           therefore entitled to a presumption of fairness…………………  7

      C.   The relief provided by the Settlement is fair and reasonable…....  8

           1.   The Class Settlement Amount is within the range of
                reasonableness……………………………………………  8

           2.   Plaintiff's Counsel realistically assessed the settlement value
                of claims…………………………………………………….  10

                a.   Meal period and rest break claims…………………  10

                b.   Overtime claim……………………………………….  11

                c.   Wage statement claim……………………….………  12

        d.    Waiting-time and PAGA penalties……………..………… 13

        e.    Total exposure…………………………………....……… 14

    3.    The Settlement provides for an equitable method of
        allocating relief to Class Members………………………… 15

    4.    The Court should preliminarily approve the negotiated
        Attorneys' Fees and Costs…………………………….……… 15

D.    There are no obvious deficiencies with the Settlement or
       preferential treatment to certain Class Members……..……..…… 16

E.    The Court should preliminarily approve the negotiated Class
       Representative Service Award…………………………………… 17

F.    The proposed Class Notice adequately informs Class Members
       about the case and proposed Settlement………………………… 18

G.    Proposed PAGA settlement is reasonable……………………… 19

H.    CAFA…………………………………………………….……..…… 20

I.    Settlement Class satisfies Rule 23 and should be certified……… 20

    1.    Numerosity………………………………..…..…..………..… 20

    2.    Ascertainability……………………………..………..…… 21

    3.    Typicality………………………………………........……… 21

    4.    Commonality………………………………………..…………… 22

    5.    Adequacy……………………………………………………… 23

    6.    Common questions of law and fact predominate……………. 23

    7.    Superiority of Class Action…………………………….…… 23

IV.  CONCLUSION………………………………………………….……… 24

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3

4   *Balderas v. Massage Envy Franchising, LLP*
        2014 WL 3610945. (N.D. Cal. July 21, 2014)……………....…… 14
5

6   *Churchill Village, LLC v. Gen. Elec.*
        361 F.3d 566 (9th Cir. 2004)……………………………………….. 6
7

8   *D'Amato v. Deutsche Bank*
        236 F.3d 78 (2d Cir. 2001)………………………………......… 7
9

10  *Eisen v. Carlisle & Jacqueline*
        417 U.S. 156 (1974)……………………………………………… 18
11

12  *Franklin v. Kaypro*
        884 F.2d 1222 (9th Cir. 1989)…………………………………….. 6
13

14  *Hanlon v. Chrysler Corp.*
        150 F.3d 1011 (9th Cir. 1998)…………………………….....… 6, 22, 24
15

16  *In re Apple Computer, Inc. Derivative Litig.*
        2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008)………… 7
17

18  *In Re Armored Car Antitrust Litig.*
        472 F. Supp. 1357 (N.D. Ga. 1979)………………………………… 14
19

20  *In Re California Pizza Kitchen Data Breach Litigation*
        129 F. 4th 667 (9th Cir. 2025)…………………………………… 10
21

22  *In Re Four Seasons Secs. Laws Litig.*
        58 F.R.D. 19 (W.D. Okla.1972)…………………………..……… 14
23

24  *In re Global Crossing Sec. and ERISA Litig.*
        225 F.R.D. 436 (S.D.N.Y 2004)……………………………………… 9
25

26  *In re IKON Office Solutions, Inc. Sec. Litig.*
        194 F.R.D. 166 (E.D. Pa. 2000)……………………………..…… 9

27

28

*In re Nat'l Football League Players' Concussion Injury Litig.*
    961 F. Supp. 2d 708 (E.D. Pa. 2014)……………………………… 8

*In re Tableware Antitrust Litig.*
    484. F. Supp. 2d 1078 (N.D. Cal. 2007)…………………………… 8

*In re Warfarin Sodium Antitrust Litig.*
    212 F.R.D. 231 (D. Del. 2002)…………………………………… 14

*Linney v. Cellular Alaska P'ship*
    151 F.3d 1234 (9th Cir. 1998)…………………………………… 9

*Loud v. Eden Med. Ctr.*
    2013 U.S. Dist. LEXIS 122873 (N.D. Cal. Aug. 28, 2013)………… 12

*Mangold v. Calif. Public Utilities Comm'n*
    67 F.3d 1470 (9th Cir. 1995)…………………………………… 15

*McAtee v. Capital One, F.S.B.*
    479 F.3d 1143 (9th Cir. 2007)…………………………………… 16

*Montoya v. Intelicare Direct, Inc.*
    2016 WL 4142342 ((S.D. Cal. Aug. 4, 2016)……………………… 8

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*
    221 F.R.D. 523 (C.D. Cal. 2004)……………………….....…..…… 9

*Newman v. Stein*
    464 F. 2d 689 (2d Cir. 1972)…………………………………… 9

*Officers for Justice v. Civil Serv. Comm'n*
    688 F.2d 615 (9th Cir. 1982)…………………………………… 9

*Rodriguez v. West Pub. Corp.*
    463 F.3d 948 (9th Cir. 2009)…………………………………… 9, 17

*Ruch v. AM Retail Group, Inc.*
    2016 WL 1161453 (N.D. Cal. Mar. 24, 2016)……………………… 8

