1  SANG (JAMES) PARK, SBN 232956
   *sang@park-lawyers.com*
2  PARK APC
   8383 Wilshire Boulevard, Suite 800
3  Beverly Hills, California 90211
   Telephone:  (310) 627-2964
4  Fax:          (310) 362-8279

5  Attorneys for Plaintiff

6

7                  UNITED STATES DISTRICT COURT

8                  CENTRAL DISTRICT OF CALIFORNIA

9

10  JOSE VALENZUELA, individually      Case No: 2:24-cv-00257-MRA-JPRx
    and on behalf of all others similarly
11  situated,                          Hon. Mónica Ramírez Almadani

12            Plaintiff,

13       vs.                           **DECLARATION OF SANG (JAMES)
                                       PARK IN SUPPORT OF MOTION
14  EVERI GAMES INC.; and DOES 1 to 10, FOR PRELIMINARY APPROVAL
                                       OF CLASS ACTION SETTLEMENT**
15            Defendants.

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF SANG (JAMES) PARK

1.      I am an attorney duly licensed to practice law in all of the Courts in the State of California. I represent Plaintiff Jose Valenzuela in this Class action. Unless the context indicates otherwise, I have personal knowledge of the following facts, and if called as a witness, I could and would testify competently to them.

2.      I submit this declaration in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement that seeks: (1) preliminary approval of Settlement; (2) approval of the Class notice to the Class; (3) appointment of PARK APC as Class Counsel; named Plaintiff Jose Valenzuela as the Class Representative; and Phoenix Settlement Administrators as Administrator; and (4) a Final Approval Hearing and hearing on Class Counsel's Fees and Cost Award and Class Representative's service award requests.

### Overview of Case

3.      On September 13, 2023 Plaintiff brought the instant wage and hour Class action primarily challenging two of Defendant's company-wide practices that stem from their alleged unlawful uniform policies: failure to pay overtime; failure to provide duty-free uninterrupted Labor Code-compliant rest breaks, failure to provide duty-free uninterrupted Labor Code-compliant meal periods, and failure to provide reporting time pay for on-call work.

4.      All remaining claims—i.e., unpaid minimum wage, wages not paid upon termination, non-compliant wage statements, PAGA penalties and Cal. B&P 17200 (Unfair Business Practices)—are derived from Defendant's alleged unlawful meal, rest, overtime and reporting time policy and practices.

### Plaintiff's Counsel thoroughly investigated the factual and legal issues

5.      Plaintiff's Counsel thoroughly investigated and researched Class claims and their theories of liability, their defenses, and the developing body of

law before the Settlement. The comprehensive investigation included the exchange of informal and formal discovery and statistical information with Defendant; multiple fact-finding sessions with Plaintiff; and several conferences with Defense counsel.

6.      Plaintiff received, among others, the following information, data and documents relevant to Class-wide liability ("Class Data") in support of his investigation and evaluation of Class claims: (1) employee time and payroll records; (2) total number of former and current employees in the Class Period; (3) total number of workweeks; (4) total number of shifts and pay periods; (5) average rate of pay; (6) employee handbooks, procedure manuals, and operations manuals addressing Defendant's wage and hour practices, e.g., (i) timekeeping and payroll policies, (ii) meal and rest periods, (iii) wage statements; and (8) employee schedules.

7.      Plaintiff's Counsel then applied the Class Data to Class members to determine, among others, alleged overtime violations; missing, late or short meal periods; and the number of rest breaks owed.

8.      Needless to say Plaintiff's Counsel made an informed decision about the strengths and weaknesses of Plaintiff's theories of liability, Defendant's affirmative defenses, Class-wide damages, and benefits of Settlement based on the receipt, analysis, and application of the Class Data.

9.      Further, and continuing their due diligence, Plaintiff's Counsel (1) determined Plaintiff's suitability as a Class representative, through interviews, background investigations, and analyses of his employment files and related records; (2) researched wage-and-hour class actions involving similar claims; (3) engaged in the discovery process; (4) obtained and analyzed Defendant's wage-and-hour policies and procedures; (5) obtained and analyzed time and corresponding payroll records to determine violation rates and penalty payments;

DECLARATION OF SANG (JAMES) PARK ISO MOT FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

(6) researched the latest case law bearing on the theories of liability; (7) researched settlements in similar cases; (8) analyzed the value of Plaintiff's claims; (9) drafted a mediation brief; (10) negotiated the terms of the Settlement; (11) finalized the Settlement and Release; (12) finalized the Notice of Class Action Settlement; and (13) drafted preliminary approval papers.

10.     The Parties agreed to private mediation to attempt to resolve the Class claims. On December 16, 2024 the Parties attended an all-day mediation with Paul Grossman, Esq.—a well-regarded mediator with experience in resolving wage and hour class actions. The Parties reached the Class Settlement at the mediation. At all times the Parties' negotiations were adversarial and non-collusive.

**Plaintiff's Counsel realistically assessed the settlement value of claims**

11.     As detailed below, Plaintiff's valuation involved the aggregate value of claims and discounting for risks of continued litigation.

## Meal period and rest break claims

12.     Plaintiff alleged that Defendant enforced a scheduling policy and practice that made it difficult for Class Members to take uninterrupted duty-free meal periods and rest breaks. Plaintiff calculated Defendant's maximum exposure for the meal periods and rest breaks of $411,295, respectively, by taking the product of the total number of shifts during the Class Period (approximately 14,023) and estimated average hourly rate of pay ($29.33).

13.     Defendant's maximum theoretical exposure had to be offset by the strength of its defenses (e.g., no widespread meal period and rest break violations, and Defendant authorized and permitted meal periods and rest breaks), and the likelihood of certifying the Class, winning on liability, and prevailing on appeal.

14.     Plaintiff provided a deeper discount for the rest break claim because employers do not have an obligation to record rest periods (rest periods are paid breaks). The relative lack of written proof—except for anecdotal Class Member

1  testimony—would have reduced the likelihood of certifying the claim.

2      15.   Plaintiff especially recognized the risks of Class certification

3  presented by the following recent decisions: *See, e.g.*, *Ali v. U.S.A. Cab Ltd.*, 176

4  Cal. App. 4th 1333, 1341 (2009) (denying certification because employees'

5  declarations attesting to having taken meal periods and rest breaks demonstrated

6  that individualized inquiries were required to show harm); *Campbell v. Best Buy*

7  *Stores, L.P.*, 2013 U.S. Dist. LEXIS 137792, at *30-41 (C.D. Cal. Sept. 20, 2013)

8  (following *Brinker* and denying certification of proposed meal period and rest

9  break class due to lack of uniform policy); *Jimenez v. Allstate Ins. Co.*, 2012 U.S.

10  Dist. LEXIS 65328 (C.D. Cal. Apr. 18, 2012) (denying motion to certify meal

11  period and rest break class based on employer's practice of understaffing and

12  overworking employees); *Gonzalez v. Officemax N. Am.*, 2012 U.S. Dist. LEXIS

13  163853 (C.D. Cal. Nov. 5, 2012) (same); *Brown v. Fed. Express Corp.,* 249

14  F.R.D. 580, 587-88 (C.D. Cal. 2008) (denying certification of driver meal period

15  and rest break claims based on the predominance of individual issues); *Kenny v.*

16  *Supercuts, Inc.*, 252 F.R.D. 641, 645 (N.D. Cal. 2008) (denying certification on

17  meal periods claim); *Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453, 467-68

18  (S.D. Cal. 2007) (declining to certify class action because individual issues

19  predominated when different employee stations provided different practices with

20  respect to meal periods).

21      16.   Realistically, and considering the real risks of continued litigation,

22  Plaintiff valued the meal period and rest break claims for settlement purposes

23  between $102,824 and $51,412, and $51,412 and $25,706, respectively.

24                    **Overtime claim**

25      17.   Plaintiff calculated Defendant's maximum exposure for the overtime

26  claim by taking the product of the total number of shifts worked by Class

27  Members during the Class Period, 1.5 hours of average overtime, and time and a

28

half of the average hourly rate of pay.

18.    Like the meal period and rest break claims, Defendant's maximum theoretical exposure had to be offset by the strength of their defense that, among others, Defendant's overtime policy was valid, and the likelihood of the following events: Class certification; winning on liability; and prevailing on appeal.

19.    Realistically, and considering risks of continued litigation, Plaintiff valued the overtime claim for settlement purposes between $154,253 and $77,126.

## Wage statement claim

20.    Plaintiff alleged that Defendant failed to properly itemize Class Members' wage statements in violation of Labor Code § 226(a). Penalties for violations of section 226(a) are assessed at the rate of $50 for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not to exceed an aggregate of $4000 dollars per employee. (Cal. Lab. Code § 226(e))

21.    Plaintiff calculated Defendant's maximum exposure for the wage statement claim of $87,200 by taking the product of the approximate total statutory pay periods worked by Class Members (approximately 890) and the statutory penalty.

22.    Plaintiff then offset Defendant's maximum exposure by the strength of their affirmative defenses and the risks of continued litigation.

23.    Defendant commonly argues that Class Members are not harmed by non-compliant wage statements, and Courts should not penalize employers for purported unintentional errors on wage statements. Before Section 226(e) was amended, the dispositive issue was whether "suffering injury" was satisfied by the deprivation of a legal right or by consequential damages caused by the non-compliant wage statements. Employers had frequently prevailed in arguing for the latter interpretation. Even after the enactment of section 226(e), some courts have held that this amendment merely clarified existing law and held that Plaintiff must

demonstrate actual injury. *See Loud v. Eden Med. Ctr.*, 2013 U.S. Dist. LEXIS 122873, **36-53 (N.D. Cal. Aug. 28, 2013) (granting summary judgment on wage statement claim because plaintiff could not show injury due to defects and that incorrect wage information is not willful). Even if wage statement claims survive summary judgment, the strength of the claim is inextricably tied to the strength of the underlying predicate claims (i.e., liability for any wage statement claim is completely derivative).

24.    Hence, and considering the risks of continued litigation, Plaintiff valued the wage statement claim for settlement purposes between $21,800 and $10,900.

## **Waiting-time and PAGA penalties**

25.    Plaintiff alleged waiting-time and PAGA penalties for Defendant's purported violations of underlying Labor Code violations. Plaintiff estimated Defendant's maximum potential recovery on waiting-time and PAGA penalties at $140,784 and $174,400, respectively. Although the formulae for calculating maximum penalties under Labor Code §§ 203 and 2699(f)(2) are fairly straightforward, analysis becomes more difficult for settlement purposes because waiting time and PAGA claims are only as strong as the underlying claims.

26.    First, Defendant would have argued that waiting-time penalties are applicable only when the failure to pay wages at termination is "willful." (*See* Lab. Code § 203; Cal. Code Regs., tit. 8, § 13520) Second, PAGA penalties are discretionary, i.e., a judge may order a defendant to pay all penalties, or none at all—even if the plaintiff proves liability.

27.    Hence, and considering the risks of continued litigation, Plaintiff valued all penalty claims at between $78,796 and $39,398.

28.    In aggregate, and as detailed above, Plaintiff estimated Defendant's maximum potential exposure for the claims at issue at approximately $1.8 million.

1   Taking into account the discount factors, and the risks of continued litigation,

2   Plaintiff determined that a settlement of approximately 18% of Defendant's

3   maximum potential exposure for the class claims was fair and reasonable.

