SANG (JAMES) PARK, SBN 232956
*sang@park-lawyers.com*
PARK APC
8383 Wilshire Boulevard, Suite 800
Beverly Hills, California 90211
Telephone:   (310) 627-2964
Fax:              (310) 362-8279

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE VALENZUELA, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>   vs.<br><br>EVERI GAMES INC.; and DOES 1 to 10,<br><br>      Defendants. | Case No: 2:24-cv-00257-MRA (DMKx)<br><br>Hon. Mónica Ramírez Almadani<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD** |

# TABLE OF CONTENTS

I.    INTRODUCTION……………………………..………………….  1

II.   FACTS AND PROCEDURE………………………………………..  2

    A.    Overview of Case……………………………………......………  2

    B.    Plaintiff's Counsel thoroughly investigated the factual and legal
issues and were thus able to objectively assess the Settlement's
reasonableness……………………………….……….…………….  2

    C.    Parties settled after mediation……………………….………..  3

III.  ARGUMENT…………..……………………....………….............,,..,,,..  4

    A.    Plaintiff's Counsel is entitled to an award of Attorney's Fees
because the litigation resulted in a common fund………..……  4

    B.    Plaintiff's requested Attorney's Fees are reasonable under the
common-fund doctrine……………………………….……….....  6

    C.    California state and federal courts routinely award Attorney's
Fees in the amount of one-third of the common fund…….…..…  8

    D.    Other factors support awarding the negotiated Attorney's Fees..  9

        1.    The requested Attorney's Fees are supported by the results
achieved on behalf of the Settlement Class……………….  9

        2.    Counsel prosecuted this case on a contingency basis and
should be compensated for the risk of non-payment……..  10

        3.    The requested Attorney's Fees are supported by the
complexity of the litigation and the risk assumed by
Counsel……………………………………………………….  12

        4.    The response of Class Members supports the Settlement and
the negotiated Attorney's Fees……………………..………  13

---

5.  The requested Attorney's Fees are supported by Counsel's experience, reputation, and skill……………………..…….. 13

6.  Counsel devoted significant time and resources litigating this case and negotiating the relief for the Class………….. 13

E.  Lodestar cross-check confirms that the requested Attorney's Fees are fair and reasonable…………………………..……… 15

1.  Plaintiff Counsel's lodestar is reasonable and supports the requested award of Attorney's Fees…………..……….. 16

F.  The requested litigation expense recovery is reasonable and should receive Final Approval…………………………..…….. 17

G.  The requested Service Award is well-deserved, reasonable, and should receive Final Approval…………………………..…… 17

1.  Plaintiff spent substantial time and effort in litigation…… 18

2.  Courts have found higher Service Award amounts as reasonable..……………………………………….......... 19

IV.  CONCLUSION………………………………………………..…… 22

---

# TABLE OF AUTHORITIES

**STATE CASES**

*7-Eleven Owners for Fair Franchising v. Southland Corp.*
85 Cal. App. 4th 1135 (2000)................................................................... 13

*Cellphone Termination Fee Cases*
186 Cal. App. 4th 1380 (2010)......................................................... 17

*Chavez v. Netflix, Inc.*
162 Cal. App. 4th 43 (2008)……………………………….…… 4, 8

*City and County of San Francisco v. Sweet*
12 Cal. 4th 105 (1995)……………………………………….…… 5

*Clark v. American Residential Services LLC*
175 Cal. App. 4th 785 (2009)……………………………………… 18

*Graham v. DaimlerChrysler Corp.*
34 Cal. 4th 553 (2004)………………………………………….. 11

*Horsford v. Board of Trustees of Calif. State Univ.*
132 Cal. App. 4th 359 (2005)……………………………….…… 11

*In re Consumer Privacy Cases*
175 Cal. App. 4th 556………………………………………….…… 15

*Ketchum v. Moses*
24 Cal. 4th 1122 (2001)…………………………………………… 11, 15-16

*Laffitte v. Robert Half Internat. Inc.*
1 Cal.5th 480 (S. Ct., August 11, 2016)……………………………… 1, 4, 5, 7, 14, 16

*Lealao v. Beneficial Cal. Inc.*
82 Cal. App. 4th 19 (2000)…………………………………………… 5, 7, 8, 15

*Northwest Energetic Services, LLC v. Cal. Franchise Tax Bd.*
159 Cal. App. 4th 841 (2008)……………………………………… 13

*PLCM Group v. Drexler*
  22 Cal. 4th 1084 (2000)…………………………………………… 16

*Serrano v. Priest*
  20 Cal. 3d 25 (1977)……………………………………………. 5, 6

**FEDERAL CASES**

*Boeing Co. v. Van Gemert*
  444 U.S. 472 (1980)…………………………………………..…… 5-6

*Fernandez v. Victoria Secret Stores LLC*
  2008 U.S. Dist. LEXIS 123546 (C.D. Cal. July 21, 2008)……..… 8

*Guippone v. BH S&B Holdings LLC*
  2011 U.S. Dist. LEXIS 126026 (S.D.N.Y. Oct. 28, 2011)............... 19

*In re Activision Sec. Litig.*
  723 F. Supp. 1373 (N.D. Cal. 1989)…………………….…… 6

*In re Bluetooth Headset Products Liab. Litig.*
  654 F.3d 935 (9th Cir. 2011)…………………………..……… 6, 7