*Vizcaino v. Microsoft Corp.*
    290 F.3d 1043 (9th Cir. 2002)…………………………………… 15

**STATE CASES**

*Chavez v. Netflix, Inc.*
 162 Cal. App. 4th 43 (2008)……………………………………… 16

*Laffitte v. Robert Half Int'l*
 1 Cal. 5th 480 (2016)…………………………………………… 16

*Lealao v. Beneficial Cal. Inc.*
 82 Cal. App. 4th 19 (2000)……………………………………… 16

*Serrano v. Priest*
 20 Cal. 3d 25 (1977)…………………………………………… 16

**FEDERAL STATUES**

Fed. R. Civ. P. 23…………………………………………......…… 5, 6, 10, 19, 20, 22

**STATE STATUES**

Cal. Labor Code § 203………………………………………… 13

Cal. Labor Code § 226………………………………………… 12

Cal. Labor Code § 2699……………………………………… 14

**OTHER**

Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002)............... 8

Manual for Complex Litigation (4th ed. 2004)……………………… 6, 19

Tashima & Wagstaffe, Rutter Group Practice Guide: Federal Civil Procedure Before Trial, California & 9th Cir. Editions (The Rutter Group, 2015)…………………………………………… 15

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, J. of Empirical Legal Studies, Vol. 1 (March 2004)................................................................... 16

# I.    INTRODUCTION

Plaintiff Jose Valenzuela ("Plaintiff") and Defendant Everi Games Inc. ("Everi" or "Defendant") (collectively, the "parties") seek preliminary approval of a $327,500 class action settlement for 36 class members. Below are key terms of the Joint Stipulation of Class Action Settlement and Release[1]:

1.    Class Members: all current and former non-exempt employees who worked for Defendant in California during the time period of September 13, 2019 through the date of Preliminary Approval.

2.    Gross Settlement Fund: $327,500 that includes:

    a.    Net Settlement Fund—i.e., Gross Settlement Fund minus the Labor and Workforce Development Agency ("LWDA") Payment, Service Payment, Attorneys' Fees and Costs Award to Class Counsel, and Administration Costs to the Administrator.

        i.    One hundred percent of the Net Settlement Fund will be paid to Class Members and not retained by Defendant

    b.    Distribution of the Net Settlement Fund based on the percentage of Qualifying Workweeks by each individual Class Member compared to Qualifying Workweeks worked by all Class Members

    c.    $109,167 Attorneys' Fees and incurred costs to Class Counsel

    d.    $4,000 Administration Costs to the Claims Administrator

    e.    $16,875 PAGA Payment pursuant to Private Attorneys General Act.  $12,656.25 (75%) of the PAGA Payment shall be paid to the LWDA and $4,218.75 (25%) of the PAGA Payment shall remain

---

[1]    "Settlement Agreement" or "Settlement." Unless indicated otherwise, capitalized terms used here have the same meaning as those defined by the Settlement Agreement.

3070869

part of the Net Settlement Fund to be paid to the Participating Class Members

      f.    $10,000 Service Payment to Plaintiff Jose Valenzuela for his efforts and general release of claims against Defendant

As detailed below, the Settlement satisfies all criteria for preliminary approval under federal law and falls within the range of reasonableness. Accordingly Parties respectfully request that this Court grant preliminary approval of the Settlement Agreement.

## II.    FACTS AND PROCEDURE

### A.    Overview of Case

On September 13, 2023 Plaintiff brought the instant wage and hour Class action primarily challenging two of Defendant's company-wide practices that stem from their alleged unlawful uniform policies: failure to pay overtime; failure to provide duty-free uninterrupted Labor Code-compliant rest breaks, failure to provide duty-free uninterrupted Labor Code-compliant meal periods, and failure to provide reporting time pay for on-call work.

All remaining claims—i.e., unpaid minimum wage, wages not paid upon termination, non-compliant wage statements, PAGA penalties and Cal. B&P 17200 (Unfair Business Practices)—are derived from Defendant's alleged unlawful meal, rest, overtime and reporting time policy and practices. *See* Declaration of Sang (James) Park [Park Decl] ¶¶ 3-4. Defendant denies and disputes that it violated any laws or that it engaged in the challenged employment practices. In the interest of resolution, and without admitting liability or conceding Plaintiff's allegations, Defendant made the commercial decision to settle.

### B.    Plaintiff's Counsel thoroughly investigated the factual and legal issues and objectively assessed the Settlement's reasonableness

Plaintiff's Counsel thoroughly investigated and researched Class claims and

3070869

their theories of liability, their defenses, and the developing body of law before the Settlement. The comprehensive investigation included the exchange of informal and formal discovery and statistical information with Defendant; multiple fact-finding sessions with Plaintiff; and several conferences with Defense counsel. (Park Decl. ¶ 5)

Plaintiff received, among others, the following information, data and documents relevant to Class-wide liability ("Class Data") in support of his investigation and evaluation of Class claims: (1) employee time and payroll records; (2) total number of former and current employees in the Class Period; (3) total number of workweeks; (4) total number of shifts and pay periods; (5) average rate of pay; (6) employee handbooks, procedure manuals, and operations manuals addressing Defendant's wage and hour practices, e.g., (i) timekeeping and payroll policies, (ii) meal and rest periods, (iii) wage statements; and (8) employee schedules. (Park Decl. ¶ 6)

Plaintiff's Counsel then applied the Class Data to Class members to determine, among others, alleged overtime violations; missing, late or short meal periods; and the number of rest breaks owed. (Park Decl. ¶ 7)