4   **Class Notice adequately informs the Class about the case and Settlement**

5        29.    The Notice of Class Action Settlement ("Class Notice") was jointly

6   drafted and approved by the Parties and provides Settlement Class Members with

7   all required information so that each member may make an informed decision

8   regarding his or her participation in the Settlement. The Class Notice provides

9   information regarding the nature of the lawsuit; a summary of the substance of the

10  settlement terms; the class definition; the deadlines by which Class Members must

11  submit Request for Exclusions or objections; the date for the final approval

12  hearing; the formula used to calculate settlement payments; a statement that the

13  Court has preliminarily approved the settlement; a statement that Class Members

14  will release the settled claims unless they opt out. Accordingly the Notice satisfies

15  the requirements of Rule 23(c)(2).

16  **Proposed PAGA settlement is reasonable**

17       30.    Sixteen thousand eight hundred and seventy-five dollars ($16,875)

18  from the Total Settlement Amount are allocated to the resolution of Plaintiff's

19  PAGA claims—75% of which will be paid directly to the LWDA. [Settlement

20  Agreement § 2.9] The agreement was reached after good-faith negotiation

21  between the Parties.

22  **Qualifications and Experience**

23       31.    PARK APC and I represent employees in all employment disputes

24  involving wrongful termination, unlawful discrimination and retaliation,

25  harassment, and wage and hour violations. Notably we recovered millions of

26  dollars on behalf of class members in prosecuting wage and hour and consumer

27  class actions in state and federal courts.

28

32.     I graduated *Phi Beta Kappa* from Indiana University Bloomington and received my law degree in 2004 from UCLA School of Law. I was admitted to the State Bar of California in December 2004, and I have been practicing law ever since.

33.     I have practiced law for over 20 years representing primarily plaintiffs in employment and wage and hour Class action litigation, as set forth in more detail below.

34.     I successfully litigated numerous class actions through class certification and settlement that totaled millions of dollars for thousands of class members. Below are representative samples:

- *Fidelie Kabamba et al. v. Victoria's Secret Stores, LLC*, Lead Case No. BC368528 (a $10 million wage and hour settlement)

- *Marco Rodriguez et al. v. Old Dominion Freight Line, Inc.*, Lead Case No. 13-cv-00891 DSF (RZx) (a $3.4 million wage and hour settlement)

- *David Harris v. Golden State Overnight Delivery Service, Inc.*, Case No. RG17868987 (a $2.7 million wage and hour settlement)

- *Olajuwon Tarver v. Integrated Airline Services, Inc. et al.*, Lead Case No. BC596694 (a $2.2 million wage and hour settlement, where the Court opined that I "achieved a very good result for the Class," and "The Settlement was carefully and professionally prepared and is in all respects in the interests of the Class. Counsel's very good efforts are reflected in the percentage fee award")

- *Peter Paul Aguilar v. AT&T Mobility, LLC, et al.*, Case No. CV 06-8197 DDP (AJWx) (a $1.6 million wage and hour settlement)

- *Carlos Collado et al. v. Toyota Motor Sales, U.S.A., Inc.*, Case No. 10-cv-3113-R-RC (a consumer class action settlement for defective

DECLARATION OF SANG (JAMES) PARK ISO MOT FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

HID headlights that provided relief to Toyota Prius owners through repairs, cash reimbursement, and extended warranties)

- *Costco Wage and Hour Cases*, Case No. JCCP4871 (a $1.5 million wage and hour settlement)

- *John M. Irizawa v. Aero Port Services Inc.*, Case No. BC496925 (a $1.4 million wage and hour settlement)

- *Abigail Johnson v. SunWest Milling, Inc. et al*, Case No. 23CV02012 (a $1.2 million wage and hour settlement)

- *Richard Hill v. WASH Multifamily Laundry Systems, LLC*, Case No. BC557047 (a $900,000 wage and hour settlement)

- *Roamelya Fisher v. Behavioral Health Services, Inc.,* Case No. BC613297 (a $850,000 wage and hour settlement)

- *Steven M. Bailey v. Kinder Morgan GP, Inc. et al*, Case No.: 3-18-cv-03424-TSH (a $800,000 wage and hour settlement)

- *Josue Ivan Peralta v. San Gabriel Temporary Staffing Services LLC*, Case No. BC640681 (a $650,000 wage and hour settlement)

- *Raul Alva et al. v. TMSO, Inc.*, Case No. CIVDS1509987 (a $600,000 wage and hour settlement)

- *Henry Taylor v. Mobile Mini, Inc. et al.*, Case No. CIVSS705070 (a $600,000 wage and hour settlement)

- *Leonard Ignacio v. Certified Freight Logistics, Inc.*, Case No. 17CV02371 (a $525,000 wage and hour settlement)

- *Matias Puglisi v. Storm Water Inspection & Maintenance Services, Inc.*, Case No. 30-2020-01175159-CU-OE-CXC (a $500,000 wage and hour settlement)

- *Randy Bejarano v. Amerisave Mortgage Corporation*, Case No. EDCV 08-00599 SGL (OPx) (a $500,000 wage and hour settlement)

DECLARATION OF SANG (JAMES) PARK ISO MOT FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1          • *Edgar Sanchez v. California Steel Industries, Inc. et al*, Case No.
2            CIVDS1832657 (a $300,000 PAGA settlement)

3          • *Phillips Bonaparte et al. v. Career Connections Staffing Services,*
4            *Inc. DBA The Go2IT Group*, Case No. 30-2014-00725886-CU-OE-
5            CJC (a $240,000 wage and hour settlement)

6          • *Joshua McDermott v. Cal Coast Acidizing Co.*, Case No. BCV-16-
7            102362 (PAGA penalties award)

8          • *Vanessa Cisneros v. Airtouch Cellular, Inc.*, Case No. BC596594
9            (PAGA penalties award)

10    35.    I successfully certified several subclasses, by way of contested
11  motions, in the following cases:

12         • I certified a Class of truck drivers misclassified as independent
13           contractors for, among others, meal period, rest break, waiting time,
14           and business expenses claims in *Leonard Ignacio v. Certified Freight*
15           *Logistics, Inc.*, Case No. 17CV02371

16         • I certified meal period, rest break and Labor Code § 203 claims on
17           behalf of over one thousand employees in *Raul Alva et al. v. TMSO,*
18           *Inc.*, Case No. CIVDS1509987

19         • Won Class certification for nearly two-hundred employees in *Rusty*
20           *Nichols et al. v. Pacific Wines Distributors, Inc.*, Case No.
21           BC525954. Plaintiffs worked as delivery drivers and averaged ten to
22           twelve-plus hour shifts. They made twenty to thirty predetermined
23           deliveries during their long shifts. This meant that the driver-
24           employees averaged one delivery *every twenty minutes*. Yet
25           Defendant required their employees to work these long highly-
26           pressurized schedules without lawful overtime pay, meal or rest
27           breaks

28

DECLARATION OF SANG (JAMES) PARK ISO MOT FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

36.    I won an appeal with United States Court of Appeals for the Ninth Circuit. In *Ralph Villalobos v. TWC Administration LLC ("Time Warner Cable")*, I appealed the district court's grant of summary judgment on Plaintiff's employment claims under the Fair Employment and Housing Act ("FEHA").

a.    The Ninth Circuit ruled in Plaintiff's favor and reversed the lower court's summary judgment on all five of Plaintiff's FEHA claims.

37.    I won an appeal with the California Court of Appeals for the Second Appellate District in Los Angeles on the issues of jury waiver and binding arbitration. In *Ivonne Tantisari v. Central Escrow, Inc.*, Defendant fired Plaintiff because she refused to have sex with one of their managers. Plaintiff was subjected to unwelcome sexual comments, conduct and advances by the manager. Plaintiff rejected the repeated offers of sex, and the manager accused her of "insubordination." Plaintiff complained about the manager's continual sexual harassment, and in response, Defendant fired her. Defendant absolutely wanted to avoid a jury trial because of the provocative and embarrassing facts of the case. Their efforts to compel private arbitration were denied by the trial court, and Court of Appeals affirmed the denial of private arbitration.

38.    I successfully opposed a Motion for Summary Judgment just two days after substituting into a complex employment case. In *Oga Daniel v. California State Department of Corrections and Rehabilitation*, the State employed Plaintiff as a high school teacher in its youth correctional facilities system. Plaintiff responded to an audit conducted by the Western Association of Schools and Colleges ("WASC") regarding the high school's accreditation. Plaintiff learned, through the WASC audit, that Defendant falsely reported the number of classes Plaintiff was teaching to WASC in an effort to maintain its accreditation. Plaintiff blew the whistle, and Defendant fired him.

a.    The State tried to capitalize on Plaintiff's pro per status by filing a Motion for Summary Judgment two months *before* exchanging comprehensive discovery or taking Plaintiff's deposition. Immediately after substituting into the case, I continued the hearing on the motion to conduct discovery and ultimately opposed the motion successfully.

39.    I successfully opposed Defendant's Anti-SLAPP Motion—a rare, yet powerful, tool used by a party to dismiss claims for Defamation and get attorney's fees. In *Daniell Schaeffer v. Golden Rain Foundation*, Defendant fired Plaintiff in retaliation for his opposition to their unlawful discriminatory acts. Plaintiff served a quasi-public position for Defendant. Defendant also openly described Plaintiff as a "thief" and a "liar." Plaintiff sued and alleged, among others, a claim for Defamation.

a.    Defendant filed an Anti-SLAPP Motion arguing that their purported unlawful acts were based on acts in furtherance of their right of petition or free speech. Defendant attempted to conflate constitutionally protected speech with discriminatory animus in an effort to obfuscate the issues in their favor. Defendant's victory would have had serious consequences for Plaintiff, including the dismissal of his Defamation claim and his paying Defendant's attorney's fees. I successfully argued that the Anti-SLAPP statute does not expand free speech protections to an employer's racist comments and conduct, nor does it eviscerate the protections enjoyed by disabled employees under FEHA. My work in correctly framing the issues early-on in the case led to a confidential six-figure settlement.

40.    I successfully defeated a high stakes Motion to Compel Arbitration—twice in the same case. In *William Mooney v. Mammoth Mountain Ski Area, LLC*, I challenged the authenticity of the arbitration agreement by arguing that Defendant could not meet the standard in California's Uniform Electronic Transactions Act ("UETA")—i.e., Defendant must show *no one other than*

Plaintiff could have electronically signed the agreement. Defendant was unable to counter the relatively novel attack on the arbitration agreement in their Motion and subsequent Renewed Motion.

41.     Hence, and based on above, I have experience in litigating a range of complex employment and wage and hour cases and have successfully pursued other class action claims in the employment context.

42.     Attached as Exhibits A and B are true and correct copies of Parties' Joint Stipulation of Class Action Settlement and Release, and the proposed Notice of Class Action Settlement ("Class Notice"), respectively.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this declaration was executed by me on May 27, 2025 at Los Angeles, California.