*In re Cont'l Ill. Sec. Litig.*
  962 F.2d 566 (7th Cir. 1992)…………………………..……… 8, 9

*In re Mego Fin. Corp. Sec. Litig.*
  213 F.3d 454 (9th Cir. 2000)............................................................ 18

*In re Rite Aid Corp. Secs. Litig.*
  396 F.3d 294 (3d Cir. 2005)…………………………………… 16

*In re Washington Pub. Power Supply Sys. Sec. Litig.*
  19 F.3d 1291 (9th Cir. 1994)…………………………………… 5

*Laguna v. Coverall No. Am.*
  753 F.3d 918 (9th Cir. 2014)…………………………………… 9

*Mangold v. Calif. Public Utilities Comm'n,*
  67 F.3d 1470 (9th Cir. 1995)…………………………………… 1, 4

*Sutton v. Bernard*
    504 F.3d 688 (7th Cir. 2007)…………………………………………….    7

*Swedish Hosp. Corp. v. Shalala*
    1 F.3d 1261 (D.C. Cir. 1993)…………………………………………    7

*Vizcaino v. Microsoft Corp.*
    290 F.3d 1043 (9th Cir. 2002)………………………………………    1, 4, 7

**OTHER**

Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002)...............    17

Herr, David F., *Manual for Complex Litigation*, § 14.121 (1988)…...    15-16

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, J. of Empirical Legal Studies, Vol. 1 (March 2004).........................................................................    8, 17

## I.   INTRODUCTION

Together with final approval of class action settlement, Plaintiff Jose Valenzuela moves for attorney's fees in the amount of $109,167 and litigation costs and expenses of $20,000. Plaintiff also moves for Class Representative Service Award of $10,000 for his service on behalf of the Settlement Class.

Plaintiff's attorney fee request is consistent with the Joint Stipulation of Class Action Settlement and Release,[1] and firmly based in law and fact.

Legally the requested attorney's fees are reasonable because they are consistent with the prevailing California practice of awarding attorney's fees in the amount of one-third of the common fund. See, e.g., *Laffitte v. Robert Half Internat. Inc.*, 1 Cal. 5th 480, 503-504 (2016) (trial court's use of a percentage of 33 1/3 percent of the common fund is consistent with awards in other class action lawsuits); *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (the state law governing the underlying claims in a diversity action also governs the award of fees).

And factually the requested attorney's fees are appropriate because Plaintiff and Plaintiff's counsel did an outstanding job for the class:

- No Class Member submitted an exclusion request (opt-out)
- No Class Member submitted an objection to the Settlement
- 100% Settlement participation rate
- 100% of the Net Settlement Fund claimed by Class Members
- Average gross payment is $4,651.62, highest is $12,774.14

---

[1]   "Settlement" or "Settlement Agreement." All capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

MEMORANDUM OF P&A ISO MOTION FOR ATTORNEY'S FEES, COSTS AND CLASS REP SERVICE AWARD

## II.   FACTS AND PROCEDURE

### A.   Overview of Case

On September 13, 2023 Plaintiff brought the instant wage and hour Class action primarily challenging two of Defendant's company-wide practices that stem from their alleged unlawful uniform policies: failure to pay overtime; failure to provide duty-free uninterrupted Labor Code-compliant rest breaks, failure to provide duty-free uninterrupted Labor Code-compliant meal periods, and failure to provide reporting time pay for on-call work.

All remaining claims—i.e., unpaid minimum wage, wages not paid upon termination, non-compliant wage statements, PAGA penalties and Cal. B&P 17200 (Unfair Business Practices)—are derived from Defendant's alleged unlawful meal, rest, overtime and reporting time policy and practices. *See* Declaration of Sang (James) Park [Park Decl] ¶¶ 3-4. Defendant denies and disputes that it violated any laws or that it engaged in the challenged employment practices. In the interest of resolution, and without admitting liability or conceding Plaintiff's allegations, Defendant made the commercial decision to settle.

### B.   Plaintiff's Counsel thoroughly investigated the factual and legal issues and objectively assessed the Settlement's reasonableness

Plaintiff's Counsel thoroughly investigated and researched Class claims and their theories of liability, their defenses, and the developing body of law before the Settlement. The comprehensive investigation included the exchange of informal and formal discovery and statistical information with Defendant; multiple fact-finding sessions with Plaintiff; and several conferences with Defense counsel. (Park Decl. ¶ 5)

Plaintiff received, among others, the following information, data and documents relevant to Class-wide liability ("Class Data") in support of his investigation and evaluation of Class claims: (1) employee time and payroll

records; (2) total number of former and current employees in the Class Period; (3) total number of workweeks; (4) total number of shifts and pay periods; (5) average rate of pay; (6) employee handbooks, procedure manuals, and operations manuals addressing Defendant's wage and hour practices, e.g., (i) timekeeping and payroll policies, (ii) meal and rest periods, (iii) wage statements; and (8) employee schedules. (Park Decl. ¶ 6)

Plaintiff's Counsel then applied the Class Data to Class members to determine, among others, alleged overtime violations; missing, late or short meal periods; and the number of rest breaks owed. (Park Decl. ¶ 7)

Needless to say Plaintiff's Counsel made an informed decision about the strengths and weaknesses of Plaintiff's theories of liability, Defendant's affirmative defenses, Class-wide damages, and benefits of Settlement based on the receipt, analysis, and application of the Class Data. (Park Decl. ¶ 8)