Needless to say Plaintiff's Counsel made an informed decision about the strengths and weaknesses of Plaintiff's theories of liability, Defendant's affirmative defenses, Class-wide damages, and benefits of Settlement based on the receipt, analysis, and application of the Class Data. (Park Decl. ¶ 8)

Further, and continuing their due diligence, Plaintiff's Counsel (1) determined Plaintiff's suitability as a Class representative, through interviews, background investigations, and analyses of his employment files and related records; (2) researched wage-and-hour class actions involving similar claims; (3) engaged in the discovery process; (4) obtained and analyzed Defendant's wage-and-hour policies and procedures; (5) obtained and analyzed time and

3070869

corresponding payroll records to determine violation rates and penalty payments; (6) researched the latest case law bearing on the theories of liability; (7) researched settlements in similar cases; (8) analyzed the value of Plaintiff's claims; (9) drafted a mediation brief; (10) negotiated the terms of the Settlement; (11) finalized the Settlement and Release; (12) finalized the Notice of Class Action Settlement; and (13) drafted preliminary approval papers. (Park Decl. ¶ 9)

### C.    Parties settled after mediation

The Parties agreed to private mediation to attempt to resolve the Class claims. On December 16, 2024 the Parties attended an all-day mediation with Paul Grossman, Esq.—a well-regarded mediator with experience in resolving wage and hour class actions. The Parties reached the Class Settlement at the mediation. At all times the Parties' negotiations were adversarial and non-collusive. (Park Decl. ¶ 10)

### D.    Proposed settlement fully resolves Plaintiff's claims

#### 1.    Composition of the Settlement Class

The proposed Settlement Class Members consist of all current and former non-exempt employees who worked for Defendant in California during the time period of September 13, 2019 through the date of Preliminary Approval. (Settlement Agreement § 1.8)

#### 2.    Settlement consideration

Plaintiff and Defendant have agreed to fully resolve the Class claims for $327,500.

The Gross Settlement Fund includes: (1) Individual Settlement Payments to Class Members; (2) attorneys' fees and actual litigation costs of $109,167; (3) Claims Administration Costs of $4,000; (4) PAGA Payment of $16,875; and (5) Service Payment of $10,000 to Plaintiff Jose Valenzuela. (Settlement Agreement §§ 1.14, 2.1-2.9)

The distribution of the Net Settlement Fund to Class Members is

straightforward: Each Class Member's share of the settlement will be proportional to the total number of Qualifying Workweeks he or she worked during the Class Period. (Settlement Agreement § 3.14) Defendant's records will determine Class Members' number of Qualifying Workweeks, and Class Members will have an opportunity to challenge those records. (Settlement Agreement §§ 3.15, 3.29; *see* Notice of Class Action Settlement, § 7)

If any Class Members opt out, the Claims Administrator will proportionately increase the Individual Settlement Payment for each Participating Class Member to ensure that 100% of the Net Settlement Fund is distributed to Participating Class Members. (Settlement Agreement § 1.17) No portion of the Class Settlement Amount will revert to Defendant. (Settlement Agreement § 1.14)

### 3.    Release by the Settlement Class

Plaintiff and Class Members agreed to the Released Claims in exchange for the Class Settlement. (Settlement Agreement §§ 1.25, 4.3) The Released Claims cover the period from September 13, 2019 through preliminary approval of this Settlement. (Settlement Agreement § 1.9) Plaintiff also agreed to an additional general release of his individual claims in exchange for his Service Payment. (Settlement Agreement §§ 4.4-4.5)

## III.    ARGUMENT

### A.    Court should preliminarily approve the Class Action Settlement

Class action settlements must be approved by the Court and notice of the settlement must be provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A). To protect absent class members' due process rights, approval of class action settlements involves three steps: 1) Preliminary approval of the proposed settlement; 2) Notice to the class providing them an opportunity to exclude themselves; and 3) A final fairness hearing concerning the fairness, adequacy, and reasonableness of the settlement. *See* Fed. R. Civ. P. 23(e)(2);

Manual for Complex Litigation § 21.632 (4th ed. 2004).

Fed. R. Civ. P. 23(e) provides that if the proposal would bind class members, the Court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

    (A)   the class representatives and class counsel have adequately represented the class;

    (B)   the proposal was negotiated at arm's length;

    (C)   the relief provided for the class is adequate, taking into account:

        (i)   the costs, risks, and delay of trial and appeal;

        (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)   any agreement required to be identified under Rule 23(e)(3); and

    (D)   the proposal treats class members equitably relative to each other.

The judicial policy favoring settlement of class action suits should guide the Court in evaluating the fairness of a settlement. *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *see also Hanlon v. Chrysler Corp.*, 150 F.3d at 1027 (endorsing the trial court's "proper deference to the private consensual decision of the parties" when approving a settlement). As the Ninth Circuit has observed, "settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial…The economics of litigation are such that pre-trial settlement may be more advantageous for both sides than expending time and resources inevitably consumed in the trial process." *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir.1989).

3070869

**B.**     **Settlement is the product of arms-length negotiations and is therefore entitled to a presumption of fairness**

In evaluating the Settlement for preliminary approval, the Court "first considers 'the means by which the parties arrived at settlement.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.* ("*Volkswagen*"), 2016 WL 4010049, *14 (N.D. Cal. July 26, 2016). "Preliminary approval is appropriate if the proposed settlement is the product of serious, informed, non-collusive negotiations." *Id.*

Here the Parties participated in mediation with Paul Grossman, Esq., a respected mediator of wage and hour class actions. Mr. Grossman helped to manage the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides. A mediator's participation weighs considerably against any inference of a collusive settlement. *See In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in precertification settlement negotiations helps to ensure the proceedings were free of collusion and undue pressure."). At all times Parties' negotiations were adversarial and non-collusive.