*/s/ Sang (James) Park*

Sang (James) Park

# EXHIBIT A

1  SANG (JAMES) PARK, SBN 232956
   *sang@park-lawyers.com*
2  PARK APC
   8383 Wilshire Boulevard, Suite 800
3  Beverly Hills, California 90211
   Telephone:  (310) 627-2964
4  Fax:          (310) 362-8279

5  Attorneys for Plaintiff

6
   ELIZABETH A. SPERLING - State Bar No. 231474
7  *esperling@glaserweil.com*
   ALEXANDER R. MILLER - State Bar No. 294474
8  *amiller@glaserweil.com*
   GLASER WEIL FINK HOWARD
9  JORDAN & SHAPIRO LLP
   600 W. Broadway, Suite 2850
10 San Diego, CA 92101
   Telephone: (619) 765-4380
11 Facsimile: (619) 483-0646

12 Attorneys for Defendant
   Everi Games Inc.
13

14              UNITED STATES DISTRICT COURT

15             CENTRAL DISTRICT OF CALIFORNIA

16

17                                          Case No: 2:24-cv-00257-MRA-JPRx

18 JOSE VALENZUELA, individually           Hon. Mónica Ramírez Almadani
   and on behalf of all others similarly
19 situated,

                   Plaintiff,              **JOINT STIPULATION OF CLASS
20                                          ACTION SETTLEMENT AND
                                            RELEASE**
21     vs.

22 EVERI GAMES INC.; and DOES 1 to 10,

23           Defendants.

24

25

26

27

28

## I.    DEFINITIONS

As used in this Agreement, the following terms shall have the meanings specified below and/or as defined above:

1.1    "Agreement," "Settlement," or "Settlement Agreement" means this Joint Stipulation of Class Action Settlement and Release and all actions taken pursuant to and in furtherance of this Agreement.

1.2    "Administrator" means Phoenix Settlement Administrators ("Phoenix") or such other administrator as may be approved by the Court, which shall be responsible for administering the Settlement pursuant to the terms of the Agreement, the Preliminary Approval Order, and the Final Approval Order and Judgment. The Administration Costs shall be paid out of the Gross Settlement Fund, as approved by the Court.

1.3    "Administration Costs" means the amount approved by the Court to be paid to the Administrator to perform the Administration Duties as described herein and in Section 3.3 below. It is estimated that the Administration Costs will not exceed $4,000.

1.4    "Attorneys' Fees and Costs Payment" or "Attorneys' Fees and Costs Award" shall mean the amount of attorneys' fees, expenses, and costs to prosecute the Action to be paid to Class Counsel out of the Gross Settlement Fund, as approved by the Court.

1.5    "Action" shall mean above-captioned action: *Jose Valenzuela v. Everi Games, Inc.*, Case No. 2:24-cv-00257-MRA-JPRx, including the claims alleged in the Second Amended Class Action Complaint.

1.6    "Class Counsel" shall mean the attorneys representing Plaintiff and the Class in the Action: Sang (James) Park of PARK APC.

Document Ref: 3MMBU-KDMPC-CZAX9-Y5HHC

1        1.7    "Class List and Data" shall mean the information Defendant shall

2 provide following Preliminary Approval for purpose of providing notice of the

3 Settlement to the Class.

4        1.8    "Class" or "Class Members" shall mean all current and former non-

5 exempt employees who worked for Defendant in California during the time period

6 of September 13, 2019 through the date of Preliminary Approval of this

7 Agreement (the "Class Period").

8        1.9    "Class Period" shall mean the period of September 13, 2019 through

9 the date of Preliminary Approval of this Agreement.

10       1.10   "Complaint" shall mean the operative Second Amended Class Action

11 Complaint filed in the Action.

12       1.11   "Defense Counsel" shall mean the attorneys representing Defendant:

13 Elizabeth A. Sperling of Glaser Weil Fink Howard Jordan & Shapiro LLP.

14       1.12   "Effective Date" means the date by which this Settlement is finally

15 approved as provided herein and the Court's Final Approval Order and Judgment

16 becomes binding. For purposes of this Agreement, the Final Approval Order and

17 Judgment becomes binding: (1) on the date of final approval of the Settlement by

18 the Court if there are no objections to the Settlement; (2) if there are objections to

19 the Settlement, then the later of (a) the day after the deadline by which a notice of

20 appeal to the Court of Appeal of the Final Approval Order Judgment and/or of an

21 order rejecting any motion to intervene may be timely filed, and none is filed, (b)

22 if such an appeal is filed, and the appeal is finally disposed of by ruling, dismissal,

23 denial or otherwise, the day after the deadline for filing a request for further

24 review of the Court of Appeal's decision passes and no further review is

25 requested, (c) if an appeal is filed and there is a final disposition by ruling,

26 dismissal, denial, or otherwise by the Court of Appeal and further review of the

27 Court of Appeal's decision is requested, the day after the request for review is

28

Document Ref: 3MMBU-KDMPC-CZAX9-Y5HHC

1   denied with prejudice and/or no further review of the decision can be requested, or
2   (d) if review is accepted, the day after the United States Supreme Court affirms
3   the Settlement. The Effective Date cannot occur until and unless final approval of
4   the Settlement occurs with no objections to the Settlement or, if there are any
5   objections, then after there is no possibility of an appeal or further appeal that
6   could potentially prevent this Agreement from becoming final and binding. The
7   occurrence of the Effective Date is a prerequisite to any distributions from the
8   Gross Settlement Fund.

9       1.13   "Final Fairness" or "Final Approval Hearing" means the hearing to
10  be conducted by the Court, or any other Court taking jurisdiction of this matter, to
11  determine whether to finally approve the Settlement.

12      1.14   "Gross Settlement Fund" or "GSF" means the non-reversionary sum
13  of Three Hundred Twenty-Seven Thousand Five Hundred Dollars and Zero Cents
14  ($327,500.00) in full and complete settlement of the Action. The GSF will include
15  the payments to: (i) all Participating Class Members, as described herein; (ii) the
16  LWDA Payment; (iii) Service Payment to the Plaintiff/Class Representative, as
17  described herein; (iv) Attorneys' Fees and Costs Award to Class Counsel, as
18  described herein; (v) Administration Costs to the Administrator, as described
19  herein. The GSF does not include the Employer's share of payroll taxes.
20  Employer's share of payroll taxes shall be paid by Defendant separately in
21  addition to the Gross Settlement Amount.

22      1.15   "Individual Settlement Payment" shall mean payment for the
23  proportionate share of the Net Settlement Fund ("NSF") to a Participating Class
24  Member based on the formula set forth below in Section 3.14 of this Agreement.

25      1.16   "LWDA Payment" means the payment to the Labor and Workforce
26  Development Agency ("LWDA") for its 75% portion of the PAGA Payment.

27

28

JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE

Document Ref: 3MMBU-KDMPC-CZAX9-Y5HHC

1        1.17   "Net Settlement Fund" or "NSF" means the Gross Settlement Fund

2   less any Court-approved: (i) LWDA Payment; (ii) Service Payment to the

3   Plaintiff/Class Representative; (iii) Attorneys' Fees and Costs Award to Class

4   Counsel; and (iv) Administration Costs to the Administrator. To the extent the

5   Court does not approve the full amount of the LWDA Payment or the requested

6   Attorneys' Fees and Costs, Administration Costs, or the Service Payment, the Net

7   Settlement Fund will increase accordingly.

8        1.18   "Notice Packet" refers to the documents mailed to the Class Members

9   pursuant to the terms of this Agreement, and includes the Court-approved Notice

10   of Class Action Settlement attached hereto as "Exhibit A."

11        1.19   "Notice Response Deadline" means forty-five (45) calendar days

12   from the date of the initial mailing of the Notice Packet, or such other date as set

13   by the Court in the Preliminary Approval Order.

14        1.20   "PAGA Payment" means the amount to be paid to settle the claims

15   for penalties under the California Labor Code Private Attorneys General Act

16   ("PAGA"), California Labor Code §§ 2698 *et seq.*

17        1.21   "Participating Class Member" means any Class Member who has not,

18   by the Notice Response Deadline, postmarked a Request for Exclusion. Each

19   Participating Class Member will be issued an Individual Settlement Payment

20   without the need to return a claim form.

21        1.22   "Plaintiff" and "Class Representative" shall mean Jose Valenzuela.

22        1.23   "Preliminary Approval" and "Preliminary Approval Order" means

23   the order preliminarily approving this Settlement, which shall, among other things,

24   preliminarily find the Settlement to be fair, reasonable, and adequate; approve

25   Phoenix as the Administrator; approve the content and distribution of the Notice

26   Packet to the Class Members; and set the date for the Final Approval Hearing.

27

28

Document Ref: 3MMBU-KDMPC-CZAX9-Y5HHC

1       1.24  "Qualifying Workweek" shall mean the actual weeks worked during

2   the Class Period by a Class Member as determined by the Administrator.

3       1.25  "Released Claims" means any and all claims that have been or could

4   have been alleged in the Complaint by Plaintiff and/or the Class for wages,

5   premiums, reimbursement of expenses, meal-period violations, rest-break

6   violations, alleged failure to calculate the regular rate of pay for overtime

7   purposes, inaccurate/incomplete wage statements, various penalties, and interest

8   actually alleged or that could have been alleged in the Action by the Plaintiff, on

9   behalf of himself, the Class Members, similarly situated employees, and the

10  aggrieved employees, including but not limited to: (1) failure to provide meal

11  periods, compensation in lieu thereof, and/or failure to pay premium pay for

12  missed, late, and/or short meal periods in violation of California Labor Code §§

13  226.7 and 512, the applicable Industrial Welfare Commission Wage Order, or

14  California Business & Professions Code § 17200 *et seq*.; (2) failure to provide rest

15  breaks, compensation in lieu thereof, and/or failure to pay premium pay for

16  missed, late, and/or short rest breaks in violation of California Labor Code §

17  226.7, the applicable Industrial Welfare Commission Wage Order, or California

18  Business & Professions Code § 17200 *et seq*.; (3) failure to pay wages for all

19  hours worked, failure to pay overtime wages, and failure to calculate and pay the

20  regular rate of pay/overtime rate in the violation of California Labor Code §§ 510,

21  1194, 1194.2, 1197, 1197.1, & 1198, the applicable Industrial Welfare

22  Commission Wage Order, or California Business & Professions Code § 17200 *et*

23  *seq*.; (4) failure to provide accurate, complete, and itemized wage statements in

24  violation of California Labor Code § 226, or California Business & Professions

25  Code § 17200 *et seq*.; (5) failure to pay penalties under California Labor Code §§

26  201, 202, 203, and 204, and violations of California Business & Professions Code

27  § 17200 *et seq*.; (6) failure to keep accurate payroll/wage records pursuant to

28

1    Labor Code § 1174(d); (7) civil penalties under PAGA, California Labor Code §

2    2698 *et seq.*, for the alleged California Labor Code violations that were or that

3    could reasonably have been alleged in the Action; (8) violation of the Fair Labor

4    Standards Act under 29 U.S.C. §§ 201, *et seq.*; (8) any claims that Defendant is

5    liable for the attorneys' fees and costs incurred to prosecute this Action on behalf

6    of Class Members, including fees and costs incurred for the services of Class

7    Counsel; and (9) any claims that Defendant is liable for any other damages,

8    remedies, penalties or interest under California law, including the applicable

9    Industrial Welfare Commission ("IWC") Wage Order(s), based on or relating to

10   the facts alleged in the Complaint.

11       1.26    "Released Parties" shall mean Defendant Everi Games Inc. and all its

12   past and present successors, predecessors, subsidiaries, parents, holding

13   companies, sister and affiliated companies, divisions and other related entities,

14   shareholders, subsidiaries, investors, officers, directors, partners, assigns, agents,

15   employees, principals, heirs, administrators, attorneys, vendors, accountants,

16   auditors, consultants, fiduciaries, insurers, reinsurers, employee benefit plans, and

17   representatives of each of them, both individually and in their official capacities,

18   past, present, or future, as well as all persons acting by, though, under or in

19   concert with any of these persons or entities.