Further, and continuing their due diligence, Plaintiff's Counsel (1) determined Plaintiff's suitability as a Class representative, through interviews, background investigations, and analyses of his employment files and related records; (2) researched wage-and-hour class actions involving similar claims; (3) engaged in the discovery process; (4) obtained and analyzed Defendant's wage-and-hour policies and procedures; (5) obtained and analyzed time and corresponding payroll records to determine violation rates and penalty payments; (6) researched the latest case law bearing on the theories of liability; (7) researched settlements in similar cases; (8) analyzed the value of Plaintiff's claims; (9) drafted a mediation brief; (10) negotiated the terms of the Settlement; (11) finalized the Settlement and Release; (12) finalized the Notice of Class Action Settlement; and (13) drafted preliminary approval papers. (Park Decl. ¶ 9)

### C.     Parties settled after mediation

The Parties agreed to private mediation to attempt to resolve the Class

claims. On December 16, 2024 the Parties attended an all-day mediation with Paul Grossman, Esq.—a well-regarded mediator with experience in resolving wage and hour class actions. The Parties reached the Class Settlement at the mediation. At all times the Parties' negotiations were adversarial and non-collusive. (Park Decl. ¶ 10)

## III.    ARGUMENT

### A.    Plaintiff's Counsel is entitled to an award of Attorney's Fees because the litigation resulted in a common fund

In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees. *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees"). The state law governing the underlying claims in a diversity action "also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Here California law governs because Plaintiff brought his claims under the California Labor Code and California Business & Professions Code § 17200.

And the California Supreme Court has ruled that where, as here, "class action litigation establishes a monetary fund for the benefit of the class members, and the trial court in its equitable powers awards class counsel a fee out of that fund, the court may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created." *Laffitte v. Robert Half Internat. Inc.*, 1 Cal.5th 480 (2016). Although California has no benchmark like the Ninth Circuit, California courts routinely award attorneys' fees equaling one-third of the common fund's total potential value. See, e.g., *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) ([S]tudies show that…fee awards in class actions average around one-third of the recovery.)

Plaintiff's counsel is entitled to an award of attorney's fees under the

common fund doctrine applicable under both California and federal law. The California common fund doctrine is applicable where, as here, attorneys have been instrumental in creating a settlement fund that benefits all class members. See *Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977) (noting that federal and state courts have long recognized that when attorneys create a common fund that benefits a class, there is an equitable right that the attorneys be compensated from that fund).

"Because the common fund doctrine 'rest[s] squarely on the principle of avoiding unjust enrichment . . . attorney fees awarded under this doctrine are not assessed directly against the losing party (fee shifting), but come out of the fund established by the litigation, so that the beneficiaries of the litigation . . . bear this cost (fee spreading)." *Lealao v. Beneficial Cal. Inc.*, 82 Cal. App. 4th 19, 27 (2000). The key advantage of the common-fund method is that it focuses on the total benefit conferred on the class resulting from the efforts of counsel. *Id*. at 48. The common fund doctrine has been applied "consistently in California when an action brought by one party creates a fund in which other persons are entitled to share." *City and County of San Francisco v. Sweet*, 12 Cal. 4th 105, 110 (1995).

Like California, federal courts also recognize that counsel have an equitable right to be compensated from the fund created through counsel's efforts. See *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (the United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund is entitled to a reasonable attorney's fee from the fund as a whole."). The purpose of this doctrine is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("WPPSS"). Because none of the Class Members have paid fees to Plaintiff's counsel for their efforts during the litigation, equity requires them to pay a fair and reasonable fee, based on what the market would

traditionally require, no less than if they had hired private counsel to litigate their cases individually. *Boeing*, 444 U.S. at 478-82.

So Plaintiff's counsel is entitled to fees from the settlement fund as a whole.

**B.  Plaintiff's requested Attorney's Fees are reasonable under the common-fund doctrine**

Plaintiff moves for an award of attorney's fees in the amount of $109,167, or one-third of the gross settlement fund. This request for attorney's fees is supported by California law under the common fund doctrine. The common fund doctrine is applicable where, as here, attorneys have been instrumental in creating a settlement fund that benefits all class members. *See Laffitte*, 1 Cal.5th at 503-504 (affirming the use of the common fund method for determining attorneys' fees in class actions that result in monetary benefits in an employment class action); *Serrano v. Priest*, 20 Cal. 3d 25, 35 (1977) (noting that federal and state courts have long recognized that when attorneys create a common fund that benefits a class, there is an equitable right that the attorneys be compensated from that fund).

The Ninth Circuit also employs the percentage method for common fund cases. *See In re Bluetooth Headset Products Liab. Litig.,* 654 F.3d 935, 942 (9th Cir. 2011). Courts in this Circuit recognize that the percentage method offers important advantages over the lodestar method, particularly when an ascertainable fund exists:

> [I]n class action common fund cases the better practice is to set a percentage fee and that, absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%. This will encourage plaintiffs' attorneys to move for early settlement, provide predictability for the attorneys and the class members, and reduce the time consumed by counsel and court in dealing with voluminous fee petitions.

*In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989). Indeed, in *Bluetooth*, the court recognized that one important advantage of the

common fund method is that fees are "easily quantified," making a fee determination simpler than the "often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942; *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) ("[A] percentage-of-the-fund approach is less demanding of judicial resources than the lodestar method.").