The Parties were represented by experienced class action counsel throughout the negotiations resulting in this Settlement. Plaintiff's counsel are seasoned class action attorneys who regularly litigate wage and hour claims through certification and on the merits and have considerable experience settling wage and hour class actions. (*See* Park Decl. ¶¶ 31-41) Defendant is represented by Glaser Weil Fink Howard Jordan & Shapiro LLP, which operates a respected wage and hour defense practice. Lead counsel for Defendant is a highly experienced class action defense attorney.

3070869

As this Settlement is the "result of arms-length negotiations by experienced class counsel, [it is] entitled to 'an initial presumption of fairness.'" *Volkswage*n, 2016 WL4010049, at *14 (internal citation omitted).

### C.    The relief provided by the Settlement is fair and reasonable

At the preliminary approval stage, the Court evaluates whether the settlement is within the "range of reasonableness," and whether notice to the class and the scheduling of a final approval hearing should be ordered. *See generally* 3 Conte & Newberg, *Newberg on Class Actions*, § 7.20 (4th ed. 2002). For preliminary approval, scrutiny of the settlement is reduced. *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) ("At the preliminary approval stage, the bar to meet the 'fair, reasonable and adequate' standard is lowered."); *see also, Montoya v. Intelicare Direct, Inc.*, No. 15CV1269-LAB, 2016 WL 4142342 (S.D. Cal. Aug. 4, 2016).

The Court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible judicial approval" and thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate. Newberg, § 11:25. Preliminary approval should be granted if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval. *Ruch v. AM Retail Group, Inc*., 2016 WL 1161453, at *7 (N.D. Cal. Mar. 24, 2016) (quoting *In re Tableware Antitrust Litig.*, 484. F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

### 1.    The Class Settlement Amount is within the range of reasonableness

As discussed in detail below, an objective evaluation of the Settlement confirms that the relief negotiated on the Class' behalf—a $327,500 non-

reversionary total Gross Settlement Fund for 36 Class Members—is fair, reasonable, and valuable. The Settlement was negotiated by the Parties at arm's length with helpful guidance from Paul Grossman, and the Settlement confers substantial benefits to Class Members. The relief offered by the Settlement is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases.

In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court may consider the strength of the plaintiff's case and the amount offered in settlement, among other factors. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Ultimately "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice," and there is no single "formula" to be applied; rather, the Court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Federal district courts recognize that there is an inherent "range of reasonableness" in determining whether to approve a settlement "which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F. 2d 689, 693 (2d Cir. 1972); *see also Nat'l Rural Telecomm. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery").[2]

---

[2]     See also *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) ("settlement amount's ratio to the maximum potential recovery need not be the sole, or even dominant, consideration when assessing settlement's fairness"); *In re IKON Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most

Although district courts are required to give substantive consideration to the terms of a proposed class-action settlement, they are not bound by any duty to maximize the settlement fund for class members. Fed. R. Civ. P. 23(e)(2); see *In Re California Pizza Kitchen Data Breach Litigation*, 129 F.4th 667, 678 (9th Cir. 2025).

## 2.    Plaintiff's Counsel realistically assessed the settlement value of claims

As detailed below, Plaintiff's valuation involved the aggregate value of claims and discounting for risks of continued litigation (Park Decl. ¶ 11)

### a.    Meal period and rest break claims

Plaintiff alleged that Defendant enforced a scheduling policy and practice that made it difficult for Class Members to take uninterrupted duty-free meal periods and rest breaks. Plaintiff calculated Defendant's maximum exposure for the meal periods and rest breaks of $411,295, respectively, by taking the product of the total number of shifts during the Class Period (approximately 14,023) and estimated average hourly rate of pay ($29.33).

Defendant's maximum theoretical exposure had to be offset by the strength of its defenses (e.g., no widespread meal period and rest break violations, and Defendant authorized and permitted meal periods and rest breaks), and the likelihood of certifying the Class, winning on liability, and prevailing on appeal.

Plaintiff provided a deeper discount for the rest break claim because employers do not have an obligation to record rest periods (rest periods are paid breaks). The relative lack of written proof—except for anecdotal Class Member testimony—would have reduced the likelihood of certifying the claim.

Plaintiff especially recognized the risks of Class certification presented by the following recent decisions: *See, e.g.*, *Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th 1333, 1341 (2009) (denying certification because employees' declarations

---

optimistic estimate does not, in itself, weigh against the settlement; rather the percentage should be considered in light of strength of the claims").

MEMORANDUM OF P&A ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

3070869

attesting to having taken meal periods and rest breaks demonstrated that individualized inquiries were required to show harm); *Campbell v. Best Buy Stores, L.P.*, 2013 U.S. Dist. LEXIS 137792, at *30-41 (C.D. Cal. Sept. 20, 2013) (following *Brinker* and denying certification of proposed meal period and rest break class due to lack of uniform policy); *Jimenez v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 65328 (C.D. Cal. Apr. 18, 2012) (denying motion to certify meal period and rest break class based on employer's practice of understaffing and overworking employees); *Gonzalez v. Officemax N. Am.*, 2012 U.S. Dist. LEXIS 163853 (C.D. Cal. Nov. 5, 2012) (same); *Brown v. Fed. Express Corp.,* 249 F.R.D. 580, 587-88 (C.D. Cal. 2008) (denying certification of driver meal period and rest break claims based on the predominance of individual issues); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 645 (N.D. Cal. 2008) (denying certification on meal periods claim); *Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453, 467-68 (S.D. Cal. 2007) (declining to certify class action because individual issues predominated when different employee stations provided different practices with respect to meal periods).