20       1.27    "Request(s) for Exclusion" means a written request made by a Class

21   Member to the Administrator seeking to be excluded from the Settlement, in the

22   manner set forth in Sections 3.7-3.11.

23       1.28    "Service Payment" means a payment, as approved by the Court, to

24   Plaintiff/Class Representative in the sum of $10,000.00 for his efforts to initiate

25   and prosecute the Action, work performed, execution of a general release of all

26   claims he may have against Defendant as more particularly described in Sections

27   4.4 and 4.5. Defendant will not oppose the Service Payment request in this

28

Document Ref: 3MMBU-KDMPC-CZAX9-Y5HHC

1  amount. Plaintiff will be issued an Internal Revenue Service Form 1099 by the

2  Administrator for any Service Payment. The Plaintiff/Class Representative agrees

3  he is solely responsible for the tax consequences of the Service Payment, if any. In

4  the event that the Court (or any appellate court) awards less than the amount

5  requested for the Service Payment, only the awarded amount shall be paid and

6  shall constitute satisfaction of those obligations and full payment thereunder, and

7  any unawarded portion of the requested Service Payment shall be made a part of

8  the GSF for distribution to Participating Class Members. Service Payment to

9  Plaintiff is in addition to the Individual Settlement Payment he will receive as a

10  Participating Class Member under the terms of this Settlement.

11       1.29  "Withholdings and Taxes" means all withholdings from the

12  Individual Settlement Payments required by law plus all federal, state, and local

13  employer payroll taxes due in regard to the Individual Settlement Shares, as

14  computed by the Administrator in accordance with Section 3.16.

15  **II.    SETTLEMENT TERMS**

16       2.1    **Payment of GSF by Defendant**. In full settlement of the Released

17  Claims and following the Effective Date, Defendant shall deliver the Gross

18  Settlement Fund (GSF) to the Administrator in accordance with the timeline set

19  forth in Section 3.25 below. The GSF shall consist of: (a) the Individual

20  Settlement Payment, (b) the Attorneys' Fees and Costs Payment, (c) the LWDA

21  Payment, (d) Service Payment, (e) Withholdings and Taxes, and (f) the

22  Administration Costs.

23       Defendant shall deposit the GSF Amount with the Settlement Administrator

24  no later than fifteen (15) days from the Effective Date.

25       2.2    **Attorneys' Fees and Costs Payment/Award**. Class Counsel may

26  request an award of attorneys' fees in the amount of one-third of the Gross

27  Settlement Fund and reimbursement of litigation costs and expenses in the amount

28

Document Ref: 3MMBU-KDMPC-CZAX9-Y5HHC

1    of up to $20,000 ("Attorneys' Fees and Costs") from the Court to compensate

2    Class Counsel for fees and costs incurred for work already performed in the

3    Action, and the work remaining to be performed in documenting the Settlement,

4    securing Court approval of the Agreement, administering the Settlement,

5    responding to any potential objections and/or disputes, and defending against any

6    appeals, as well as all associated expenses. Defendant will not oppose an award of

7    Attorneys' Fees and Costs to be paid from the GSF, but reserves the right to

8    review and object to portions of any request for an award of Attorneys' Fees and

9    Costs.

10       2.3    Class Counsel will apply for Attorneys' Fees and Costs to the Court

11   for approval prior to the date of the Final Approval Hearing. The Parties agree

12   that, over and above the total amount of the Court-approved Attorneys' Fees and

13   Costs awarded from the GSF, each Party, including all persons eligible to be Class

14   Members, shall bear their own attorneys' fees and costs relative to the

15   investigation, filing, prosecution or settlement of the Action, the negotiation,

16   execution, or implementation of this Agreement, and/or the process of obtaining,

17   administering or challenging a Preliminary Approval Order and/or Final Approval

18   Order.

19       2.4    In the event that the Court denies, modifies, or reduces Class

20   Counsel's request for Attorneys' Fees and Costs, then Plaintiff, Class Counsel,

21   and the Participating Class Members may not seek to modify, revoke, cancel,

22   terminate, or void this Agreement and will not seek, request, or demand an

23   increase in the Settlement Amount.

24       2.5    If Class Counsel appeals the Court's ruling on their request for

25   Attorneys' Fees and Costs, any ruling of any appellate court in such an appeal

26   (regardless of its substance) shall not constitute a material alteration of this

27

28

Document Ref: 3MMBU-KDMPC-CZAX9-Y5HHC

1 | Agreement, and shall not give Plaintiff, Class Counsel, or the Participating Class
2 | Members the right to modify, revoke, cancel, terminate, or void this Agreement.

3 |     2.6    All claims for attorneys' fees and/or costs that Class Counsel,
4 | Plaintiff, and the Participating Class Members may possess against Defendant
5 | have been compromised and resolved in this Agreement and shall not be affected
6 | by any appeal that Class Counsel may file.

7 |     2.7    The Attorneys' Fees and Costs Payment shall represent payment for
8 | all claims for Class Counsel's attorneys' fees and costs, past and future, incurred
9 | in the Action. The Attorneys' Fees and Costs Payment shall be paid from the GSF,
10 | and Defendant shall not otherwise be required to pay for any portion of Plaintiff's
11 | or the Class Members' attorneys' fees or costs. The Attorneys' Fees and Costs
12 | Payment shall be paid to Class Counsel from the GSF following the Effective
13 | Date in accordance with Section 3.25 below.

14 |     2.8    **Service Payment to Plaintiff/Class Representative.** Defendant
15 | agrees not to oppose a Service Payment to Plaintiff in an amount not to exceed
16 | $10,000.00 for his service in bringing and prosecuting the Action. The Service
17 | Payment shall be paid to Plaintiff from the GSF following the Effective Date in
18 | accordance with Section 3.25 below.

19 |     2.9    **PAGA Payment**. The Parties agree to seek approval from the Court
20 | for a payment of $16,875.00 for resolution of the PAGA claims alleged in the
21 | Action. The Parties agree that $12, 656.25 (75%) of the PAGA Payment shall be
22 | paid to the LWDA ("LWDA Payment") and $4,218.75 (25%) of the PAGA
23 | Payment shall remain part of the Net Settlement Fund to be paid to the
24 | Participating Class Members. The PAGA Payment shall be paid to the LWDA
25 | from the GSF following the Effective Date in accordance with Section 3.25 below.

## III. CLASS SETTLEMENT PROCEDURES

3.1. **Class Notice**. The Parties agree that the Administrator shall provide notice to the Class pursuant to the following procedures:

3.2 **Class List and Data.** Within twenty-one (21) days following entry of the Preliminary Approval Order, Defendant will produce the Class List and Data to the Administrator that shall include for each Class Member their: (1) full name; (2) most recently known mailing address; (3) job title(s); (4) telephone number(s); (5) Social Security Number; and (6) dates of employment from which the Administrator can calculate the total number of Qualifying Workweeks.

3.3 **Administrator Duties**. The Administrator's duties shall include, among others: (i) creating a Gross Settlement Fund; (ii) printing and mailing the Notice Packet to the Class as directed by the Court, and establishing a website domain to host the relevant settlement documents; (iii) taking all steps reasonably necessary to ensure Class Members timely receive the Notice Packet; (iv) calculating the number of Qualifying Workweeks worked by Class Members, including resolving any disputes by Class Members about the number of Qualifying Workweeks they worked during the Class Period; (v) taking receipt of and safeguarding the Gross Settlement Fund; (vi) calculating and distributing Individual Settlement Payments, the LWDA Payment, the Service Payment, and the Attorneys' Fees and Costs Payment; (vii) calculating and paying Withholdings and Taxes; (viii) issuing IRS Forms W2 and 1099, as applicable, and reporting all Individual Settlement Payments, Service Payment, and the Attorneys' Fees and Costs Payment; and (ix) forwarding sums represented by uncashed checks to the Unclaimed Property Division of the California State Controller's office with an identification of each Participating Class Member and the amount attributable to each Participating Class Member, together with such other tasks as the Parties

Document Ref: 3MMBU-KDMPC-CZAX9-Y5HHC

1    may mutually request and agree , or the Court may order, that the Administrator to
2    perform.

3        3.4    The Administrator shall create and maintain a website, which will
4    include the Class Notice, Motions for Preliminary and Final Approval, and Motion
5    for Attorneys' Fees as they become available, until the Effective Date. The
6    website shall be removed and inaccessible immediately after the Effective Date.

7        3.5    The Administrator shall take all reasonable steps to ensure that (a) the
8    highest percentage possible of Class Members receive the Notice Packet; (b) Class
9    Members who wish to participate in the Settlement are permitted to do so
10   consistent with this Agreement; and (c) it has the most current and accurate
11   addresses for Class Members, including, but not limited to performing an initial
12   National Change of Address database search for all Class Members who are no
13   longer employed by Defendant. In addition, the Administrator shall perform
14   standard searches, also known as "batch," "skip trace," or "credit header"
15   searches, on all Class Members whose Notice Packet is returned as undeliverable
16   within thirty (30) calendar days of initial mailing. The Administrator shall
17   immediately re-mail all such returned or undelivered Notice Packets to all updated
18   addresses obtained through its efforts to locate the most current and accurate
19   addresses for Class Members. Should a Notice Packet associated with a currently
20   employed Class Member be returned as undeliverable within thirty (30) days of
21   initial mailing, Defendant will review their records and, if an updated address is
22   reflected in its records, provide the Administrator with an updated mailing address
23   for remailing of the Notice Packet. The Administrator shall also: provide a website
24   for information about the case, and a toll-free telephone support and a post office
25   box to facilitate Class Member communications; maintain appropriate databases to
26   fulfill its duties; receive, control, and account for all returned Notice Packets,
27   disputes, Requests for Exclusion and Objections; calculate the Class Members'

28

Document Ref: 3MMBU-KDMPC-CZAX9-Y5HHC

1    payments; and prepare and deliver reports to Class Counsel and Counsel for

2    Defendant on a weekly basis that communicate the status of the notice process,

3    including the number of Notice Packets mailed, returned, searched, and re-mailed

4    as well as any disputes, Requests for Exclusion, and Objections. In addition to the

5    duties identified above, the Administrator shall prepare final declarations, reports,

6    and invoices that accurately describe the notice process, the level of Class

7    Member participation, and actions taken to ensure the best possible notice of the

8    Settlement was provided to Class Members.

9        3.6    **Mailing of Notice Packet to Class Members.** No later than fourteen

10   (14) calendar days following receipt of the information to be provided under

11   Paragraph 3.2 above, the Administrator shall mail the Notice Packet to all Class

12   Members via first class United States mail using the most current mailing address.

13   Any Notice Packet returned to the Administrator within thirty (30) calendar days

14   of initial mailing with a forwarding address shall be immediately re-mailed by the

15   Administrator. The Administrator shall conduct a skip-trace address search for any

16   Class Member's Notice Packet that is returned without a forwarding address and

17   shall, upon obtaining a new or different address, immediately re-mail the Class

18   Member's Notice Packet. It shall be presumed that each and every Class Member

19   whose Notice Packet is not returned to the Administrator as undeliverable within

20   thirty (30) calendar days after mailing has actually received the Notice Packet.