Moreover the percentage method better "approximates the workings of the marketplace than the lodestar approach" in setting the price of contingent fees. *Lealao*, 82 Cal. App. 4th at 48 (quoting *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995)). This is because the percentage method "provide[s] incentives roughly comparable to those negotiated in the private bargaining that takes place in the legal marketplace." *Id*. In this way, applying the percentage method advances the judicial policy of "award[ing] counsel the market price for legal services." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007). In light of these benefits and the creation of a common fund, this Court should apply the percentage-of-the-fund approach in determining attorneys' fees.

The percentage method also encourages counsel to spend time more efficiently and to focus on maximizing the size of the recovery, rather than their own lodestar hours. *Swedish Hosp.*, 1 F.3d at 1269. Although in many cases early settlement may benefit class members by bringing them timely and much-needed relief, the lodestar method "creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The percentage method is thus generally preferred, particularly when an ascertainable fund has been created.

## C.      California state and federal courts routinely award Attorney's Fees in the amount of one-third of the common fund

In applying the common fund doctrine, California state and federal courts routinely award attorneys' fees equaling one-third of the common fund's total potential value. *See*, *e.g.*, *Laffitte*, 1 Cal.5th at 503-504 (fee awards in class actions average around one-third of the recovery); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) (accord); Eisenberg & Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27-78, March 2004, at 35 (independent studies of class action litigation nationwide conclude that a one-third fee is consistent with market rates).

One-third of the common fund is also reasonable because it best reflects the market rate for contingency fees. *See Lealao,* 82 Cal. App. 4th  at 47 ("attorneys providing the essential enforcement services must be provided incentives roughly comparable to those negotiated in the private bargaining that takes place in the legal marketplace"). The negotiated fees reflect the market rate for fees in two ways. First fees representing one-third of the recovery reflect the rate negotiated in "typical contingency fee agreements [which] provide that class counsel will recover 33% if the case is resolved before trial and 40% if the case is tried." *Fernandez v. Victoria Secret Stores LLC*, 2008 U.S. Dist. LEXIS 123546, *55-57 (C.D. Cal. July 21, 2008) (citing an academic study collecting contingency fee agreements and finding that a fee award constituting 34% of the fund is reasonable on that basis). Because the negotiated fee structure mimics the marketplace, it is reasonable and should be approved.

Second courts have recognized that the negotiated fee is the best indication of the market price for fees. In a common fund case, the object "is to give the lawyer what he would have gotten in the way of a fee in an arm's-length negotiation, had one been feasible." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568

(7th Cir. 1992). In *In re Cont'll Ill. Sec. Litig.*, Judge Posner reasoned that the negotiated fee reflects a market-based price because it encompasses both parties' best estimate and view as to the value of the legal services and what the court might have awarded if the matter had been litigated. *Id*. For this reason, courts generally defer to the parties regarding the reasonableness of the negotiated attorneys' fees. Indeed, because "the parties are compromising to avoid litigation," the court "need not inquire into the reasonableness of the fees at even the high end with precisely the same level of scrutiny as when the fee amount is litigated." *Laguna v. Coverall No. Am.*, 753 F.3d 918, 922 (9th Cir. 2014) (internal quotations omitted; emphasis added). Stated differently, while the Court must conduct an independent inquiry into the reasonableness of fee request, it should give substantial weight to the Parties' agreement on fees, which is the product of negotiations in the legal marketplace.

For the foregoing reasons, the amount of negotiated fee here is reasonable.

### D.    Other factors support awarding the negotiated Attorney's Fees

#### 1.    The requested Attorney's Fees are supported by the results achieved on behalf of the Settlement Class

As a result of Plaintiff Counsel's efforts, Class members stand to receive average gross payments of $4,651.62, with the estimated highest gross payment being $12,774.14. (Declaration of Kevin Lee ["Lee Decl."] ¶ 12)

The Settlement represents a substantial recovery for wage-and-hour claims, particularly for a case such as this. *See*, *e.g.*, *Richard Barajas et al v. MarLu Investment Group et al*, Case No. BC630452 (average net recovery of approximately $200); *Nunez v. BAE Systems San Diego Ship Repair Inc.*, Case No. 3:16-cv-02162 (USDC Southern District) (average net recovery of approximately $1,000); *Walsh v. CorePower Yoga LLC*, Case No. 16-cv-05610 (USDC Northern District) (average net recovery of approximately $250); *Badami*

MEMORANDUM OF P&A ISO MOTION FOR ATTORNEY'S FEES, COSTS AND CLASS REP SERVICE AWARD

*v. Grassroots Campaigns, Inc.*, Case No. C 07-03465 JSW (N.D. Cal. Sept. 15, 2008) (average net recovery of approximately $195); *Sandoval v. Nissho of Cal., Inc.*, Case No. 37-2009-00091861 (San Diego County Super. Ct. Dec. 3, 2010) (average net recovery of approximately $145); *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct. Sept. 29, 2006) (average net recovery of approximately $120); *Contreras v. United Food Group, LLC.*, Case No. BC389253 (L.A. County Super. Ct. Sept. 10, 2009) (average net recovery of approximately $120); *Bercea v. AE Retail West*, Case No. 34-2012-00123947 (Sacramento County Super. Ct.) (average net recovery of approximately $105); *Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct. Jan. 27, 2009) (average net recovery of approximately $90); *Palencia v. 99 Cents Only Stores*, Case No. 34-2010-00079619 (Sacramento County Super. Ct.) (average net recovery of approximately $80); *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal. Dec. 17, 2008) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super. Ct. Jan. 20, 2006) (average net recovery of approximately $35); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (average net recovery of approximately $20).