Realistically, and considering the real risks of continued litigation, Plaintiff valued the meal period and rest break claims for settlement purposes between $102,824 and $51,412, and $51,412 and $25,706, respectively (Park Decl. ¶¶ 12-16)

### b.    Overtime claim

Plaintiff calculated Defendant's maximum exposure for the overtime claim by taking the product of the total number of shifts worked by Class Members during the Class Period, 1.5 hours of average overtime, and time and a half of the average hourly rate of pay.

Like the meal period and rest break claims, Defendant's maximum theoretical exposure had to be offset by the strength of their defense that, among others, Defendant's overtime policy was valid, and the likelihood of the following

1    events: Class certification; winning on liability; and prevailing on appeal.

2        Realistically, and considering risks of continued litigation, Plaintiff valued the overtime

3    claim for settlement purposes between $154,253 and $77,126. (Park Decl. ¶¶ 17-19)

4                    **c.    Wage statement claim**

5        Plaintiff alleged that Defendant failed to properly itemize Class Members' wage

6    statements in violation of Labor Code § 226(a). Penalties for violations of section

7    226(a) are assessed at the rate of $50 for the initial pay period in which a violation

8    occurs and $100 per employee for each violation in a subsequent pay period, not to

9    exceed an aggregate of $4000 dollars per employee. (Cal. Lab. Code § 226(e))

10        Plaintiff calculated Defendant's maximum exposure for the wage statement

11    claim of $87,200 by taking the product of the approximate total statutory pay

12    periods worked by Class Members (approximately 890) and the statutory penalty.

13        Plaintiff then offset Defendant's maximum exposure by the strength of their

14    affirmative defenses and the risks of continued litigation.

15        Defendant commonly argues that Class Members are not harmed by non-

16    compliant wage statements, and Courts should not penalize employers for

17    purported unintentional errors on wage statements. Before Section 226(e) was

18    amended, the dispositive issue was whether "suffering injury" was satisfied by the

19    deprivation of a legal right or by consequential damages caused by the non-

20    compliant wage statements. Employers had frequently prevailed in arguing for the

21    latter interpretation. Even after the enactment of section 226(e), some courts have

22    held that this amendment merely clarified existing law and held that Plaintiff must

23    demonstrate actual injury. *See Loud v. Eden Med. Ctr.*, 2013 U.S. Dist. LEXIS

24    122873, **36-53 (N.D. Cal. Aug. 28, 2013) (granting summary judgment on wage

25    statement claim because plaintiff could not show injury due to defects and that

26    incorrect wage information is not willful). Even if wage statement claims survive

27    summary judgment, the strength of the claim is inextricably tied to the strength of

28

3070869

1  the underlying predicate claims (i.e., liability for any wage statement claim is

2  completely derivative).

3      Hence, and considering the risks of continued litigation, Plaintiff valued the

4  wage statement claim for settlement purposes between $21,800 and $10,900.

5  (Park Decl. ¶¶ 20-24)

6                    **d.    Waiting-time and PAGA penalties**

7      Plaintiff alleged waiting-time[3] and PAGA penalties[4] for Defendant's

8  purported violations of underlying Labor Code violations. Plaintiff estimated

9  Defendant's maximum potential recovery on waiting-time and PAGA penalties at

10  $140,784 and $174,400, respectively. Although the formulae for calculating

11  maximum penalties under Labor Code §§ 203 and 2699(f)(2) are fairly

12  straightforward, analysis becomes more difficult for settlement purposes because

13  waiting time and PAGA claims are only as strong as the underlying claims.

14      First, Defendant would have argued that waiting-time penalties are

15  applicable only when the failure to pay wages at termination is "willful." (*See*

16  Lab. Code § 203; Cal. Code Regs., tit. 8, § 13520)[5] Second, PAGA penalties are

17  discretionary, i.e., a judge may order a defendant to pay all penalties, or none at

---

18

19

20      [3]    Under California law, if an employer discharges an employee, all wages earned and unpaid at the time of discharges are due and payable immediately to the

21  employee. Failure to pay an employee all wages and premium pay owed, including overtime premiums, reporting time pay, meal period/rest period premiums, and split shift

22  premium pay, may entitle an employee to waiting time penalties. These penalties continue for up to 30 calendar days. Waiting time penalties are computed by multiplying

23  the employee's daily wage rate by the specified number of days since the payment of the wages became due, not to exceed 30 calendar days. *See* Lab. Code § 203.

24      [4]    Under PAGA, the civil penalty for violations of any of the code provisions

25  enumerated by Lab. Code § 2699.5 is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each

26  aggrieved employee per pay period for each subsequent violation. *See* Lab. Code § 2699(f)(2).

27      [5]    Defendant would also have argued a good faith dispute as to whether wages are due precludes the imposition of waiting time penalties. Cal. Code Regs., tit. 8,

28  § 13520.

3070869

all—even if the plaintiff proves liability.[6]

Hence, and considering the risks of continued litigation, Plaintiff valued all penalty claims at between $78,796 and $39,398. (Park Decl. ¶¶ 25-27)

### e.    Total exposure

In aggregate, and as detailed above, Plaintiff estimated Defendant's maximum potential exposure for the claims at issue at approximately $1.8 million.