21       3.7    **Requests for Exclusion/Opt-Outs**. Class Members who wish to be

22   excluded from, or opt-out of, the Settlement must submit to the Administrator a

23   written, signed request to be excluded from the Settlement ("Request for

24   Exclusion") postmarked by the Notice Response Deadline. Defendant retains the

25   right to cancel or terminate this Agreement if more than ten (10) Class Members

26   opt out.

27

28

Document Ref: 3MMBU-KDMPC-CZAX9-Y5HHC

3.8 **Contents of Request**. The Request for Exclusion must contain: (i) the name of this Action; (ii) the full name, address, telephone number, and last four digits of the Social Security Number of the person requesting to be excluded; (iii) the words "Request for Exclusion" at the top of the document; (iv) the personal signature of the Class Member seeking to be excluded; and (v) a statement indicating their desire to be excluded.

3.9 **Timeliness**. For purposes of determining timeliness, a Request for Exclusion shall be deemed to have been submitted on the date postmarked by the U.S. Postal Service or other delivery service. The Administrator shall stamp the date received on the original of any Request for Exclusion it receives. Not later than ten (10) calendar days after the Notice Response Deadline, the Administrator will inform Class Counsel and Counsel for Defendant of the total number of Class Members who timely submitted valid Requests for Exclusion.

3.10 **Non-Opt-Outs Bound**. Each Class Member who does not submit a valid request for exclusion substantially in compliance with Paragraphs 3.8 and 3.9 by the Notice Response Deadline shall be bound by the terms of this Agreement, any Court order approving the terms of the Settlement, and the Final Approval Order and Judgment entered thereon.

3.11 **Resolution of Disputes Regarding Opt-Outs**. In the event of any issue or dispute over the completeness, accuracy, timeliness, or validity of a Request for Exclusion, the Parties shall meet and confer in good faith for the purpose of resolving the issue and, if the issue cannot be resolved, shall submit the dispute to the Court for a final and binding determination that shall not be appealable.

3.12 **Objections**. Only Class Members (i.e., those Class Members who have not submitted a Request for Exclusion) may object to the Settlement.

Document Ref: 3MMBU-KDMPC-CZAX9-Y5HHC

3.13  **Manner of Objecting**. Class Members who wish to object to the Settlement must send to the Administrator a personally signed, written statement objecting to the Settlement ("Objection(s)") postmarked on or before the Notice Response Deadline. The Objection must contain: (i) the name of this Action; (ii) the full name, address, telephone number, and last four digits of the Social Security Number of the person objecting as well as the full name, address, and telephone number of any attorney representing said person with respect to the objection; (iii) the word "Objection" at the top of the document; (iv) the personal signature of the Class Member seeking to object to the Settlement; and (v) a statement of the basis for their objections and whether or not the Class Member wishes to appear at the Final Approval Hearing to present oral argument. Class Members who timely submit an Objection in conformity with the requirements set forth herein may, but are not required to, appear at the Final Approval Hearing. No later than ten (10) calendar days from the Notice Response Deadline, the Administrator shall provide copies of all Objections received from Class Members, along with documents showing the postmarked date for each Objection, to Counsel for all Parties.

3.14  **Plan of Allocation and Calculation of Settlement Awards.** The Administrator shall be responsible for calculating the share of the Net Settlement Fund that Class Members are eligible to receive under the Settlement ("Individual Settlement Share(s)") on a *pro rata* basis as follows:

3.14.1  The Administrator shall determine the amount of the Net Settlement Fund.

3.14.2  To determine each Class Member's estimated Individual Settlement Share, the Administrator shall calculate the total number of Qualifying Workweeks worked by the Class Members during the Class Period. The Administrator will then divide the Net Settlement Fund by the total Qualifying

Document Ref: 3MMBU-KDMPC-CZAX9-Y5HHC

1  Workweeks worked by the entire Class during the Class Period to arrive at a

2  "Workweek Value." The Administrator will then take that Workweek Value and

3  multiply it by the number of Qualifying Workweeks worked by each Class

4  Member to yield his or her Individual Settlement Share. To calculate final

5  Individual Settlement Shares of Participating Class Members, the Administrator

6  shall perform the same calculation based on the Qualifying Workweeks of the

7  Participating Class Members.

8          3.14.3  Participating Class Members will be paid their Individual

9  Settlement Share subject to reduction for employee's share of withholdings and

10  employer's share of taxes with respect to the wages portion of the Individual

11  Settlement Shares. The net payment after reduction for Withholdings and Taxes is

12  the "Individual Settlement Payment(s)."

13      3.15   In the event a dispute arises with respect to an Individual Settlement

14  Share calculation, the Administrator shall make the final and binding

15  determination of the amount to be awarded, which shall not be appealable.

16      3.16   **Allocation and Taxes**. The payment by Defendant pursuant to this

17  Agreement is for alleged failure to pay compensation due, interest on the

18  compensation, premium pay, penalties regarding the compensation sum, and all

19  other claims as set forth in the Complaint. The Parties agree, for purposes of this

20  Settlement, that Individual Settlement Payments be allocated 20% to wages

21  subject to withholdings for which IRS W-2 Forms shall be issued by the

22  Administrator, and 80% to interest, penalties, and non-wage damages for which

23  IRS 1099 Forms shall be issued by the Administrator. In accordance with both

24  state and federal tax laws, the Administrator shall withhold such sums from each

25  Participating Class Member's Individual Settlement Share as is required in order

26  to comply with the same. The Individual Settlement Shares will be subject to

27  reduction for the Withholdings and Taxes. Each Participating Class Member

28

Document Ref: 3MMBU-KDMPC-CZAX9-Y5HHC

1    receiving payment under this Settlement shall be responsible for paying his or her

2    share of applicable federal, state, and local income taxes on all amounts such

3    person receives pursuant to this Agreement.

4        3.17   **Administrator Responsibilities Regarding Taxes**. It shall be the

5    responsibility of the Administrator or its designee to timely and properly withhold

6    all applicable Withholdings and Taxes, and to prepare and deliver the necessary

7    tax documentation for signature by all necessary parties and, thereafter, to pay the

8    Withholdings and Taxes to the appropriate authorities, and to file all necessary

9    information and other tax returns. Payments to Participating Class Members,

10   Plaintiff, and Class Counsel pursuant to this Agreement shall be reported on IRS

11   Forms W-2 or 1099-MISC as applicable with copies provided to the respective

12   Participating Class Members, Plaintiff, Class Counsel, and all applicable

13   governmental entities as required by law, and to Defendant. The Administrator

14   shall also provide Defendant with appropriate documentation establishing that the

15   Defendant/employer's share of any and all payroll taxes (including, but not limited

16   to, FICA, FUTA and SDI contributions) have been paid from the GSF.

17       3.18   **Tax Expenses Resulting from Administration**. All reasonable and

18   direct expenses and costs incurred by or at the direction of the Administrator in

19   connection with the administration of the Settlement (including, without

20   limitation, expenses of tax attorneys and/or accountants incurred in providing

21   advice to the Administrator, and mailing and distribution costs and expenses

22   relating to the filing (or failure to file) the informational and other tax returns

23   described above) shall be considered a cost of administration of the Settlement and

24   part of the Administration Costs to be paid out of the Gross Settlement Fund.

25       3.19   **No Effect on Benefits for Participating Class Members**. Plaintiff

26   agrees, on behalf of himself and all Participating Class Members, that this

27   Agreement and any payments under this Agreement shall not have any effect on

28

Document Ref: 3MMBU-KDMPC-CZAX9-Y5HHC

the eligibility or calculation of employee benefits with respect to the Participating Class Members. This Agreement does not represent any modification of any previously credited hours of service, income, or other eligibility criteria under any employee pension benefit plan, employee welfare benefit plan, or other program or policy sponsored by any of the Released Parties.

3.20    Plaintiff also agrees, on behalf of all Participating Class Members, that no payment provided under this Agreement shall be considered "compensation" or "annual earnings for benefits" in any year for purposes of determining eligibility for, or benefit accrual within, any employee pension benefit plan, employee welfare benefit plan, other program or policy sponsored by any of the Released Parties.

3.21    **No Claims**. No person shall have any claim against any of the Released Parties, Counsel for Defendant, Plaintiff, the Class Members, or Class Counsel, based on mailings, distributions, and payments made in accordance with or pursuant to this Agreement.

3.22    **Final Approval and Entry of Judgment**. Following the Notice Response Deadline and before the Final Approval Hearing, on or before the date set by the Court, Plaintiff shall move for Final Approval of the Settlement, requesting that the Court enter an order and judgment granting final approval of the Settlement in a form that is mutually agreed upon by the Parties ("Final Approval Order and Judgment").

3.23    **Distribution of Settlement Awards**. After the Effective Date, the Individual Settlement Payments shall be distributed to Participating Class Members in accordance with the procedures set forth below:

3.24    **Remittance of Gross Settlement Fund**. Defendant shall fund the GSF fifteen (15) days after the Effective Date.

3.25    **Delivery of Payments**. On receipt of the GSF from Defendant, the

Document Ref: 3MMBU-KDMPC-CZAX9-Y5HHC

1   Administrator shall distribute forthwith: (a) the Attorneys' Fees and Costs

2   Payment to Class Counsel; (b) the Individual Settlement Payment checks to all

3   Participating Class Members; (c) the LWDA Payment to the LWDA; (d) the

4   Service Payment to Plaintiff; and (e) the Withholdings and Taxes to the

5   appropriate government entities. Within ten (10) calendar days from full funding

6   of the GSF, the Administrator shall transmit payment to itself for the

7   Administration Costs. Also, within ten (10) calendar days from the Effective Date,

8   the Administrator shall provide Class Counsel and Counsel for Defendant a

9   written report listing each Participating Class Member, the amount of the

10  Individual Settlement Payment to be paid to each Participating Class Member, the

11  amount of Withholdings and Taxes associated with each Individual Settlement

12  Payment, including the amount of the employer's share of any and all payroll

13  taxes and contributions. Class Counsel shall hold the information contained in this

14  report in strictest confidence and not use or disclose it for any purpose, except on

15  the written authorization of counsel for Defendant or by order of the Court.

16  Additionally, by no later than the date set by the Court in its Final Approval Order

17  and Judgment, the Administrator shall file a report with the Court setting forth: (1)

18  the total amount of money paid to Participating Class Members; (2) the LWDA

19  Payment to the LWDA; (3) the Service Payment paid to Plaintiff; (4) the payment

20  made to itself for the Administration Costs; and (5) the Attorneys' Fees and Costs

21  paid to Class Counsel.

22          3.26  **Negotiation of Individual Settlement Payment Checks**. Checks

23  sent to Participating Class Members under this Agreement shall remain valid and

24  negotiable for one hundred and eighty (180) calendar days from the date of their

25  mailing, and thereafter shall be automatically canceled if not cashed or otherwise

26  negotiated by the payee within that time. The Administrator will provide notice to

27  Class Counsel of any uncashed checks, and the Administrator shall attempt to

28

locate the impacted Participating Class Members and, if a request to re-issue a check is made before the 180-day deadline, re-issue checks with an expiration date within 180 days following the re-issuing of the checks.

3.27   If a Participating Class Member has not cashed a check by the 30th day from the date of the check's issuance, the Administrator shall send a postcard to the Class Member to remind each to cash their check before the void date.