Accordingly the cumulative benefits achieved by the Settlement favor approval of the requested fees.

### 2. Counsel prosecuted this case on a contingency basis and should be compensated for the risk of non-payment

Providing attorneys who represent clients under contingent-fee agreements a larger fee than the market-value of their services helps to assure adequate representation for plaintiffs unable to afford accomplished attorney hourly rates.

*Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 580 (2004) ("[A] lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions."). In *Ketchum v. Moses*, 24 Cal. 4th 1122 (2001), the California Supreme Court instructed courts to adjust fee compensation to ensure that the fees account for contingency risk:

> A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.

*Ketchum*, 24 Cal. 4th at 1132-33.

A fee award that adjust for contingency fee risk "constitutes earned compensation; unlike a windfall, it is neither unexpected or fortuitous." *Id*. at 1138. The contingent risk factor is the single most important enhancement factor under California law even for actions where statutory fees are available. *See Horsford v. Board of Trustees of Calif. State Univ*., 132 Cal. App. 4th 359,  399 (2005) (reversing a trial court order for failure to consider contingent risk for statutory fees pursuant to the Fair Employment and Housing Act). The main criterion for risk is the risk of *complete loss*, which would leave counsel unable to recover fees. *See Graham*, 34 Cal. 4th at 583 (explaining that a multiplier corresponds to risk of loss, with the risk of not being the successful party ranking highest). This risk is particularly acute for contingency fee attorneys because they "must use savings or incur debt to keep their offices afloat and their families fed during the years-long litigation." *Horsford*, 132 Cal. App. 4th at 400.

Here Plaintiff's Counsel bore the entire risk of recovery. Plaintiff's Counsel took on this case on a contingency basis, with no guarantee of any payment. As set forth above and in the concurrently filed Motion for Final Approval of Class

Action Settlement, Plaintiff's Counsel thoroughly investigated the claims at issue. Had the litigation continued, Defendant would undoubtedly have mounted an aggressive defense at the class certification and merits stage. A defeat would have foreclosed the possibility of Plaintiff's Counsel recovering any remuneration for their time and effort. Yet, in spite of these considerable challenges that enhanced the already-high contingency risk, Plaintiff's Counsel was able to obtain $327,500 for the Class. Fees in the amount totaling one-third of the gross settlement fund is thus fair and reasonable.

### 3. The requested Attorney's Fees are supported by the complexity of the litigation and risk assumed by Counsel

Plaintiff was optimistic about prevailing at trial. Nevertheless Plaintiff recognizes that if the litigation had continued, he may have encountered significant legal and factual hurdles that could have prevented the Class from obtaining any recovery.

This reality added to the risk of continued litigation and militated in favor of settlement. Indeed it is usually preferable to reach an early resolution of a dispute because, in addition to what has already been said, such resolutions save time and money that would otherwise go to litigation. For example, if this action had settled following additional litigation, the settlement amount would likely have taken into account the additional costs incurred, and there may have been less available for Class Members. And, if the putative Class had not been certified, the value of Plaintiff's case would have been considerably reduced, indeed, Defendant would have likely offered *no* money to settle the class-wide claims. And even if Plaintiff prevailed at class certification, they would have faced arguably compelling defenses to the merits of their claims.

In summary, this case presented a significant risk of nonpayment for attorney's fees and costs. In the face of such risk, Plaintiff's Counsel developed a

strong case on behalf of the Class that ultimately resulted in the proposed Settlement. This result was far from certain and the financial risk that Plaintiff's Counsel assumed should be recognized.

### 4. The response of Class Members supports the Settlement and the negotiated Attorney's Fees

Class Members' response demonstrates support for this settlement—*no* Class Members opted out and *no* Class Members objected to the Settlement. And 100% of the Net Settlement Fund was claimed by all Class Members.

Such a positive response rate from Class Members supports final approval and an award of the requested attorney's fees and costs. *See 7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1152-53 (2000) (class response favorable where "[a] mere 80 of the 5,454 national class members elected to opt out  [(1.5% of the entire Class)] and . . . [a] total of nine members . . . objected to the settlement").

### 5. The requested Attorney's Fees are supported by Counsel's experience, reputation, and skill

The "skill and experience of the attorneys and nature of work performed" are also evaluated under California law in connection with a fee motion. *Northwest Energetic Services, LLC v. Cal. Franchise Tax Bd.*, 159 Cal. App. 4th 841, 880 (2008). Plaintiff is represented by experienced class action counsel who regularly litigate wage and hour class actions through certification and on the merits. (Park Decl. ¶¶ 32-42)

### 6. Counsel devoted significant time and resources litigating this case and negotiating the relief for the Class

Plaintiff's Counsel thoroughly investigated and researched Class claims and their theories of liability, their defenses, and the developing body of law before the Settlement. The comprehensive investigation included the exchange of informal

and formal discovery and statistical information with Defendant; multiple fact-finding sessions with Plaintiff; and, several conferences with Defense counsel. (Park Decl. ¶ 5)