Taking into account the discount factors, and the risks of continued litigation, Plaintiff determined that a settlement of approximately 18% of Defendant's maximum potential exposure for the class claims was fair and reasonable. (Park Decl. ¶ 28) *See, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256-58 (D. Del. 2002) (recognizing that a reasonable settlement amount can be 1.6% to 14% of the total estimated damages); *In Re Armored Car Antitrust Litig.,* 472 F. Supp. 1357, 1373 (N.D. Ga. 1979) (settlements with a value of 1% to 8% of the estimated total damages were approved); *In Re Four Seasons Secs. Laws Litig.,* 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages); *Balderas v. Massage Envy Franchising, LLP,* 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (finding settlement which amounted to 8% of maximum recovery "[fell] within range of possible initial approval on the strength of plaintiff's case and the risk and expense of continued litigation."); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement of 6% to 8% of estimated damages).

---

[6]    "For purposes of this part, whenever the Labor and Workforce Development Agency, or any of its departments, divisions, commissions, boards, agencies, or employees, has discretion to assess a civil penalty, a court is authorized to exercise the same discretion, subject to the same limitations and conditions, to assess a civil penalty." Lab. Code § 2699(e)(1). Courts have not hesitated in exercising this discretionary authority. *See, e.g., Fleming v. Covidien, Inc.*, No. ED CV10-01487, 2011 U.S. Dist. LEXIS 154590, at *8–9 (C.D. Cal. Aug. 12, 2011) (slashing PAGA penalties for wage statement violations by over 500%, from $2.8 million to $500,000).

3070869

3.     **The Settlement provides for an equitable method of allocating relief to Class Members**

The Settlement provides for an equitable method of allocating relief to Class Members. The distribution of the Net Settlement Fund to Class Members is straightforward: Each Class Member's share of the settlement will be proportional to the total number of Qualifying Workweeks he or she worked during the Class Period. (Settlement Agreement § 3.14)

Defendant's records will determine Class Members' number of Qualifying Workweeks, and Class Members will have an opportunity to challenge those records. (Settlement Agreement §§ 3.15, 3.29; *see* Notice of Class Action Settlement, § 7)

If any Class Members opt out, the Claims Administrator will proportionately increase the individual Settlement payment for each Participating Class Member to ensure that 100% of the Net Settlement Fund is distributed to participating Class Members. (Settlement Agreement § 1.17)

No portion of the Class Settlement Amount will revert to Defendant. (Settlement Agreement § 1.14)

4.     **The Court should preliminarily approve the negotiated Attorneys' Fees and Costs**

At final approval, Class Counsel will request attorneys' fees in the amount of one-third of the total Gross Settlement Fund. Under controlling California law,[7]

---

[7]     In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees. *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees"). The state law governing the underlying claims in a diversity action "also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Because CAFA operates to modify the diversity requirement, "the Erie doctrine still applies so that state substantive law governs such claims in federal court." See Tashima & Wagstaffe, Rutter Group Practice Guide: Federal Civil Procedure Before

the common fund method for awarding attorneys' fees is appropriate where, as here, attorneys have been instrumental in creating a settlement fund that benefits all class members. *See Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977) (noting that federal and state courts have long recognized that when attorneys create a common fund that benefits a class, the attorneys have an equitable right to be compensated from that fund); *Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19, 48 (2000) ("Courts agree that, because the percentage-of-the-benefit approach is 'results oriented rather than process-oriented, it better approximates the workings of the marketplace' than the lodestar approach." [citation omitted]). Although California has no benchmark, California courts routinely award attorneys' fees equalling approximately one-third of the common fund's total potential value or higher. *See, e.g.*, *Laffitte v. Robert Half Int'l*, 1 Cal. 5th 480 (2016) (affirming a fee award representing one-third of the common fund); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) ("[S]tudies show that…fee awards in class actions average around one-third of the recovery."); Eisenberg & Miller, Attorney Fees in Class Action Settlements: An Empirical Study, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27-78, March 2004, at 35 (independent studies of class action litigation nationwide have come to a similar conclusion that a one-third fee is consistent with market rates).

Plaintiff will file a formal motion for the negotiated attorneys' fees and costs once preliminary approval of the Settlement is granted.

### D.    There are no obvious deficiencies with the Settlement or preferential treatment to certain Class Members

The Court must also ask whether "the Settlement contains any obvious

Trial, California & 9th Cir. Editions (The Rutter Group, 2015) paragraph 10:497.5. As the Ninth Circuit observed, "even after CAFA's enactment, Erie-related doctrines ensure that, for the most part, removal of a CAFA case from state to federal court produces a change of courtrooms and procedure rather than a change of substantive law." *McAtee v. Capital One, F.S.B.*, 479 F.3d 1143, 1147 (9th Cir. 2007).

deficiencies" and "whether the Settlement provides preferential treatment to any Class Member." *Volkswagen*, 2016 WL 4010049, at *14, 16. This Settlement contains no "glaring deficiencies" *Id.* at *14. The Settlement does not provide for a reversion of unpaid settlement funds to Defendant or distribute disproportionate share of the settlement to the attorneys that requires closer scrutiny in the Ninth Circuit. *See id.* at *14-15 (applying the factors set forth in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).