3.28   If any Individual Settlement Payment checks are not cashed within 180 days of issuance, they shall be cancelled, and monies associated with said cancelled checks shall be sent to the Unclaimed Property Division of the California State Controller's office with an identification of each Participating Class Member and the amount attributable to each Participating Class Member to be held and distributed in accordance with California Unclaimed Property Law, California Code of Civil Procedure § 1500 *et seq.*

3.29   **Questions and Disputes**. In the event that questions or disputes arise regarding the entitlement of any Class Member under this Agreement, counsel for each of the Parties shall cooperate to provide to counsel for the other Party and the Administrator all available information reasonably necessary to resolve them. Such information shall be provided in either electronic form or hard copy as the Administrator may reasonably request. If the Parties cannot resolve any dispute concerning the entitlement of any Class Member under this Agreement, the dispute(s) shall be submitted to the Administrator for resolution.

3.30   **Notification and Certification by the Administrator**. The Administrator shall keep Defense Counsel and Class Counsel apprised of the status of the Settlement administration process and its distribution of Individual Settlement Payments. Upon completion of administration of the Settlement, the Administrator shall provide a detailed written certification of such completion to the Court and counsel for the Parties.

Document Ref: 3MMBU-KDMPC-CZAX9-Y5HHC

3.31   **Nullification of Agreement if Settlement Not Approved**. In the event: (a) the Court does not preliminarily approve the Settlement as provided herein; (b) the Court does not finally approve the Settlement as provided herein; (c) the Court does not enter the Final Approval Order and Judgment as provided herein; or (d) the Settlement does not become final for any other reason, this Agreement shall be null and void *ab initio* (with the exception of this Section and terms regarding payment to Administrator) and any order or judgment entered by the Court in furtherance of this Settlement shall be treated as withdrawn or vacated by stipulation of the Parties. In such cases Defendant shall be solely responsible for the fees incurred by the Administrator. In the event an appeal is taken from the Final Approval Order and Judgment, or any other appellate review is sought before the Effective Date, administration of the Settlement shall be stayed pending final resolution of the appeal or other appellate review.

## IV.   ENTRY OF JUDGMENT AND RELEASES

4.1   **Obtaining Approval**. As soon as practicable after execution of this Agreement, Class Counsel shall, with the cooperation of Defense Counsel as reasonably requested by Class Counsel, take all necessary steps to secure Preliminary Approval and Final Approval of the Settlement by the Court, including responding to any objectors, intervenors, or other persons or entities seeking to prevent approval of this Agreement.

4.2   **Plaintiff's Waiver of Right to Opt-Out**. By signing this Agreement, named Plaintiff agrees to be bound by the terms herein and further agrees not to request exclusion from this Agreement. Any such request for exclusion shall, therefore, be void and of no force or effect.

4.3   **The Class Release**. Participating Class Members agree to release, waive, not to sue, file an administrative charge/complaint, or otherwise make any claim against any of the Released Parties seeking any form of relief, remedy, or

Document Ref: 3MMBU-KDMPC-CZAX9-Y5HHC

1    recovery based on any of the Released Claims, which shall include any and all

2    claims, rights, demands, and/or liabilities of every nature and description, whether

3    known or unknown, based on or arising out of the Released Claims. It is the intent

4    of the Parties that the Final Approval Order and Judgment entered by the Court

5    shall have full *res judicata* and collateral estoppel effect, and that it be final and

6    binding upon Participating Class Members regarding the Released Claims.

7         4.4    **Named Plaintiff's General Release**. Upon the Effective Date, and in

8    consideration of the promises and obligations set forth herein, named Plaintiff Jose

9    Valenzuela, and each of his successors, assigns, heirs, personal representatives,

10   and all those who claim through him, or who assert claims on his behalf, agrees to

11   a general release of any and all claims against the Released Parties, and Plaintiff

12   shall be deemed to have, and by operation of the Final Approval Order and

13   Judgment shall have, expressly released, waived, and relinquished any and all

14   rights to allege or seek any form of relief, remedy, or recovery based on any of the

15   Released Claims. This general release by Plaintiff shall become effective upon the

16   Effective Date and include all statutory claims, common law claims, tort claims,

17   and claims for compensation to the fullest and broadest extent permitted by law.

18        4.5    **Waiver of California Civil Code Section 1542**. Plaintiff

19   acknowledges that the general release herein includes potential facts, claims, and

20   injuries/harm that may not be known or suspected by him to exist, and he hereby

21   expressly and affirmatively waives and relinquishes any and all rights and benefits

22   that he may otherwise have, on an individual basis, relating to the claims released

23   in Paragraph 4.4 pursuant to California Civil Code section 1542, and any similar

24   law of any state or territory of the United States. California Civil Code section

25   1542 states as follows:

26            A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT
              THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR
27            SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF

28

Document Ref: 3MMBU-KDMPC-CZAX9-Y5HHC                                                                    Page 22 of 28

EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

## V.     ADDITIONAL PROVISIONS

5.1     **No Admission of Liability**. Defendant has denied and continues to deny each and every alleged claim, contention, liability, wrongdoing, and injury arising out of any of the facts or conduct alleged in the Complaint, and believes it did not violate any law, and that it also has valid defenses to the alleged claims. This Agreement reflects the compromise and settlement of disputed claims between the Parties, and their provisions and any and all drafts, communications, or discussions relating thereto do not constitute, are not intended to constitute, and will not under any circumstances be deemed to constitute an admission by any Party as to the merits, validity, or accuracy of any of the allegations or claims in the Action, nor a waiver of any defense.

5.2     **Parties Represented by Counsel**. The Parties hereby acknowledge that they have been represented in negotiations for and in the preparation of this Agreement by independent counsel of their own choosing, they have read this Agreement and have had it fully explained to them by such counsel, and they are fully aware of the contents of this Agreement and of its legal effect.

5.3     **Construction**. The Parties agree that the terms and conditions of this Settlement are the result of lengthy, intensive arm's-length negotiations between the Parties, and that this Settlement shall not be construed in favor of or against any Party by reason of the extent to which any Party or his, her, or its counsel participated in the drafting of this Settlement.

5.4     **Voluntary Agreement**. This Agreement is executed voluntarily and without duress or undue influence on the part of or on behalf of either Party, or of any other person, firm, or entity. Each Party has made such investigation of the facts pertaining to this Agreement and of all other matters pertaining hereto as he,

Document Ref: 3MMBU-KDMPC-CZAX9-Y5HHC

1    she, or it deems necessary.

2       5.5    **Notices**. Aside from the Notice of Class Action Settlement, all other

3 notices, requests, demands, and other communications required to be given under

4 this Agreement shall be in writing and shall be delivered personally, faxed,

5 emailed or mailed, postage prepaid, by first class United States mail to:

6

7       **To Plaintiff and Class Counsel**:

8       Sang (James) Park
9       sang@park-lawyers.com
       PARK APC
10      8383 Wilshire Blvd., Suite 800
       Beverly Hills, CA 90211
11

12

13

14      **To Defendant and Defense Counsel**:

15      Elizabeth A. Sperling
16      esperling@glaserweil.com
       GLASER WEIL FINK HOWARD
17       JORDAN & SHAPIRO LLP
18      600 W Broadway, Suite 2180
       San Diego, California 92101
19

20       5.6    The Parties and their Counsel agree that they shall not issue media

21 releases regarding the terms of this Settlement. In the event Class Counsel

22 references the Settlement on their websites, Class Counsel will simply refer to

23 Defendant as a "Financial Equipment and Services Company." These provisions

24 shall in no way impede and/or impair Class Counsel and/or the Plaintiff from

25 fulfilling their obligations to the Class, or their obligations to obtain preliminary

26 and final approval of the Settlement.

27       5.7    **Authorization**. Parties represent and warrant that each signatory

28

JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE

Document Ref: 3MMBU-KDMPC-CZAX9-Y5HHC

1    hereto has the full right and authority to enter this Agreement and bind the Party.

2      5.8    **Agreement Binding on Successors in Interest**. This Agreement

3    shall be binding on and inure to the benefit of the respective successors, assigns,

4    heirs, and personal representatives of the Parties.

5      5.9    **Time Periods**. The time periods and dates set forth in this Agreement

6    with respect to the giving of notices and hearings are subject to approval and

7    modification by the Court or the written stipulation of counsel for the Parties.

8      5.10    **Mutual Full Cooperation**. The Parties agree to cooperate fully with

9    each other to accomplish the terms of this Agreement, including, but not limited

10    to, execution and delivery of any and all additional papers, documents, and other

11    assurances, and taking such other action that may be reasonably necessary to

12    implement the terms of this Agreement. The Parties and their counsel shall use

13    their best efforts, including all efforts contemplated by this Agreement and any

14    other efforts that may become necessary by order of the Court, to effectuate this

15    Agreement and the terms set forth herein.

16      5.11    **Entire Agreement**. This Agreement contains the entire agreement

17    between the Parties and constitutes the complete, final, and exclusive embodiment

18    of their agreement with respect to the subject matter hereof. This Agreement is

19    executed without reliance upon any promise, representation, or warranty by either

20    Party or any representative of a Party, other than those expressly set forth herein.

21      5.12    **Headings**. The headings used in this Agreement are solely for the

22    convenience of the Parties and shall not be used to interpret this Agreement.

23      5.13    **Amendment and Modification**. This Agreement may not be

24    amended, altered, or modified except in writing and signed by either the Parties

25    hereto, their successors in interest, or their counsel, and approved by the Court.

26      5.14    **Governing Law**. This Agreement is entered into in accordance with

27    the laws of the State of California and shall be governed by and interpreted in

28

JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE

1  accordance with those laws.

2      5.15 **Jurisdiction of the Court**. Any dispute regarding the interpretation,

3  validity, or otherwise arising out of this Agreement, or relating to the Action or the

4  Released Claims, shall be subject to the exclusive jurisdiction of the Court.

5  Plaintiff, Class Members, and Defendant agree to submit to the personal and

6  exclusive jurisdiction of the Court for the purpose of resolving any such dispute.

7  Following the Effective Date, the Court shall retain continuing jurisdiction solely

8  with respect to the interpretation, implementation, and enforcement of this

9  Agreement and all orders and judgments entered in connection therewith.

10      5.16 **Execution Date and Execution in Counterparts**. This Agreement

11  shall be deemed executed and enforceable upon the last date of signature of all of

12  the undersigned. The Parties may execute this Agreement in counterparts, each of

13  which shall constitute an original, but all of which together shall constitute one

14  and the same instrument having the same force and effect as if all Parties had

15  signed the same instrument.

16      5.17 **Signatures**. The Parties agree that this Agreement may be executed

17  and delivered via DocuSign, Assured Sign, Hello Sign, PandaDoc, electronic mail

18  (including PDF), and/or any other electronic signature complying with the U.S.

19  federal ESIGN Act of 2000 and California's Uniform Electronic Transactions Act

20  (Civ. Code § 1633.1, et. seq.). Any counterpart so executed and delivered shall be

21  deemed valid and enforceable, and fully and validly delivered, for all purposes.

22      5.18 **Tax Consequences:** This Agreement is enforceable regardless of its

23  tax consequences. The Parties understand and agree that the payments set forth in

24  this Agreement reflect the settlement of disputed legal claims and that Defendant

25  makes no representations regarding the Agreement's tax consequences. Plaintiff

26  and Class Members are solely and entirely responsible for the payment and

27  discharge of all federal, state, and local taxes, if any, that each Party owes under

28

JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE

Document Ref: 3MMBU-KDMPC-CZAX9-Y5HHC

1    any federal, state, or local laws as a result of the matters and payments set forth

2    herein.