Plaintiff received, among others, the following information, data and documents relevant to Class-wide liability ("Class Data") in support of his investigation and evaluation of Class claims: (1) employee time and payroll records; (2) total number of former and current employees in the Class Period; (3) total number of workweeks; (4) total number of shifts and pay periods; (5) average rate of pay; (6) employee handbooks, procedure manuals, and operations manuals addressing Defendant's wage and hour practices, e.g., (i) timekeeping and payroll policies, (ii) meal and rest periods, (iii) wage statements; and (8) employee schedules. (Park Decl. ¶ 6)

Plaintiff's Counsel then applied the Class Data to Class members to determine, among others, alleged overtime violations; missing, late or short meal periods; and the number of rest breaks owed. (Park Decl. ¶ 7)

Needless to say Plaintiff's Counsel made an informed decision about the strengths and weaknesses of Plaintiff's theories of liability, Defendant's affirmative defenses, Class-wide damages, and benefits of Settlement based on the receipt, analysis, and application of the Class Data. (Park Decl. ¶ 8)

Further, and continuing their due diligence, Plaintiff's Counsel (1) determined Plaintiff's suitability as a Class representative, through interviews, background investigations, and analyses of his employment files and related records; (2) researched wage-and-hour class actions involving similar claims; (3) engaged in the discovery process; (4) obtained and analyzed Defendant's wage-and-hour policies and procedures; (5) obtained and analyzed time and corresponding payroll records to determine violation rates and penalty payments; (6) researched the latest case law bearing on the theories of liability; (7)

MEMORANDUM OF P&A ISO MOTION FOR ATTORNEY'S FEES, COSTS AND CLASS REP SERVICE AWARD

researched settlements in similar cases; (8) analyzed the value of Plaintiff's claims; (9) drafted a mediation brief; (10) negotiated the terms of the Settlement; (11) finalized the Settlement and Release; (12) finalized the Notice of Class Action Settlement; and (13) drafted preliminary approval papers. (Park Decl. ¶ 9)

**E.    Lodestar cross-check confirms that the requested Attorney's Fees are fair and reasonable**

Despite the widely recognized limitations of the so-called lodestar method,[2] California and federal courts acknowledge the utility of a lodestar "cross-check" for common fund awards. *Lealao*, 82 Cal. App. 4th at 46-47.

The California Supreme Court in *Laffitte v. Robert Half Internat. Inc.*, 1 Cal.5th 480 (2016) has also ruled that "trial courts have discretion to conduct a lodestar cross-check on a percentage fee," but cautions that "the lodestar calculation, when used in this manner, does not override the trial court's primary determination of the fee as a percentage of the common fund and thus does not impose an absolute maximum or minimum on the potential fee award."

California's lodestar/multiplier method is a two-step process of fee calculation under which the Court first determines a lodestar value for the fees by multiplying the time reasonably spent by plaintiffs' counsel on the case by a reasonable hourly rate. *In re Consumer Privacy Cases*, 175 Cal. App. 4th at 556-557. The Court may then enhance or reduce the lodestar by applying a multiplier to take into account the contingent nature and risk associated with the action, as well as other factors such as the degree of skill required and the ultimate success achieved. *See Ketchum*, 24 Cal. 4th at 1132 (also explaining that the "purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the

---

[2]    In practice, the lodestar method is difficult to apply, time-consuming to administer, inconsistent in result, and capable of manipulation. In addition the lodestar creates inherent incentive to prolong the litigation until sufficient hours have been expended. Herr, David F., *Manual for Complex Litigation*, § 14.121 (1988).

MEMORANDUM OF P&A ISO MOTION FOR ATTORNEY'S FEES, COSTS AND CLASS REP SERVICE AWARD

financial incentives for attorneys enforcing important… rights"). Where the use of the lodestar method is used as a cross-check, it can be performed with a less exhaustive cataloguing and review of counsel's hours. *See In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting.").[3]

### 1. Plaintiff Counsel's lodestar is reasonable and supports the requested award of Attorney's Fees

The starting point in determining the appropriate hourly fee is to discern the prevailing rate for similar work in the pertinent geographic region. *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1096-97 (2000) (using prevailing hourly rate in community for comparable legal services even though party used in-house counsel); *see also* Herr, *Manual for Complex Litigation*, § 14.122 (1984) ("reasonable fees . . . are to be calculated according to the prevailing market rates in the relevant community.")

Plaintiff Counsel's hourly rates are comparable to, or less than, those charged by other class action plaintiffs' counsel and the firms defending class actions. (Park Decl. ¶¶ 47-49) Likewise, the total attorney hours expended on this action are reasonable and in line with comparable cases. Plaintiff's Counsel billed a total of 464.4 hours to date. (Park Decl. ¶ 44) Multiplying the total hours billed by Plaintiff's Counsel to the litigation by their reasonable hourly rates yields a combined approximate lodestar of $348,300 (Park Decl. ¶¶ 44-46)

And although Plaintiff's counsel is entitled to a risk multiplier on the lodestar cross-check—see *Ketchum*, 24 Cal. 4th at 1133-34 (holding that a risk

---

[3]    California courts have consistently held that a fee applicant may submit declarations attesting to hourly rates and hours worked to satisfy the burden of proof, and that no billing records are needed. *See Laffitte v. Robert Half Internat. Inc.*, 231 Cal. App. 4th 860, 879 (2014) (rejecting objector's demand for billing records after surveying case law and holding that an attorney declaration alone may demonstrate the lodestar figure).