And no segment of the Class is given preferential treatment. Plaintiff will also seek, at a later time (when the Motion for Attorneys' Fees is filed), an incentive award in an amount that is well within the range of such awards in the Ninth Circuit for his work on the behalf of the Class, the reputation risk undertaken, and for the execution of a general release. *See, e.g.*, *La Fleur v. Medical Management Intern, Inc.*, No. 13-00398-VAP, 2014 WL 2967475, *8 (C.D. Cal. June 25, 2014) (awarding $15,000 to each named plaintiff for services to the Class, reputational harm and general release). Accordingly the Settlement is procedurally fair, adequate and reasonable.

### E.    The Court should preliminarily approve the negotiated Class Representative Service Award

The Settlement provides for a Class Representative Service Payment of $10,000 to Jose Valenzuela for his service on behalf of Class Members and for agreeing to a broader release than those required of other Class Members. "Incentive awards are fairly typical in class action cases . . . Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class . . . ." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (citing 4 *William B. Rubenstein et al., Newberg on Class Actions* § 11:38 (4th ed. 2008)). These payments work both as an inducement to participate in the suit and as compensation for time spent in litigation activities. *See In re*

*Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 (describing the service award as an incentive to the class representatives); *Matter of Continental Illinois Securities Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) (stating that an enhancement award should be in such an amount "as may be necessary to induce [the class representative] to participate in the suit").

Plaintiff will file a formal motion for the negotiated Class Representative Service Payment once preliminary approval of the Settlement is granted.

**F.      The proposed Class Notice adequately informs Class Members about the case and proposed Settlement**

The proposed class settlement notice and claims administration procedure satisfy due process. Rule 23(c)(2) of the Federal Rules of Civil Procedure requires the Court to direct the litigants to provide Class Members with the "best notice practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974). Under Rule 23(c)(2), notice by mail provides such "individual notice to all members." *Id*. Where the names and addresses of Class Members are easily ascertainable, individual notice through the mail constitutes the "best notice practicable." *Id*. at 175.

The Notice of Class Action Settlement ("Class Notice") was jointly drafted and approved by the Parties and provides Settlement Class Members with all required information so that each member may make an informed decision regarding his or her participation in the Settlement. The Class Notice provides information regarding the nature of the lawsuit; a summary of the substance of the settlement terms; the class definition; the deadlines by which Class Members must submit Request for Exclusions or objections; the date for the final approval hearing; the formula used to calculate settlement payments; a statement that the Court has preliminarily approved the settlement; a statement that Class Members

1  will release the settled claims unless they opt out. Accordingly the Notice satisfies
2  the requirements of Rule 23(c)(2). (Park Decl. ¶ 29)

3         The Class Notice summarizes the proceedings and the terms and conditions
4  of the Settlement in an informative and coherent manner, complying with the
5  statement in Manual for Complex Litigation, *supra*, that "the notice should be
6  accurate, objective, and understandable to Class Members . . . ." *Manual for*
7  *Complex Litigation*, Third (Fed. Judicial Center 1995) ("Manual") § 30.211. The
8  Notice Packet states that the Settlement does not constitute an admission of
9  liability by Defendant, and that Final Approval has yet to be made.

10        The Notice Packet thus complies with the standards of fairness,
11  completeness, and neutrality required of a settlement class notice disseminated
12  under authority of the Court. Fed. R. Civ. P. 23(c)(2) and (e); *Manual* §§ 8.21,
13  8.39; 30.211, 30.212.

14        The Settlement Administrator will mail the Class Notice to all Settlement
15  Class Members via first class United States mail. (Settlement Agreement § 3.6) In
16  the event Notice Packets are returned as undeliverable, the Settlement
17  Administrator will attempt to locate a current address using, among other
18  resources, a computer/SSN and "skip trace" search to obtain an updated address.
19  (*Id.* at § 3.6) This method was negotiated by Parties to maximize Class Member
20  notification rate while ensuring cost effective administration of the Settlement.

21        **G.    Proposed PAGA settlement is reasonable**

22        Sixteen thousand eight hundred and seventy-five dollars ($16,875) from the
23  Total Settlement Amount are allocated to the resolution of Plaintiff's PAGA
24  claims—75% of which will be paid directly to the LWDA. [Settlement Agreement
25  § 2.9] The agreement was reached after good-faith negotiation between the
26  Parties. (Park Decl. ¶ 30) Where PAGA penalties are negotiated in good faith and
27  "there is no indication that [the] amount was the result of self-interest at the
28

MEMORANDUM OF P&A ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

expense of other Class Members," such amounts are generally considered reasonable. *Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900, at *24 (N.D. Cal. Apr. 3, 2009); *see, e.g.*, *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]rial court did not abuse discretion in approving a settlement which does not allocate any damages to the PAGA….")

As for the legislative intent of PAGA, the allocation for PAGA penalties is sufficient to satisfy the dual purpose of deterrence and punishment, given that Defendant will also be required to pay such a large amount in unpaid wages through the class settlement. A larger allocation could rise to the level of an "unjust, arbitrary, and oppressive, or confiscatory" amount, given that it would provide double punishment in light of the class settlement payments already being awarded to Class Members. Moreover this allocation takes into account the fact that the Court has discretion to reduce the PAGA award if Plaintiff prevailed on this claim at trial. See, e.g., *Fleming v. Covidien, Inc*., No. ED CV10-01487, 2011 U.S. Dist. LEXIS 154590, at *8–9 (C.D. Cal. Aug. 12, 2011) (slashing PAGA penalties for wage statement violations by over 500%, from $2.8 million to $500,000).