3

4                    IN WITNESS THEREOF, the Parties hereto have so agreed.

5

6

7    DATED:                                      EVERI GAMES INC.

8

9        February 24, 2025                       By: _____

10                                               Name:  Randy L. Taylor
                                                 _____

11                                               Title:    President and CEO
                                                 _____

12

13

14   DATED:    2025-02-12                        PLAINTIFF JOSE VALENZUELA

15

16                                                      _Jose Valenzuela_
                                                 By: _____

17                                               _____
                                                 Plaintiff and Settlement Class

18                                               Representative

19   **APPROVED AS TO FORM:**

20

21   DATED:                                      GLASER WEIL FINK HOWARD
                                                 JORDAN & SHAPIRO LLP
22

23                                               By:_____

24       February 24, 2025

25                                               Elizabeth A. Sperling
                                                 Attorneys for Defendant
26

27

28

Page 26

1

2     DATED:  2025-02-12           PARK APC

3

4                               *Sang Park*

5                      By:_____

6   _____       Sang (James) Park

7                      Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Page 27
JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE

# EXHIBIT B

## NOTICE OF CLASS AND PAGA ACTION SETTLEMENT

### THIS IS AN IMPORTANT COURT APPROVED NOTICE.  READ CAREFULLY

*Jose Valenzuela v. Everi Games Inc.*

United States District Court for the Central District of California
Case No 2:24-cv-00257-MRA-JPRx

**If you worked for *Everi Games Inc.* in California from September 13, 2019 through _____ you may be entitled to receive a payment from a class action settlement. Your legal rights are affected whether you act or don't act. Your legal rights and options—and the deadlines to use them—are explained in this notice.**

*This is a court-authorized notice.  It is <u>not</u> a solicitation from a lawyer. You are not being sued.*

- You have been identified as a Class Member in a lawsuit brought by a former employee of Everi Games Inc.

- The Court has preliminarily approved a class action settlement that will affect all current and former non-exempt employees for Everi Games, Inc. in California from September 13, 2019 through _____.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **PARTICIPATE IN THE SETTLEMENT – <u>NO ACTION REQUIRED</u>** | **Stay in this lawsuit.  Receive a payment.  Give up certain rights.**  By doing nothing, you become part of the Settlement Class and will collect a settlement award as detailed below. You will automatically receive a payment from the Settlement if the "Court" (United States District Court for the Central District of California) finally approves the Settlement.  In exchange, you will be bound by the Settlement including the release of all claims covered by the Settlement. |
| **OBJECT TO THE SETTLEMENT** | **Stay in this lawsuit.  May give up certain rights.**  If you wish to object to the Settlement, you may submit a written objection and supporting papers to the "Settlement Administrator" (Phoenix Settlement Administrators, a neutral third-party administrator mutually chosen by the Parties and approved by the Court). Any written objections will be provided to the Court. You may also offer your oral comments at the "Final Approval Hearing" (the Court's hearing on the motion for final approval of the Settlement). In order to object, you must not have excluded yourself from the Settlement. |

- 1 -

| | If you object to the Settlement, you will remain a member of the Class, and if the Court approves the Settlement, you will be bound by the terms of the Settlement in the same way as Class Members who do not object. |
|---|---|
| **ASK TO BE EXCLUDED** | **Get out of this lawsuit.  Get no benefits from it.  Keep rights.** If you submit a "Request for Exclusion" (a Class Member's submission of a written request to be excluded from the class portion of the Settlement signed by the Class Member), you will not receive a settlement payment. <br><br> Private Attorneys General Act (PAGA) Members (as defined below) cannot opt out of the PAGA portion of the proposed Settlement and will receive their Individual PAGA Payments (the PAGA Members' pro rata share of the 25% of the PAGA Penalties calculated according to the number of Workweeks worked during the PAGA period) even if they opt out of the class Settlement. <br><br> If you ask to be excluded from the Settlement, you won't share in the Settlement.  But you keep any rights to sue *Everi Games Inc.* separately about the legal claims raised or that could have been raised in this lawsuit. |

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ...............................................................................**PAGE - 4 -**
     1.   Why did I get this notice?
     2.   What is the lawsuit about?
     3.   What is a class action and who is involved?
     4.   Why is this lawsuit a class action?
     5.   Why is there a settlement?
     6.   What are the terms of the proposed settlement?

**WHO IS IN THE CLASS** ...........................................................................**PAGE - 6 -**
     7.   Am I part of this Class?

**YOUR RIGHTS AND OPTIONS** ...................................................................**PAGE - 6 -**
     8.   What is my approximate settlement payment?
     9.   How and when will I get payment? How do I update my address?
     10. What rights am I releasing if I participate in the settlement?
     11. How do I object to the settlement?
     12. How do I ask to be excluded from the Class?

**THE LAWYERS REPRESENTING YOU** ..........................................................**PAGE - 9 -**
     13. Who is class counsel?
     14. How will the lawyers be paid?

**THE SETTLEMENT, APPROVAL, AND PAYMENT PROCESS** ...................................**PAGE - 10 -**
     15. Who is handling the settlement administration process?
     16. When is the Final Approval Hearing and do I have to attend?
     17. When will I get money after the hearing?

**GETTING MORE INFORMATION**.................................................................**PAGE - 11 -**
     18. Are more details available?

## BASIC INFORMATION

| 1.  Why did I get this notice? |
| --- |

A proposed settlement (the "Settlement") has been reached in a class action lawsuit entitled *Jose Valenzuela v. Everi Games, Inc.*, United States District Court for the Central District of California, Case No. 2:24-cv-00257-MRA-JPRx (the "Action"). Plaintiff Jose Valenzuela ("Plaintiff" or "Class Representative") has sued Everi Games Inc. (hereinafter, "Defendant"), claiming that Defendant violated California law by purportedly failing to pay minimum and overtime wages; claims of meal and rest period violations; failing to furnish timely and accurate wage statements; wages not timely paid upon termination; violation of the California Business and Professions Code; and the Private Attorneys General Act ("PAGA").

The Court has granted preliminary approval of a "Settlement Class" defined as follows:

> All current and former non-exempt employees who worked for Defendant in California during the time period of September 13, 2019 through ⬛⬛⬛⬛⬛⬛⬛.

Defendant's employment records indicate that you meet the definition, which makes you a member of the Settlement Class (referred to in this Notice as a "Class Member"). The Court directed that this Notice be sent to all Class Members to inform you about the case and your rights and options before the Court decides whether to approve the Settlement. If the Court approves the Settlement, and after any appeals are resolved, payments will be made to Class Members who have not opted out of the Settlement.

This Notice explains the Action, the Settlement, your legal rights and options that you may exercise as part of this Settlement.

| 2.  What is this lawsuit about? |
| --- |

On September 13, 2023, Plaintiff filed a class action against the Defendant alleging several violations of California wage and hour laws. Plaintiff filed his lawsuit on behalf of himself and on behalf of all current and former non-exempt employees of Everi Games Inc. Plaintiff's complaint alleges that Defendant: (1) failed to pay unpaid overtime; (2) failed to pay meal period premiums; (3) failed to pay rest period premiums; (4) failed to pay minimum wages; (5) failed to furnish timely and accurate wage statements; (6) failed to timely pay wage statements upon termination; and (7) violation of California Business and Professions Code.

On November 17, 2023, Plaintiff amended his complaint to add a cause of action which alleges that Defendant owes civil penalties under California's Private Attorneys General Act of 2004, California Labor Code §§ 2699, *et seq*.

This lawsuit is about whether Everi Games Inc. provided meal periods, permitted rest breaks, paid overtime and minimum wages, paid all wages owed upon termination of employment, and provided proper wage statements, as required by applicable California laws.

- 4 -

Everi Games Inc. disputes the allegations in the lawsuit. Everi Games Inc. denies that they owe the monies claimed in the lawsuit, or that Everi Games Inc. violated any laws. However, Everi Games Inc. has agreed to settle the Action to avoid the expense of litigation.

## 3.  What is a class action and who is involved?

In a class action lawsuit such as this, a person called a "Class Representative" sues on behalf of other people who have similar claims.  The people together are a "Class" or "Class Members."  The person who is the Class Representative is also called the Plaintiff.  The companies sued (in this case Everi Games Inc.) are called the Defendant. One court resolves the issues for everyone in the Class—except for those people who choose to exclude themselves from the Class.

## 4.  Why is this lawsuit a class action?

As part of the Settlement with Everi Games Inc., Plaintiff and Everi Games Inc. agreed to conditionally certify the class with respect to all of the claims Plaintiff alleged against Everi Games Inc. as a class action, for settlement purposes only, and to move towards Court approval of the Settlement. The Court has not ruled on the merits of these claims, and the decision to certify the agreed upon Class for settlement purposes should not be viewed as a prediction that Plaintiff or the Class would ultimately prevail on the merits.

## 5. Why is there a settlement?

The Court did not decide in favor of Plaintiff or Defendant. Instead, both sides agreed to a Settlement. This allows both parties to avoid the risk and uncertainty of trial and any subsequent appeal, and all Class Members who have not opted out of the Settlement will receive compensation. The Settlement is not an admission of liability by Defendant. The Class Representative and the attorneys believe the Settlement is fair, reasonable and adequate, and in the best interests of all Class Members.

## 6.  What are the terms of the proposed settlement?

Everi Games Inc. has agreed to pay $327,500.00 to settle the Action (the "Gross Settlement Amount"), which includes payments to the Class, incentive award to the Class Representative, administration costs, attorneys' fees and costs, and payment to the LWDA.

The major terms of the settlement are as follows:

1.    Everi Games Inc. has agreed to pay the total sum of $327,500.00 to settle the claims made in this lawsuit. This is also known as the Gross Settlement Fund.

2.    Plaintiff has agreed to release all of his claims against Everi Games Inc.

3.    Plaintiff seeks the following deductions from the $327,500.00 Gross Settlement Fund:

    a.  One-third of the Gross Settlement Fund (equal to $109,167) for Class Counsel Attorneys' Fees.

- 5 -

b.  Up to $20,000.00 for reimbursement of Class Counsel's litigation costs.

c.  An incentive award of $10,000.00 for Plaintiff Jose Valenzuela for having filed this action, work performed, and risks undertaken.

d.  Up to $_____ to cover the costs of the Settlement Administrator.

e.  Payment of $16,875.00 to the Labor and Workforce Development Agency for release of Private Attorney General Act claims.

If the Court approves each of the requested amounts from the Gross Settlement Fund, the Parties estimate there will be approximately $_____ remaining.  The remaining funds will be referred to as the Net Settlement Fund.  The Net Settlement Fund will be distributed to Class Members who do not request exclusion ("Participating Class Members") and according to the following formula:

After the time to object or opt out of the settlement has passed and after final approval by the Court, Participating Class Members will be paid a pro rata share of the Net Settlement Fund based on their individual weeks worked for Everi Games Inc. during the period of September 13, 2019 through _____(the "Class Period").

Your estimated individual settlement payment is listed in section 8 of the Notice. Payroll deductions will be made to your individual settlement payment for state and federal withholding taxes and any other applicable payroll deductions owed by you. No portion of the Gross Settlement Amount will be returned to Defendant.