MEMORANDUM OF P&A ISO MOTION FOR ATTORNEY'S FEES, COSTS AND CLASS REP SERVICE AWARD

multiplier must be applied to compensate contingency fee attorneys at a fair market rate)—it is not needed here because Plaintiff counsel's lodestar well exceeds his request for one-third of the common fund in attorney's fees.

The lodestar cross-check therefore confirms that the amount of negotiated attorney's fees is reasonable and should be approved.

## F.     The requested litigation expense recovery is reasonable and should receive Final Approval

Plaintiff's Counsel are also entitled to reimbursement of their litigation costs. Cal. Lab. Code §§ 1194(a), 2699(g)(1). Plaintiff's Counsel incurred and advanced a combined total of $20,244.48 in reasonably incurred costs for, among other things, filing fees, postage, research, photocopying, and mediation fees. (*See* Park Decl. ¶ 51) These are costs of precisely the sort that are reimbursable because they are reasonable and were necessarily incurred during the case's pendency. Final approval of the cost reimbursement is thus warranted.

## G.     The requested Service Award is well-deserved, reasonable, and should receive Final Approval

California courts have recognized that enhancement awards serve two important functions. One it <u>compensates</u> plaintiff for time spent in litigation. And two, it <u>rewards</u> employees for effecting change in employer behavior—for the betterment of all current and future employees—through class actions.

Enhancement awards "are fairly typical in class action cases." [*Cellphone Termination Fee Cases* (2010) 186 Cal. App. 4th 1380, 1393 (affirming incentive awards of $10,000); citing 4 Newberg on Class Actions (4th ed. 2002) § 11:38, and Eisenberg & Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303 (2006).] "[T]he rationale for making enhancement or incentive awards to named plaintiffs is that they should be compensated for the expense or risk they have incurred in conferring a benefit on other members of the

class." (*Clark v. American Residential Services LLC* (2009) 175 Cal. App. 4th 785) Importantly these payments work both as an inducement to participate in the suit and as compensation for time spent in litigation activities. [See *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (describe the service award as an *incentive* to the class representatives)]

The reward element recognizes both the risks of litigation and quality of benefit conferred on the Class. It logically follows that the greater the risk and benefit conferred, the higher the service award.

Here Plaintiff's request of $10,000 Service Award for Jose Valenzuela is justified because 1) it compensates for his time spent in litigation; and 2) it awards him for bearing the risks of litigation to effect real positive change in Defendant's wage and hour policies.

### 1.    Plaintiff spent substantial time and effort in litigation

Plaintiff assisted counsel with the investigation of the claims and filing of the Complaint by, among others, providing documents relevant to Defendant's time and pay policies and procedures. Plaintiffs worked with Class Counsel throughout the case, in preparing for mediation, and assisted in settlement negotiations.

Notably Plaintiff attended a full-day mediation session, and he was instrumental in providing insight into the Class claims and their defenses during the mediation. Class Counsel believes other Class Members would have not taken any action individually if it were not for the named Plaintiff stepping forward to assert the claims in this litigation. Therefore Class Members would not have recovered at all, but for Plaintiff's actions on their behalf.

Further Plaintiff risked his reputation in recovering money for Class Members and effecting change on their behalf. Long after this action is forgotten by Class Members, Plaintiff will have to endure the risk of being branded

MEMORANDUM OF P&A ISO MOTION FOR ATTORNEY'S FEES, COSTS AND CLASS REP SERVICE AWARD

"litigious" by prospective employers and may have employment applications rejected on that basis alone.

Courts recognize that employees face these challenges when bringing class action suits. Current employees risk retaliation as a result of bringing suit. [See *Guippone v. BH S&B Holdings LLC*, No. 09 Civ. 1029, 2011 U.S. Dist. LEXIS 126026, at *20 (S.D.N.Y. Oct. 28, 2011) ("Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members")] Both current and former employees place their future employment prospects in peril by becoming class representatives, as "the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person." (*Id.* at *4)

Plaintiff has assumed considerable reputational risk that may impact his ability to find employment in the near and distant future. Accordingly Plaintiff's actions merit a $10,000 service award.

### 2. Courts have found higher Service Award amounts as reasonable

Further both California and Federal Courts have deemed Plaintiff's requested service awards to be reasonable for wage and hour class action settlements. (See *Zamora v. Balboa Life & Casualty, LLC*, Case No. BC360036, Los Angeles County Superior Court (Mar. 7, 2013)(awarding $25,000 service award); *Aguilar v. Cingular Wireless, LLC*, Case No. CV 06-8197 DDP (AJWx)(C.D. Cal. Mar. 17, 2011)(awarding $14,767 service award); *Magee v. American Residential Services, LLC*, Case No. BC423798, Los Angeles County Superior Court (Apr. 21, 2011)(awarding $15,000 service award); *Mares v. BFS Retail & Commercial Operations, LLC*, Case No. BC375967, Los Angeles County Superior Court (June 24, 2010)(awarding $15,000 service award); *Baker v. L.A.*