### H.    CAFA

The Settlement will comply with the notice requirements of 28 U.S.C. § 1715 ("CAFA").

### I.    Settlement Class satisfies Rule 23 and should be certified

#### 1.    Numerosity

The numerosity requirement is satisfied if the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). Indeed courts have found numerosity established by class actions consisting of as little as seven putative

class members. *Patrick v. Marshall*, 460 F. Supp. 23, 26 (N.D. Cal. 1978); *Jordan v. L.A. County*, 669 F.2d 1311, 1320 (9th Cir.) (noting, in dicta, that the court "would be inclined to find the numerosity requirement ... satisfied solely on the basis of [39] ascertained class members")

Here Settlement Class consists of 36 class members. Hence the Class is numerous and clearly satisfies the numerosity prong.

### 2.    Ascertainability

The Class is ascertainable and identified in Defendant's records.

Here the proposed Settlement Class consists of all current and former non-exempt employees who worked for Defendant in California during the time period of September 13, 2019 through the date of Preliminary Approval.

Defendant's records show that the Class consists of approximately 36 individuals—making joinder of all Class Members impracticable. Further the Class is readily ascertainable from Defendant's regular business records because all Class Members are either current or former employees of Defendant.

### 3.    Typicality

Typicality under Rule 23(a)(3) is satisfied if the representative plaintiff's claims share a common element with the class: i.e., those claims arise from the same course of conduct that gave rise to the claims of other settlement class members. *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988).

Here Plaintiff's claims are typical of the proposed Settlement Class because they arise from the same facts and are based on the same legal theories applicable to Class Members. Plaintiff and Settlement Class Members were injured by the same company-wide practices and seek the same relief.

MEMORANDUM OF P&A ISO MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

3070869

### 4.    Commonality

Commonality relates to whether there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied if there is one issue common to class members. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Here Plaintiff presents a common claim that Class Members were subject to Defendant's uniform pay, timekeeping, and meal and rest break policies.

For example, below questions of law and fact are common to the Class.

- Does Defendant's uniform practices and policies directly conflict with California meal period and rest break laws because they make it virtually impossible for Defendant's technicians—who work alone—to take a rest break and meal period within the first two hours and five hours of their shift, respectively?

- California Supreme Court ruled that California's Labor Code "obligates employers to permit—and authorizes employees to take—off-duty meal and rest periods. That is, during meal and rest periods employer must relieve employees of all duties and relinquish control over how employees spend their time." *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257 So is Everi's mandatory on-duty meal and rest break practice legal?

Plaintiff alleged Defendant failed to provide proper meal periods for both Plaintiff and other Class members. California Labor Code § 512(a) states that "an employer may not require, cause or permit an employee to work for a period of more than five (5) hours per day without providing the employee with an uninterrupted meal period of not less than thirty (30) minutes." And Section 512(a) also states "an employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second

1    meal period of not less than thirty (30) minutes." Plaintiff planned to prove that

2    late, short, and other missed meal period violations occurred during the relevant

3    time period by using Defendant's time records and uniform policies.

4        And Plaintiff argued Defendant never properly relieved them for their

5    legally mandated rest breaks.

6        **5.    Adequacy**

7        Adequacy under Rule 23(a)(4) is satisfied if the named plaintiffs have no

8    disabling conflicts of interest with other members of the class and Class Counsel

9    are competent and well qualified to undertake the litigation. *Lerwill v. Inflight*

10   *Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). No conflict exists

11   between Plaintiff and the Class because Plaintiff alleges that he has been damaged

12   by the same alleged conduct as all Class Members and has the incentive to fairly

13   represent all Class Members' claims to achieve the maximum possible recovery.

14   Plaintiff has spent considerable efforts in this case, including assisting with

15   investigation. Plaintiff remains willing to vigorously prosecute this action to the

16   benefit of the class.

17       And Plaintiff is represented by attorneys who have extensive experience in

18   complex wage and hour litigation. (Park Decl. ¶¶ 31-41)

19       **6.    Common questions of law and fact predominate**

20       Here common questions of law or fact predominate over individual

21   questions pursuant to Rule 23(b)(3). As discussed above, issues of fact and law

22   raised are common to all Class Members and predominate in this case.

23       **7.    Superiority of Class Action**

24       The requirement that a class action is superior to other methods of

25   adjudication under Rule 23(b)(3) is also met. Courts have recognized that the class

26   action device is superior to other available methods for the fair and efficient

27   adjudication of controversies involving large number of employees in wage and

28

3070869

hour disputes. *See, e.g., Hanlon*, 150 F.3d at 1022. Without class-wide relief in this action, the Class Members would be forced to litigate numerous cases on a piecemeal basis.

Here, given the size and amount of each individual claim, Class Members likely have little incentive to litigate their claims on an individual basis because the out-of-pocket expense and personal commitment necessary to litigate each claim outweighs any potential recovery. In sum class treatment is superior to individual case-by-case adjudication.

## IV.    CONCLUSION

As detailed above, the Parties have negotiated a Settlement that is fair, reasonable, and adequate. Accordingly the Parties respectfully request that this Court grant preliminary approval of the Settlement Agreement.


Respectfully Submitted,

Dated: May 27, 2025                    PARK APC

*/s/ Sang (James) Park*

By:_____

         Sang (James) Park

    Attorneys for Plaintiff

3070869