## WHO IS IN THE CLASS?

### 7.  Am I part of this Class?

The Class includes all of Everi Games Inc.'s current and former non-exempt employees who worked for Everi Games Inc. in California from September 13, 2019 through _____ (the "Class Period").

## YOUR RIGHTS AND OPTIONS

You have to decide whether to stay in the Class or ask to be excluded from the Settlement, and you have to decide this by no later than [DATE].

### 8.  What is my approximate settlement payment?

Each participating Class Member will receive a pro rata share of the Net Settlement Fund based on the number of Workweeks (defined as any week during which a Class Member worked for Defendant for at least one day during the Class Period) the person worked for Defendant as a non-exempt employee during the Class Period. Any Workweek in which a Class Member worked at least one day shall be counted as a Workweek.

3039810

To calculate a participating Class Member's Individual Class Payment, the Net Settlement Amount will be divided by dividing the Net Settlement Amount by the total number of Workweeks worked by all Participating Class Members during the Class Period and multiplying the result by each Participating Class Member's Workweeks.

According to payroll records maintained by Everi Games Inc., the total number of weeks you worked for Everi Games Inc. during the Class Period is _____.

Based on information provided above and anticipated court-approved deductions, it is estimated your share of the settlement proceeds for the Class Period will be $_____, less applicable taxes, withholdings and employee garnishments.

Please note that each participating Class Member will be responsible for his/her share of taxes attributable to the receipt of an Individual Class Payment. The Parties and their attorneys cannot provide and will not provide any advice regarding tax obligations. Participating Class Members should consult with their tax advisors concerning the tax consequences of the Individual Class Payment they receive under the Settlement.

If you believe your total Workweeks during the Class Period shown above are not correct, you may send written notice to the Settlement Administrator indicating what you believe is correct. Written notice must include (1) your full name, address, telephone number, and last four digits of your Social Security Number; and (2) any documents or other information that supports your belief that the information set forth above is incorrect. The Settlement Administrator will resolve any dispute based upon Everi Games Inc.'s records and any information you provide. Any dispute regarding settlement must be mailed or faxed to the Settlement Administrator no later than _____ [30 days from the date of Notice mailing].

Please be advised that the number of weeks you worked as a non-exempt employee during the Class Period is presumed to be correct unless the documents you submit are company records from Everi Games Inc..  The Settlement Administrator will make the final decision as to how many Workweeks should be credited to the Participating Class Member and report the outcome to the Participating Class Member. The Settlement Administrator's decision will be final and non-appealable. If you opt-out of the Settlement Class, you cannot challenge your Workweek computation.

## 9.   How and when will I get payment? How do I update my address?

**How do I receive money from the Settlement?** You do not need to do anything to receive your Individual Class Payment.

**When will I receive my Settlement payment?** Class Members who do not opt out of the Individual Class Payment will receive their payments only after the Court grants final approval to the Settlement and after any appeals are resolved.

**Settlement payment checks must be cashed soon after receipt.** Settlement checks will be able to be cashed for 180 days after they are issued. After 180 days, the Settlement checks will no longer be able to be cashed. Any funds represented by Settlement checks remaining uncashed for more than 180 days after issuance shall be transmitted to the Controller of the State of California to be held pursuant to the Unclaimed Property Law, California Code of Civil Procedure section 1500, *et seq.*, in the names of

- 7 -

those Participating Class Members who did not cash their checks until such time they claim their property.

**Change of address:** You are responsible for keeping a current address on file with the Settlement Administrator to ensure that you receive your Settlement payment. If you change your address, or if this notice was not mailed to your correct address, you should immediately provide a current address to the Settlement Administrator. The Settlement Administrator can be reached as provided below.

## 10.  What rights am I releasing if I participate in the settlement?

If the Settlement is approved by the Court, a judgment will be entered by the Court. Upon the date the judgment becomes final and Defendant's funding the Gross Settlement Amount, all Participating Class Members shall release the "Released Parties" (Defendant, and all related companies, subsidiaries, owners, shareholders, members, agents, predecessors, successors, and assigns) from the Released Claims for the Class Period.

Upon final approval by the Court, the claims released by Class Members (the "Released Claims") are all wage-and-hour claims, demands, rights, liabilities, costs, penalties, interest, attorney's fees, and causes of action, arising during the Class Period, which were or could have been raised based on the facts, conduct, and/or omissions alleged in the Operative Complaint, including, but not limited to, claims for missed meal and rest breaks; meal and rest breaks premiums; unpaid wages, including minimum wages, regular wages, overtime and double time wages; unpaid vacation; alleged wage statement violations; alleged failure to timely pay all wages due upon separation of employment; alleged off the clock violations; alleged failure to maintain and provide accurate records; alleged waiting time penalties; violations of the California Labor Code, the Business and Professions Code and relevant Wage Orders; unfair business practices premised on the above claims; and penalties under the California Private Attorneys General Act ("PAGA"). Participating Class Members do not release any other claims, including claims for vested benefits, wrongful termination, violation of the Fair Employment and Housing Act, unemployment insurance, disability, social security, workers' compensation, or claims based on facts occurring outside the Class Period.

Any Class Member who does not request exclusion by the applicable deadline will be considered to have accepted the release and to have waived any and all of the Released Claims against the Released Parties.

## 11.  How do I object to the settlement?

If you are a member of the Class above and would like to object to the settlement, you must not submit a request for exclusion (*i.e.*, must not opt out). You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. You can give the Court your reasoning why they should not approve the Class Member Settlement. The Court will consider your views. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If the Court rejects your objection and finally approves the Class Member Settlement, you will be bound by the terms of the Class Member Settlement, but you will also receive a monetary award.

3039810

Class Members who wish to object to the Settlement must send to the Settlement Administrator a personally signed, written statement objecting to the Settlement postmarked on or before the Notice Response Deadline, or they may simply appear at the Final Approval Hearing set for _____ at \_\_\_\_\_ to discuss the objection with the Court and the parties at their own expense.  The Objection must contain (i) the name of this Action; (ii) the full name, address, telephone number, and last four digits of the Social Security Number of the person objecting as well as the full name, address, and telephone number of any attorney representing said person with respect to the objection if applicable; (iii) the words "Objection" at the top of the document; (iv) be personally signed by the Class Member seeking to object to the Settlement, and (v) a statement of the basis for their objections and whether or not the Class Member or their attorney intends to appear at the Final Approval Hearing to present oral argument. To be timely, a written objection must be mailed by first-class U.S. Mail to the Settlement Administrator at the address provided below and be postmarked on or before _____.

Class Members who fail to file and serve timely written objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the settlement, unless otherwise ordered by the Court.

Please note that you cannot both exclude yourself and object to the Settlement. In order for you to object to this Settlement, or any term of it, you may not submit a Request for Exclusion.

## 12.   How do I ask to be excluded from the Class?

If you are a member of the Class described above and would like to exclude yourself from the Class ("opt-out") you must submit to the Settlement Administrator, a written, signed request to be excluded from the Settlement ("Request for Exclusion"). The Request for Exclusion must contain (i) the name of this Action; (ii) the full name, address, telephone number, and last four digits of the Social Security Number of the person requesting to be excluded; (iii) the words "Request for Exclusion" at the top of the document; (iv) be personally signed by the Class Member seeking to be excluded, and (v) a statement indicating their desire to be excluded, such as: "I wish to be excluded from the Settlement of the Action, *Jose Valenzuela v. Everi Games Inc.,* Case No. 2:24-cv-00257-MRA-JPRx, currently pending in the United States District Court for the Central District of California."

This request must be returned to the Settlement Administrator at the address below, and it must be postmarked on or before _____, 2025. The date of the postmark on the return mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted. Any Class Member who opts out of the Class will not be entitled to any recovery under the Settlement and will not be bound by the Settlement or have any right to object, appeal, or comment thereon. Class Members who fail to submit a valid and timely request for exclusion on or before _____, 2025 shall be bound by all terms of the Settlement and any final disposition entered in this Class Action if the Settlement is approved by the Court.

THE LAWYERS REPRESENTING YOU

## 13.   Who is Class Counsel?

The Court has appointed the following lawyers as "Class Counsel" to represent all Class Members:

- 9 -

3039810

**Class Counsel**
Sang (James) Park, Esq.
PARK APC
8383 Wilshire Boulevard, Suite 800
Beverly Hills, CA 90211
Telephone: (310) 627-2964
james@park-lawyers.com

You will not be charged for these lawyers.

## 14.   How will the lawyers be paid?

All payments for Class Counsel's attorneys' fees and costs will be made from the Gross Settlement Amount. Class Counsel intends to request an award of attorneys fees' up to one-third (33 1/3%) of the Gross Settlement Fund (equal to $109,167), plus reimbursement of reasonable, actual out-of-pocket costs incurred in the litigation, not to exceed $20,000.00, to be paid from the Gross Settlement Fund to compensate Class Counsel for their work on this matter. The Court will decide the amount of fees and expenses to award at the Final Approval Hearing.

### THE SETTLEMENT, APPROVAL, AND PAYMENT PROCESS

## 15.   Who is handling the Settlement Administration process?

Any Request for Exclusion, written objection, address change request, and all other correspondence intended for the Settlement Administrator must be mailed to the Settlement Administrator at the following address:

Phoenix Settlement Administrators
P.O. Box 7208
Orange, CA, 92863

## 16.   When is the Final Fairness and Approval Hearing and do I have to attend?

The Final Fairness and Approval Hearing has been set for _____, 2025 in Courtroom 10B of United States District Court for the Central District of California, located at 350 W First Street, Los Angeles, CA 90012. You do not need to attend the hearing to be a part of the Settlement, although any Class Member is welcome to attend the hearing. However, if you wish to object to the Settlement, you or your attorney may appear at the hearing to object at your own expense and request to be heard.

The Final Fairness and Approval Hearing date may change without further notice to the Class. You are advised to check the settlement website www._____.com or the Court's records.

## 17.   When will I get money after the hearing?

Settlement Awards for Class Members will be mailed to Class Members within sixty (60) calendar days of the Court granting Final Approval of the settlement.

- 10 -

GETTING MORE INFORMATION

| 18.  Are more details available? |
| --- |

This notice summarizes the proposed Settlement. For the precise terms and conditions of the Settlement, please see the settlement agreement available at www._____.com, by contacting class counsel, Sang (James) Park of PARK APC, at (310) 627-2964, by accessing the Court docket in this case, or by visiting the office of the Clerk of the Court, located at 350 W First Street, Los Angeles, CA 90012.

You may contact the Settlement Administrator:

Phoenix Settlement Administrators
P.O. Box 7208
Orange, CA, 92863
(800) 523-5773
info@phoenixclassaction.com

You may contact Class Counsel:

Sang (James) Park, Esq.
PARK APC
8383 Wilshire Boulevard, Suite 800
Beverly Hills, CA 90211
Telephone: (310) 627-2964
james@park-lawyers.com

Counsel for Everi Games Inc. is:

Elizabeth A. Sperling, Esq.
GLASER WEIL FINK HOWARD
JORDAN & SHAPIRO LLP
600 W. Broadway, Suite 2850
San Diego, CA 92101
Telephone: (619) 765-4380
esperling@glaserweil.com

**PLEASE DO NOT CALL OR WRITE TO THE JUDGE OR TO THE COURT, OR TO ANY OF EVERI GAMES INC.'S MANAGERS OR SUPERVISORS WITH QUESTIONS**

3039810