MEMORANDUM OF P&A ISO MOTION FOR ATTORNEY'S FEES, COSTS AND CLASS REP SERVICE AWARD

*Fitness Int'l, LLC*, Case No. BC438654, L.A. County Superior Court (Dec. 12, 2012)(awarding $10,000 service awards to three named plaintiffs); *Blue v. Coldwell banker Residential Brokerage Co.*, Case No. BC417335, Los Angeles County Superior Court (Mar. 21, 2011)(awarding $10,000 service award); *Buckmire v. Jo-Ann Stores, Inc.*, Case No. BC394795, Los Angeles County Superior Court (June, 11, 2010)(awarding $10,000 service awards); *Coleman v. Estes Express Lines, Inc.*, Case No. BC429042, Los Angeles County Superior Court (Oct. 3, 2013)(awarding $10,000 service award); *Ethridge v. Universal Health Services, Inc.*, Case No. BC391958, Los Angeles County Superior Court (May 27, 2011)(awarding $10,000 service award); *Hickson v. South Coast Auto Ins. Marketing, Inc.*, Case No. BC390395, Los Angeles County Superior Court (Mar. 27, 2012)(awarding $10,000 service award); *Hill v. Sunglass Hut Int'l, Inc.*, Case No. BC422934, Los Angeles County Superior Court (July 2, 2012)(awarding $10,000 service award); *Kabamba v. Victoria's Secret Stores, LLC*, Case No. BC368528, Los Angeles County Superior Court, (Aug. 19, 2011)(awarding $25,000 service award); *Nevarez v. Trader Joe's Co.*, Case No. BC373910, Los Angeles County Superior Court (Jan. 29, 2010)(awarding $10,000 service award); *Ordaz v. Rose Hills Mortuary, L.P.*, Case No. BC386500, Los Angeles County Superior Court, (Mar. 19, 2010)(awarding $10,000 service award); *Sheldon v. AHMC Monterey Park Hosp. LP*, Case No. BC440282, Los Angeles County Superior Court (Feb. 22, 2013)(awarding $10,000 service award); *Silva v. Catholic Mortuary Services, Inc.*, Case No. BC408054, Los Angeles County Superior Court (Feb. 8, 2011)(awarding $10,000 enhancement award); *Weisbarth v. Banc West Investment Services, Inc.*, Case No. BC422202, Los Angeles County Superior Court (May 24, 2013)(awarding $10,000 service award); *Lazar v, Kaiser Foundation Health Plan*, Case No. 14-cv-273289, Santa Clara County Superior Court (Dec. 28, 2015) (awarding $10,000 service award); *Acheson v. Express,*

MEMORANDUM OF P&A ISO MOTION FOR ATTORNEY'S FEES, COSTS AND CLASS REP SERVICE AWARD

*LLC*, Case No. 109CV135335, Santa Clara County Superior Court (Sept. 13, 2011)(awarding $10,000 service award); *Bejarano v. Amerisave Mortgage Corp.*, Case No. EDCV08-00599 SGL (Opx)(C.D. Cal. June 22, 2010)(awarding $10,000 service award); *Carbajal v. Sally Beauty Supply LLC*, Case No. CIVVS 1004307, San Bernardino County Superior Court (Aug. 6, 2012)(awarding $10,000 service award); *Contreras v. Serco Inc.*, Case No. 10-cv-04526-CAS-JEMx (C.D. Cal. Sep. 10, 2012)(awarding $10,000 service award); *Guerro v. R.R. Donnelley & Sons Co.*, Case No. RIC 10005196, Riverside County Superior Court (July 16, 2013)(awarding $10,000 service award); *Kisliuk v. ADT Security Services Inc.*, Case No. CV08-03241 DSF (RZx)(C.D. Cal. Jan. 10, 2011)(awarding $10,000 service award); *Morales v. BCBG Maxazria Int'l Holdings, Inc.*, Case No. JCCP 4582, Orange County Superior Court (Jan. 24, 2013)(awarding $10,000 service award); *Barrett v. Doyon Security Services, LLC*, Case No. BS900199, San Bernardino County Superior Court (Apr. 23, 2010)(awarding $10,000 service award); *Zirpolo v. UAG Stevens Creek II,* Santa Clara Superior Court Case No. 17CV313457 (July 10, 2018) (awarding $10,000 service award); *Taylor v. TIC - The Industrial Company*, U.S.D.C. Central District of California Case No. EDCV 16-186-VAP (Aug. 1, 2018) (awarding $10,000 service award); *Matias Puglisi v. Storm Water Inspection and Maintenance Services, Inc.*, Orange County Superior Court Case No. 30-2020-01175159-CU-OE-CXC (March 14, 2023) (awarding $10,000 service award).

Last Plaintiff's requested Service Payment is consistent with *Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles* (2010) 186 Cal.App.4th 399. The *Munoz* court reemphasized that "that named plaintiffs are eligible for reasonable incentive payments to compensate them for the expense or risk they have incurred in conferring a benefit on other members of the class." (*Id*. at 412)

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court to grant the Motion for Attorney's Fees, Costs, and Class Representative Service Award.

Respectfully Submitted,

Dated: April 7, 2026          PARK APC

*/s/ Sang (James) Park*

By:_____
           Sang (James) Park

Attorneys for Plaintiff

MEMORANDUM OF P&A ISO MOTION FOR ATTORNEY'S FEES, COSTS AND CLASS REP SERVICE AWARD